**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVITA INC., and
KENT THIRY,

    Defendants.

**BRIEF OF *AMICUS CURIAE* CHAMBER OF COMMERCE OF THE UNITED STATES SUPPORTING DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT**

**SUMMARY OF ARGUMENT**

By purporting to declare a new *per se* criminal offense, the Department of Justice has usurped antitrust policy- and decision-making authority vested in Congress and the courts. What is more, criminally prosecuting practices not firmly established by courts as *per se* unlawful at the time the conduct occurred violates due process principles and contravenes a host of Supreme Court cases emphasizing the need for clarity in federal criminal prohibitions. Because *no court* has previously held that non-solicitation agreements are *per se* illegal, this prosecution falls far short of the fair notice that due process requires. The Court should dismiss the indictment.

**ARGUMENT**

**I.   Defendants lacked the fair notice required by due process because no court has declared non-solicitation agreements to be *per se* illegal**

The text of "[s]ection 1 of the Sherman Act prohibits '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States.'"  *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (quoting 15 U.S.C. § 1).  The Supreme Court, however, has interpreted § 1 as "outlaw[ing] only unreasonable restraints" of trade.  *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  With few exceptions, courts reviewing claims brought under § 1 of the Sherman Act apply the default "rule of reason," which requires "the factfinder [to] weigh[] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition."  *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988) (quoting *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)).

Courts have held only a narrow category of agreements to be *per se* illegal.  That designation "eliminates the need to study the reasonableness of an individual restraint in light of real market forces at work."  *Leegin*, 551 U.S. at 886 (citing *Bus. Elecs. Corp.*, 485 U.S. at 723).  Due to "the inherent limits on a court's ability to master an entire industry" and the fact "that there are often hard-to-see efficiencies attendant to complex business arrangements," courts "take special care not to deploy these condemnatory tools until [they] have amassed 'considerable experience with the type of restraint at issue' and 'can predict with confidence that it would be invalidated in all or almost all instances.'"  *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2156 (2021) (quoting *Leegin*, 551 U.S.

at 866-67).  "[I]t can take 'economists years, sometimes decades, to understand why certain business practices work [and] determine whether they work because of increased efficiency or exclusion."  *Id.* (quoting Frank H. Easterbrook, *On Identifying Exclusionary Conduct*, 61 NOTRE DAME L. REV. 972, 975 (1986) (second alteration in original)).  The Supreme Court has thus "expressed reluctance to adopt per se rules with regard to 'restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious.'"  *State Oil Co.*, 522 U.S. at 10 (quoting *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458–59 (1986)).  Indeed, in recent decades, the Supreme Court has repeatedly overruled old decisions that held particular restraints to be *per se* anticompetitive, rather than identifying new categories of *per se* conduct.  *Leegin*, 551 U.S. at 882 (overruling the holding of *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911), that vertical resale price maintenance agreements are *per se* unlawful); *State Oil Co.*, 522 U.S. at 7 (overruling the holding of *Albrecht v. Herald Co.*, 390 U.S. 145 (1968), that vertical maximum price fixing agreements are *per se* unlawful).

The distinction between the *per se* and rule-of-reason standards is critically important when it comes to criminal prosecution of antitrust violations.  The Fifth Amendment's Due Process Clause forbids enforcement of a criminal statute that "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).  "To make the warning fair, so far as

possible the line" marking out criminal conduct "should be clear." *United States v. Bass*, 404 U.S. 336, 348 (1971) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)).

Fair notice typically comes from the criminal statute itself. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited . . . .'" (quoting *Williams*, 553 U.S. at 304)); *Rabe v. Washington*, 405 U.S. 313, 315 (1972) (per curiam) ("To avoid the constitutional vice of vagueness, it is necessary, at a minimum, that a statute give fair notice that certain conduct is proscribed."). But "[t]he Sherman Act, unlike most traditional criminal statutes, does not, in clear and categorical terms, precisely identify the conduct which it proscribes." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978). Instead, courts have fleshed out the imprecise language of the Sherman Act through common-law adjudication of which conduct falls within the Sherman Act's ambit. *See Leegin*, 551 U.S. at 899 ("From the beginning the Court has treated the Sherman Act as a common-law statute."); *Nw. Airlines, Inc. v. Transp. Workers*, 451 U.S. 77, 98, n.42 (1981) ("In antitrust, the federal courts enjoy more flexibility and act more as common-law courts than in other areas governed by federal statute.").

