IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. DAVITA INC.,
2. KENT THIRY,

      Defendants.

**UNITED STATES' MOTION FOR A RULE 17(c) SUBPOENA
AND JUDICIAL DETERMINATION OF PRIVILEGE CLAIMS**

The United States moves for pretrial authorization of a Rule 17(c) subpoena to be issued to Defendant DaVita Inc. for fifteen documents identified in Exhibit A, to be produced within seven calendar days of a ruling on this motion. These documents were previously identified, by DaVita, ███████████████████████████████████████████████████████ ███████████████████████████, but DaVita withheld or redacted these documents as attorney-client privileged. In anticipation that DaVita will rely on the same privilege claims here, the United States further moves for an *in camera* review of the fifteen documents sought and a judicial determination regarding DaVita's attorney-client privilege claims. *In camera* review will allow the Court to assess the relevancy of the documents and to rule on the privilege claims.

Both in the investigation that led to the current charges and in its general course of business, DaVita has misused claims of privilege to improperly shield documents from disclosure. *See United States v. DaVita, Inc.*, 301 F.R.D. 676, 684 (N.D. Ga. 2014) (requiring DaVita to disclose over 300 documents after *in camera* inspection revealed invalid privilege claims), *on reconsideration in part*, 2014 WL 11531065 (N.D. Ga. May 21, 2014). Despite

1

repeated requests from the United States, DaVita has not sufficiently met its burden to assert and sustain valid privilege claims for these documents. The United States requests that the Court make a determination on the privilege status of each document, or in the alternative, find that DaVita has waived those claims through its misuse of privilege and insufficient assertions, and issue the proposed pretrial Rule 17(c) subpoena in Exhibit T.

In compliance with Local Rule 7.1(a), the United States has conferred with counsel for DaVita regarding these motions, and DaVita opposes these motions.

## BACKGROUND

Prior to indictment, DaVita identified the fifteen documents sought in this motion ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Ex. B, but asserted privilege claims over them. Eight of these documents were partially redacted—rather than completely withheld—and the United States has attached those documents as components of Exhibit A, for the Court's reference. *See* Exs. A-1–A-8. Each of the redacted documents contains discussions of labor market conspiracies relevant to the conduct charged in the Indictment. *See, e.g.*, Ex. A-1 ("I can absolutely commit to you that I will not proactively recruit anyone from DaVita."). What's more, some of these documents appear to reflect DaVita's deliberate practice, discussed further below, of the use of improper privilege claims to shield sensitive documents from disclosure, through the copying of attorneys and use of changed subject lines. *See* Ex. A-1 (subject line changed by Thiry to "need legal advice"); Ex. A-3 (subject line changed by Thiry to "need legal advice, priv").

### A. Evidence of DaVita's Internal Misuse of Privilege Claims

▮▮▮▮▮▮▮▮▮▮, a former senior executive at DaVita, in an interview with the United States, as summarized in an FBI 302 of the interview, informed the United States that:

> There was a practice at DAVITA of including attorneys on emails just to have the email covered by attorney/client privilege (ACP). THIRY did not keep this practice a secret and

2

> would coach people on ACP best practices. THIRY would carbon copy attorneys or place certain verbiage in emails unrelated to the attorney's work just to be covered by ACP. THIRY would put a comment directed to ▇▇▇▇ at the end of some emails unrelated to ▇▇▇▇ just to be covered by ACP. This was a widespread practice at DAVITA.

Ex. C. Documents collected in the government's investigation substantiate the existence of a practice by DaVita's senior executives of adding attorneys to an email chain in an apparent effort to shield sensitive documents from disclosure. For example, Thiry appears to have routinely changed the subject lines on various emails to "need legal advice," or similar phrasing, on documents that are business communications without a request for legal advice. *See* Ex. D (unredacted email from Thiry with subject line "need legal advice, priv," where the discussion is of a decrease in market share and the need for a "plan for victory"); Ex. E (unredacted email from Thiry with subject line "need legal advice, micropoint, no rush, att-work product," requesting inclusion of a DaVita award in a presentation). Although DaVita produced these documents, DaVita has withheld other communications with similar subject lines. For those documents, it has not been possible for the United States to determine whether the privilege claims are valid or if attorneys were merely added to communications that have a principally business—rather than legal—purpose.