Consequently, litigants must necessarily rely on courts to provide notice of which conduct is subject to criminal prosecution under the Sherman Act. But because courts applying the rule of reason address individual restraints *after the fact* based on a complicated and case-specific economic record, it is difficult "to tell in advance whether projected actions will run afoul of the Sherman Act's criminal strictures." *U.S. Gypsum*

4

*Co.*, 438 U.S. at 439 (quoting Report of the Attorney General's National Committee to Study the Antitrust Laws 349 (1955)).  Courts thus provide adequate *advance* notice for criminal purposes only when they declare certain conduct to be *per se* illegal regardless of the factual record or economic effects in a given case.  *Cf. United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 n.10 (1972) ("Without the per se rules, businessmen would be left with little to aid them in predicting in any particular case what courts will find to be legal and illegal under the Sherman Act."); *Leegin*, 551 U.S. at 917 (Breyer, J., dissenting) ("Are there special advantages to a bright-line rule?  Without such a rule, it is often unfair . . . for enforcement officials to bring criminal proceedings.").

The Justice Department's policy of criminally prosecuting only certain *per se* antitrust violations reflects the profound due process concerns posed by the Sherman Act's vague text and the fact-specific nature of rule-of-reason judicial decisions.  *See* U.S. Dep't of Justice, *Antitrust Div., Antitrust Division Manual*, at III-12 (5th ed. 2017) ("In general, current Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, per se unlawful agreements such as price fixing, bid rigging, and customer and territorial allocations."); *accord* Br. for the U.S. in Opp'n at 11, *Sanchez v. United States*, No. 19-288 (Nov. 25, 2019) ("[T]he government brings criminal antitrust prosecutions only based on conduct that violates the per se rule.").  Enforcing the constitutionally mandated principle that only court-designated *per se* violations may give rise to criminal prosecution is vital to ensuring that defendants receive the fair notice required by the Fifth Amendment.

Here, fair notice was lacking because no court has held that non-solicitation agreements are *per se* illegal. Only one court has even considered non-solicitation agreements, and it declined to apply the *per se* rule. *See, e.g.*, *Yi v. SK Bakeries, LLC*, 2018 WL 8918587, at *4 (W.D. Wash. Nov. 13, 2018). Cases involving no-hiring agreements or market-allocation agreements are irrelevant. The alleged agreements here did not prohibit one employer from hiring the other's employees. *See* Dkt. 49, Defendants' Joint Motion to Dismiss at 9. And there are no cases holding that employee non-solicitation agreements are *per se* illegal market-allocation agreements. *Id.* at 7-9. The Indictment's description of non-solicitation agreements as agreements to "allocate employees" is nothing more than an impermissible, backdoor effort to shoehorn non-solicitation agreements into the ill-fitting market-allocation framework. *See* Indict. ¶¶ 10, 18. The Government's effort to newly classify a business arrangement as falling within a pre-existing *per se* category—when no court has previously done so—only underscores the need for a rule-of-reason approach.

## II. DOJ "guidance" classifying naked no-poaching agreements as *per se* illegal violates separation of powers and cannot provide the fair notice required by due process

The *per se* rule is a judicial construct whose contours have been carefully shaped over time as common-law judges gained collective experience in assessing the pro- or anti-competitive effects of various economic arrangements. As a creature of common law, the limited category of *per se* offenses cannot be expanded at the whim of the Justice Department and Federal Trade Commission ("FTC") and applied for the first time in the context of a criminal prosecution without raising insuperable due process hurdles. To be

6

sure, the Justice Department and FTC share concurrent responsibility for *enforcing* the antitrust laws. Those agencies' methods, priorities, experience, and guidance are all important tools that help consumers, companies, and courts appreciate the Executive Branch's view of the scope of antitrust laws. However, the governing *law*—the source that after all must provide fair notice of criminal conduct—derives exclusively from Congress and the courts, originating in statute and developed through jurisprudence.