This practice extended to discussions of possible agreements between competitors to restrict the hiring or solicitation of employees—the central issue in this case. For example, Exhibit A-8 is a November 3, 2013 email from the CEO of a company that competed with DaVita for employees. The CEO writes to Thiry and refuses to offer Thiry "a blanket guarantee that I'll never talk to anyone who reaches out to me regarding opportunities unless they speak with you or ▇▇▇▇ first." Ex. A-8. The CEO continues, "That being said, I can absolutely commit to you that I will not proactively recruit anyone from DaVita." *Id.* After responding, Thiry forwards the email to in-house counsel and changes the subject line to "need

legal advice," but copies a number of senior business executives, including a listserv with an undefined membership. *Id.* The substance of that exchange is redacted. *Id.*

**B.     DaVita's Withholding of a Nonprivileged Document in the Investigation**

In the investigation preceding this prosecution, DaVita withheld for years an inculpatory document under a baseless claim of attorney-client privilege. DaVita stood on its privilege claim over this document—a communication to a third party, and thus obviously not privileged—even after the United States pressed DaVita's counsel on whether this specific document was privileged. Subsequently, the United States revealed to DaVita that it believed it may have separately received the document, which had been produced by a third party.[1] Only after DaVita was caught with its hand in the cookie jar did DaVita abandon its privilege claim.

As we now know, the document in question is a January 22, 2012 email between Thiry and an in-house DaVita attorney, with a copy to the CEO of ▮▮▮▮▮▮▮▮▮▮, a competitor in the recruitment of employees:

> **From:** Kent Thiry <kent.thiry@davita.com>
> **Sent:** Sunday, January 22, 2012 3:27 PM
> **To:**
> **Cc:**
> **Subject:** Recruiting Issue -- need legal advice, priv
>
> One of our execs is talking to one of your vp's.
>
> I told them to stop, pending my email with you.
>
> I cannot remember our conversation of a few years ago, not for sure. But I think we agreed that neither company would enter into any substantive conversations with any vp or above of the other company UNLESS the vp had unambiguously told their boss they were going to start talking to other companies.
>
> Absent that, there could be no interviews, no lunches, no discussion of comp. just a straightforward description of the process rules of engagement.
>
> Is that correct?   thx, KT
>
> I am copying ▮▮▮ she is our lead labor attorney, to make sure we are complying with all relevant laws/etc. so ▮▮ pls start this exchange with your providing advice to paul and me.

---

[1] When the United States noticed that the document produced by the third party might be the same document withheld on DaVita's privilege log, out of an abundance of caution, the document was promptly sequestered from the prosecution team, pending resolution of the issue.

4

Ex. F. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, the email was clearly directed to ▇▇ in his capacity as a competing CEO, and the core of the email is a direct communication from Thiry to ▇▇ regarding their agreement about recruiting activities. As it was a communication with a third party, attorney-client privilege plainly does not apply. *See, e.g.*, *Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1265 (D. Colo. 2010). That email went to the heart of the conduct under investigation; but for almost two years, DaVita wrongly withheld it in its entirety as privileged.

In DaVita's original January 2021 privilege log, DaVita's justification for its privilege claim was troublingly vague, characterizing the document as an "[e]mail requesting legal advice regarding agreements, contract terms and negotiations from ▇▇▇▇▇▇▇▇ Esq." There was no indication in the privilege log that the document had anything to do with recruitment of employees—or that it was an attempt by Thiry to confirm the terms of an employee nonsolicitation agreement with a competitor. Almost as troubling as what was omitted was the vague and general nature of DaVita's privilege justification for this document. The phrase "agreements, contract terms and negotiations" was used in almost one third of the over 36,000 entries on DaVita's original privilege log, which illustrates how counsel in this investigation sought to obscure and sanitize the subject matter of the communications, leaving the United States unable to meaningfully assess DaVita's privilege claims.