In 2016, the FTC and the Antitrust Division of the Justice Department jointly issued guidance for human resource professionals regarding the applicability of the antitrust laws to the hiring and compensation of employees. U.S. Dep't of Justice & Fed. Trade Comm'n, Antitrust Guidance for Human Resource Professionals (Oct. 2016), available at www.justice.gov/atr/file/903511/download. The guidance announced an intention to undertake a major enforcement policy shift, stating that the Justice Department intends to prosecute naked no-poaching agreements as criminal *per se* violations. *Id.* at 4.

The agencies' pronouncement that no-poaching agreements are now *per se* offenses subject to criminal prosecution appropriates authority squarely vested in Congress and the courts. While the Justice Department possesses prosecutorial discretion, it can neither create criminal offenses nor satisfy due process merely by declaring its intention to criminally prosecute those newly designated *per se* restraints.

Criminally prosecuting non-solicitation agreements based on nothing more than Justice Department guidance, where neither statutory text nor judicial decision holds such

agreements *per se* illegal, violates core constitutional protections.[1]  Due process "guards against arbitrary or discriminatory law enforcement by insisting that *a statute*"—or here, common-law judges applying the statute—"provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (emphasis added).  This principle "is a corollary of the separation of powers— requiring that Congress, rather than the executive . . . , define what conduct is sanctionable and what is not." *Id.*  The Justice Department's approach would allow the prosecutor to both define the crime and then bootstrap that *ultra vires* definition to provide "notice" to the defendant.  But "[i]f the separation of powers means anything, it must mean that the prosecutor isn't allowed to define the crimes he gets to enforce." *United States v. Nichols*, 784 F.3d 666, 668 (10th Cir. 2015) (Gorsuch, J., dissenting from the denial of rehearing en banc).  Surely then, the Justice Department, which enforces antitrust law, cannot define which conduct is *per se* illegal and expect that to count as fair notice of criminal liability.  This due-process problem is further compounded where, as here, the Department attempts to *retroactively* enforce its interpretation of the law with respect to conduct that largely preceded the guidance at issue.  *See* Indict. ¶¶ 9, 11.

Only courts empowered by the Sherman Act, not federal prosecutors, are authorized to declare new *per se* violations.  While the Justice Department confidently

---

[1] In the directly related case, *United States v. Surgical Care Affiliates LLC*, the Government conceded the guidance "ha[s] no legal significance." Br. for the U.S. in Opp'n at 29, *United States v. Surgical Care Affiliates LLC*, No. 3:21-cr-00011 (April 30, 2021). But, as Defendants note, Dkt. 49, Defendants' Joint Motion to Dismiss at 11 n.4, the guidance highlights the lack of foundation for declaring non-solicitation agreements *per se* illegal.

proclaims certain "naked" no-poaching agreements to be "irredeemable" and bereft of competitive virtue, Antitrust Guidance for HR Professionals at 4, the Supreme Court has held that "[i]t is only after considerable experience with certain business relationships that *courts* classify them as per se violations of the Sherman Act." *Topco Assocs.*, 405 U.S. at 607-08 (emphasis added). Courts—not bureaucrats—decide whether conduct is so "manifestly anticompetitive" as to warrant *per se* condemnation. *See Bus. Elecs.*, 485 U.S. at 723; *Broad. Music, Inc. v. CBS*, 441 U.S. 1, 19–20 (1979). Even the guidance itself casts doubt on the *per se* classification, stating only that an agreement between companies refusing to solicit or hire each other's employees "likely" violates antitrust laws. Guidance for Human Resources Professionals at 3. Whether or not courts ultimately conclude that no-poaching or non-solicitation agreements are *per se* unlawful after "considerable experience" in evaluating them, the undisputed fact remains that they have not yet done so. Until they do, the Constitution prohibits prosecuting a company for conduct not clearly defined as criminal by statute or authoritative judicial decisions.