In a February 17, 2021 letter regarding DaVita's privilege claims, the United States specifically discussed Exhibit F: "[W]e believe privilege log entry number 25511 is likely a communication in which ▇▇▇▇▇▇ was acting as a third party in his communication with Mr. Thiry." Ex. G. DaVita's response of March 2, 2021 was silent on this issue. Ex. H. On that date, DaVita also submitted a revised privilege log, which maintained the privilege claim on this

5

document, altering the description to read: "Email requesting legal advice from ▮▮▮▮ Esq. regarding employment and compliance requirements related to DaVita's recruiting efforts." DaVita's revision was not only vague and insufficient, but also misleading; in fact, the document reflects an attempt to confirm an agreement regarding the recruiting efforts of *both* DaVita and ▮▮▮▮ rather than just those of DaVita. *See* Ex. F. And the only "request[]" for "legal advice"—rather than the dominate purpose of the communication—was tacked on, only after Thiry had already signed the email. *See* Ex. F. Notably, this also appears to be an example of the practice, outlined in Section A, of Thiry copying an attorney to support a sham privilege claim.

Only after the United States disclosed to DaVita's counsel that it believed it may be in possession of the document, which had been produced by a third party, did DaVita finally abandon its claim of privilege over the document. *See* Exs. I, L.

      **C.**      **DaVita's Failure To Properly Assert and Support Its Privilege Claims**

As exemplified by its handling of Exhibit F in the preceding section, DaVita's privilege justifications to date are insufficient to properly assert claims of privilege, and the United States cannot meaningfully assess whether other documents that go to the heart of the investigation have been withheld improperly. The enumerated fifteen documents, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DaVita refused to produce the documents subject to this motion, and asserted privilege in a series of privilege logs.

The United States repeatedly raised the issue of deficient privilege claims with DaVita and gave DaVita multiple opportunities to supplement its privilege log, yet its privilege log descriptions remained insufficient for the United States to meaningfully assess the privilege

6

claims. *See* Exs. G, I, M, P. The United States specifically raised concerns to DaVita regarding the potential sham claims and widespread use of email subject lines such as "need legal advice" or similar, as well as the concerns regarding Exhibit F. *See* Ex. G. Additionally, the United States also raised with DaVita that "the descriptions in your privilege log are overly general—including, as just two examples, phrases such as 'labor and employment issues' and 'agreements, contract terms and negotiations'—and thus are insufficient for us to assess your claims of privilege." Ex. I. Following continued negotiations, *see* Exs. J, K, M, DaVita provided an updated privilege log and production on May 17, 2021, *see* Ex. N.

DaVita's latest privilege log addressing these documents, produced on June 29, 2021 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, remains insufficient. *See* Ex. A (reproducing DaVita's privilege claims). Not only do the descriptions remain vague, the entries involving in-house counsel do not sufficiently differentiate as to whether counsel is serving in a legal, or business, function. Further, DaVita has been unable to identify the full list of recipients of all these communications. *See* Ex. Q.

## ARGUMENT

The fifteen documents sought by the United States meet the requirements for issuance of a Rule 17(c) subpoena. Moreover, the documents should be produced because DaVita has failed to justify its privilege claims, or in the alternative, has waived those claims through its misuse of privilege and insufficient assertions. An *in camera* review is appropriate to assess DaVita's attorney-client privilege claims over these documents. *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2007) ("Making an in camera submission of materials that counsel contends are privileged is 'a practice both long-standing and routine in cases

involving claims of privilege.'" (quoting *In re Grand Jury Subpoena Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003)).

    A.  **The Court Should Issue a Rule 17(c) Subpoena for the Requested Documents**

Under Rule 17(c), "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c). "The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." *Id.* To support a Rule 17(c) subpoena, "the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). The proposed subpoena meets all of these requirements.