### III. A criminal rule-of-reason case is incompatible with due process, while limiting prosecutions to specific *per se* offenses provides certainty to businesses and consumers

The Indictment relies explicitly and exclusively on a *per se* theory. Thus, to dismiss the Indictment, the Court need only observe that neither Congress nor the courts have condemned non-solicitation agreements as *per se* illegal, let alone offenses worthy of criminal treatment. It is nonetheless worth emphasizing why a criminal rule-of-reason case would be anathema to bedrock principles of due process. The rule-of-reason analysis requires the factfinder to determine "whether the questioned practice imposes

9

an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *State Oil Co.*, 522 U.S. at 10.  The court must apply a "three-step, burden-shifting framework," under which the plaintiff must first prove that the challenged conduct "has a substantial anticompetitive effect that harms consumers in the relevant market." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018).  If the plaintiff carries this burden, "then the burden shifts to the defendant to show a procompetitive rationale for the restraint.  If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means."  *Id.* (citations omitted).

This type of analysis often entails many years of litigation and dueling experts.  As the Department of Justice's own policy recognizes, *see supra* at 6, it is inconceivable that that the *post hoc*, reticulated, and record-intensive rule-of-reason analysis could provide sufficiently clear notice to support a future criminal prosecution on an entirely different factual record.  The Supreme Court has acknowledged as much, explaining that because the rule of reason is an "open-ended and fact-specific standard[]," "judicial elaboration of the [Sherman] Act" under the rule of reason does not "yield[] the clear and definitive rules of conduct which the statute omits."  *U.S. Gypsum Co.*, 438 U.S. at 438.[2]  Limiting criminal

---

[2] In *U.S. Gypsum*, the Supreme Court affirmed the reversal of antitrust convictions due to the lack of an intent element in the jury instructions and did not address whether due process limits criminal prosecution to agreements previously held by courts to be *per se* unlawful.

prosecutions to clearly designated *per se* offenses is thus not merely good policy; it also avoids imposing criminal liability under a rule-of-reason regime that provides scant warning of prohibited conduct.

Businesses, employees, and consumers alike need certainty to structure their conduct and affairs.  Part of this certainty is knowing what conduct can lead to criminal prosecution.  Allowing the Executive to retroactively criminalize behavior strikes at the heart of the ordered liberty guaranteed to all Americans.  But vague criminal laws also have harmful practical consequences.  They "inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (internal quotation marks omitted). Because "the behavior proscribed by the [Sherman] Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct," imposition of criminal liability for conduct that courts have not previously found *per se* illegal "holds out the distinct possibility of overdeterrence; salutary and procompetitive conduct lying close to the borderline of impermissible conduct might be shunned by businessmen who chose to be excessively cautious in the face of uncertainty regarding possible exposure to criminal punishment." *U.S. Gypsum Co.*, 438 U.S. at 441.  American businesses make millions of complicated economic decisions each and every day.  They are entitled to clear notice from the lawgiver—not just from the prosecutor—of what conduct is criminally out of bounds.

## CONCLUSION

For the reasons set forth above, *amicus* respectfully urges this Court to dismiss

the Indictment.

I confirm that I have conferred with the opposing counsel in good faith regarding this motion, as required under local rule D.C.COLO.LCviR 7.1(a). Defendants have consented. The United States takes no position on the motion.

Dated at Houston, Texas, this 20th day of October 2021.

Respectfully submitted,

| | |
|---|---|
| Daryl Joseffer | s/*Aaron M. Streett* |
| Paul Lettow | Aaron M. Streett |
| U.S. CHAMBER LITIGATION CENTER | Elisabeth C. Butler |
| 1615 H St., N.W. | BAKER BOTTS L.L.P. |
| Washington, D.C. 20062 | 910 Louisiana St. |
| Telephone: (202) 463-5337 | Houston, TX 77002 |
| | Telephone: (713) 229-1234 |
| | E-mail: aaron.streett@bakerbotts.com |
| | |
| | John M. Taladay |
| | BAKER BOTTS L.L.P. |
| | 700 K St, N.W. |
| | Washington, D.C. 20001 |
| | Telephone: (202) 639-7700 |

Counsel for *Amicus Curiae* Chamber of Commerce of the United States of America

### CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Colorado by using the CM/ECF system, which will serve this document on all counsel of record.

s/*Aaron M. Streett*
Aaron M. Streett