As to the first and third elements, the requested documents are evidentiary, relevant, and necessary to prepare for trial properly. Certain requested documents involve communications with companies alleged in the Indictment to have conspired with DaVita to restrain competition for employees. For example, Exhibit A-5 relates to Count 1, and reflects a communication between Kent Thiry and SCA's CEO, offering Thiry's views on SCA's recruitment of a DaVita employee. *See* Ex. A-5 (Thiry: "[S]ome execs do use their inside info to recruit after they leave companies . . . . It is not immoral to do it in a business sense—not at all—but good friends don't do it to one another on a stealth basis."). The entries for Exhibits A-6 and A-7 include the email quoted in Paragraph 27(b) of Count 3 of the Indictment. In these documents, the CEO of Company C, a DaVita competitor for employees, writes to Thiry and commits, "We, nor our

8

recruiters, will initiate contact with DVA teammates about positions at [Company C]." Exs. A-6–A-7; *see also* ECF No. 1, at ¶ 27(b).

The remaining documents are also relevant to Defendants' intent and show a pattern of conduct in proposing, entering, and policing agreements restricting the solicitation of employees. *See* Ex. A-4 (Thiry: "I think we agreed that neither company would enter into any substantive conversations with any vp or above of the other company UNLESS the vp had unambiguously told their boss they were going to start talking to other companies."). They are admissible under Rule 404(b) to show the intent. *See United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 479–80 (10th Cir. 1990) (affirming admission of "similar customer allocation agreements entered into by the defendants before and during the time period charged in the indictment 'to show that participation of defendants in the charged customer allocation conspiracy was part of a course of conduct and was knowing and intentional, rather than the result of accident or mistake.'").

As to the second and fourth elements, these documents were not reasonably procurable in advance of trial, and the application is made in good faith and not intended as a "fishing expedition." The United States made repeated efforts to procure these documents, but DaVita consistently refused to produce them. Accordingly, the documents were not otherwise procurable in advance of trial. Moreover, far from a fishing expedition, the United States reviewed privilege logs prepared by DaVita, which included tens of thousands of entries, and has identified only a narrow set of fifteen documents that appear highly relevant to the charged conduct.

Finally, the United States also seeks an *in camera* review of the requested documents. In addition to facilitating a privilege review, discussed further below, an *in camera* review will also allow the Court directly to assess the relevancy of requested documents. To the extent the Court determines, on the basis of such a review, that any documents are properly withheld as privileged

or are not relevant, the United States agrees that the motion for a Rule 17(c) subpoena should be denied as moot with respect to those documents.

    **B.**  **Attorney-Client Privilege Must Be Validly Asserted by the Proponent**

    The attorney-client privilege protects "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Recs.*, 697 F.2d 277, 278 (10th Cir. 1983) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (internal quotation marks omitted). However, attorney-client privilege applies only to communications "necessary to obtain informed legal advice" and "which might not have been made absent the privilege." *Fisher*, 425 U.S. at 403. "The burden of establishing the applicability of [the attorney-client privilege] rests on the party seeking to assert it," *Matter of Grand Jury Subpoena*, 697 F.2d at 279, and "[t]he privilege is to be construed narrowly," *id.* at 278.

    **C.**  **DaVita Has Waived Its Privilege Claims Through Its Bad Faith**

    DaVita's demonstrated bad faith in its privilege claims constitutes waiver of those privilege claims. "Waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Design Basics, LLC v. ProBuild Co. LLC*, No. 10-CV-02274-REB-BNB, 2011 WL 2600980, at *5 (D. Colo. June 30, 2011) (quoting *First Savings Bank v. First Bank System, Inc.*, 902 F. Supp. 1356, 1361–64 (D. Kan. 1995)) (alteration omitted). Those circumstances are present here, where DaVita has withheld documents or offered vague and misleading privilege justifications in bad faith "to forestall disclosure of embarrassing and harmful, but not privileged material." *Amway Corp. v. Procter & Gamble Co.*, No. 1:98-CV-726, 2001 WL 1818698, at *9 (W.D. Mich. Apr. 3, 2001) (waiving privilege where a party "knew that its [privilege] claims were meritless but persisted in pressing them"); *see also Williams v. Taser Int'l, Inc.*, 274 F.R.D. 694, 698 (N.D. Ga. 2008); *United States Sec. & Exch.*

*Comm'n v. Commonwealth Advisors, Inc.*, No. CV31200700JWDEWD, 2016 WL 1364141, at *8 (M.D. La. Apr. 6, 2016).

DaVita's mishandling of Exhibit F is illuminating on the question of the company's bad faith. DaVita repeatedly withheld this obviously inculpatory document ▓▓▓▓▓▓▓▓, burying it behind general privilege descriptions to justify its claims. DaVita produced the document only upon being informed that the United States believed it may have already received it from a third party; in other words, only when they knew they could no longer hide behind overbroad and vague assertions of privilege, DaVita gave up the game. When the United States first raised the document to DaVita's attention, DaVita surely recognized its importance ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In it, DaVita's CEO wrote directly to the CEO of a competing company: "I think we agreed that neither company would enter into any substantive conversations with any vp or above of the other company UNLESS the vp had unambiguously told their boss they were going to start talking to other companies." Ex. F. Nevertheless, DaVita shielded the document from disclosure on the basis of a privilege claim it now admits it cannot support. Had the United States not been in the position to confirm that it believed it may have already seen the document, through disclosure by a third party, it is likely that DaVita would still be concealing this document. Notably, Exhibit F is another example of the broader practice of DaVita's overuse of sham privilege claims to shield sensitive documents.

### D. DaVita Has Not Demonstrated Valid Privilege Claims

Even if the Court finds that DaVita's bad faith does not justify a waiver, DaVita's vague and general privilege claims are insufficient to justify the withholding of the documents identified in Exhibit A. The purpose of a privilege log is to allow the United States and the court to test the privilege claim, and for this reason "a party must claim privilege with specificity." *In re United States*, 397 F.3d 274, 285 (5th Cir. 2005); *see also Jordan v. Wiley*, No. CIV.A. 07-

CV-00498MS, 2009 WL 2913231, at *3 (D. Colo. Sept. 8, 2009); Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring a party to "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"). DaVita has failed to carry its burden of establishing the applicability of attorney-client privilege to these documents. *See Wildearth Guardians*, 713 F. Supp. 2d at 1266 ("where the privilege is not sufficiently justified through a privilege log" a "waiver of privilege" results).

First, DaVita's proffered privilege justifications are insufficiently detailed to allow an assessment of the claims. *See, e.g.*, *id.* Even after being repeatedly put on notice of its deficient privilege claims, DaVita continues to provide privilege claims at the level of generality of "Email requesting legal advice from ███████, Esq. regarding internal communications." Ex. A. Exhibit A-2 is particularly illustrative. In that document, the CEO of a DaVita employment competitor, emailed Thiry and reported, "our system/agreement is working. An open position we are recruiting for yielded a DaVita teammate. Our HR and senior leader of the department saw the resume and stopped the process with the individual." Ex. A-2. DaVita's privilege description—on its fourth privilege log, submitted *after* the United States had repeatedly identified deficiencies and sought additional clarity—reveals only "Email requesting legal advice from ███████, Esq. regarding internal communications." Ex. A. Here, DaVita's fourth and latest privilege log is even worse than its previous efforts. Its May 17, 2021 privilege log entry for this same document, if nothing else, at least identified that the communication related to recruitment from a third party: "Email requesting legal advice regarding labor and employment issues involving ███████ recruitment, from ███████ Esq." But neither vague description gives the United States or the Court the information necessary to assess the privilege claim.

12

Across the board, DaVita's descriptions for these documents are overly vague and insufficient to justify or even assess their privilege claims.

Second, DaVita fails to establish that withheld communications were maintained confidentially only among those necessary to the purported advice being given. DaVita has not even established who exactly received all of these communications. Exhibits A-1 and A-8 reflect distribution of communications from November 2013 to a listserv identified as "Lambeau." But despite requests from the United States, *see* Ex. B, DaVita has failed to identify the membership of this listserv for relevant time periods, *see* Exs. O, Q. Without the ability to discern how many individuals were on that listserv, who those individuals were, or whether those individuals were necessary to the provision of the legal advice purportedly being requested, DaVita cannot sustain its privilege claims on those entries.

Third, DaVita fails to demonstrate that the withheld communications are being made to lawyers for the purpose of legal advice, rather than merely copying attorneys in a business capacity. DaVita's privilege log characterizes emails as "requesting legal advice" without any specific facts to support the claim. But "conclusory assertions of a legal purpose are insufficient." *Kunneman Properties LLC v. Marathon Oil Co.*, No. 17-CV-00456-GKF-JFJ, 2021 WL 141234, at *3 (N.D. Okla. Jan. 14, 2021). In addition to being overly general, DaVita's privilege descriptions fail to demonstrate that the "dominate purpose" of the communications was to secure or provide legal advice. *Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, No. 20-CV-00552-CMA-NRN, 2021 WL 1022703, at *7 (D. Colo. Mar. 17, 2021). In fact, the excerpts from the redacted documents demonstrate that the discussions at issue in Exhibit A appear to be primarily of a business, rather than legal, nature. The primary purpose of these documents appears likely to be to confirm, clarify, and police the terms of agreements between

DaVita and its competitors not to recruit each other's employees. The inclusion of attorneys on email chains that discuss business matters is not enough to shield these documents from disclosure. *See United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). Viewed in the context of DaVita's intentional use of sham privilege claims to shield sensitive documents, it is likely DaVita could offer no justification to withhold these documents, because the inclusion of attorneys was designed to hide documents, rather than to secure legal advice.

E. **An Order Finding Waiver and/or Insufficient Assertion To Establish Privilege Is the Appropriate Remedy**

DaVita has had four chances to provide a proper basis for its privilege claims over these documents, and it has repeatedly failed. Even if DaVita could offer a belated justification for its privilege claims, the Court should not excuse DaVita's four failed efforts by providing it with a fifth chance. An order merely requiring DaVita to provide a proper privilege log—to follow the rules that have always applied—would only encourage the bad faith and gamesmanship displayed by DaVita here. *See PKF Int'l Corp. v. IBJ Schroder Leasing Corp.*, No. 93CIV.5375, 1996 WL 525862, at *4 (S.D.N.Y. Sept. 17, 1996) ("Limiting the remedy to the belated preparation of a privilege log effectively tells practitioners they can flout the Court's Rules and incur no sanction other than an Order directing compliance with the rules. Such a result would only encourage disregard of the Court's Rules and encourage motion practice to compel compliance with those rules."), *aff'd sub nom. Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, No. 93 CIV. 5375, 1996 WL 675772 (S.D.N.Y. Nov. 21, 1996).

## CONCLUSION

The Court should issue a pretrial Rule 17(c) subpoena for the fifteen documents identified in Exhibit A, along with any duplicates or lesser-included threads. Additionally, because DaVita's privilege claims are insufficient and invalid, the United States respectfully

requests that this Court determine that these documents are not privileged, and, thus, should be produced within seven calendar days of a ruling on this motion.

DATED: December 7, 2021

Respectfully submitted,

*/s/ Anthony W. Mariano*
Anthony W. Mariano, Trial Attorney
Megan S. Lewis, Assistant Chief
Sara M. Clingan, Trial Attorney
William J. Vigen, Trial Attorney
U.S. Department of Justice, Antitrust Division
Washington Criminal II Section
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: 202-598-2737 / 202-598-8145 / 202-480-1951 / 202-353-2411
FAX: 202-514-9082
E-mail: anthony.mariano@usdoj.gov / megan.lewis@usdoj.gov / sara.clingan2@usdoj.gov / william.vigen@usdoj.gov

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule 7.1(a), the United States has conferred with counsel for DaVita regarding these motions, and DaVita opposes these motions. During previous negotiations, the United States conferred with DaVita regarding forty-four specific documents DaVita had withheld under privilege claims. DaVita withdrew its privilege claim related to one of these documents. Following discussions with DaVita's counsel, the United States does not pursue at this time a privilege review and determination regarding twenty-eight of the remaining documents. We informed DaVita on December 2, 2021 of the intended motions as to the remaining fifteen documents. DaVita confirmed that they opposed the motions and still asserted privilege on the bases previously identified.

## CERTIFICATE OF SERVICE

On December 7, 2021, I filed this document with the Clerk of the Court using CM/ECF, which will serve this document on all counsel of record.

*/s/ Anthony W. Mariano*
Anthony W. Mariano, Trial Attorney