# EXHIBIT A

# Morgan Lewis

**John Clayton Everett, Jr.**
Partner
+1.202.739.5860
clay.everett@morganlewis.com

December 3, 2021

**Via E-Mail**

William J. Vigen
Anthony Mariano
U.S. Dept. of Justice, Antitrust Division
450 5th Street, NW
Washington, DC 20530

Re:    <u>United States v. DaVita Inc. et al.</u>, 1:21-cr-00229-RBJ (D. Colo.)

Dear Counsel:

In accordance with Federal Rule of Criminal Procedure 16(b)(1)(C), the following is a summary of the expected testimony of Dr. Pierre-Yves Cremieux.

**I.     Introduction**

    A.    Qualifications and Professional Experience

        1.    Dr. Pierre-Yves Cremieux is the President and a Managing Principal of Analysis Group, Inc., an economic research consulting firm. Prior to joining Analysis Group, Dr. Cremieux served as a tenured Professor of Economics at the University of Québec at Montréal.

        2.    He received a B.A. in Economics from the University of Maryland in 1986, and a master's degree and Ph.D. in Economics from the University of California at Berkeley in 1989 and 1992, respectively.

        3.    Dr. Cremieux has worked and published in a number of areas, including labor and employment, antitrust, and class certification. His work has been published in a various peer-reviewed academic journals. He has consulted with numerous clients in the United States and Canada and testified in bench and jury trials, arbitrations, and administrative proceedings with respect to class certification, liability, damages, and statistics.

December 3, 2021
Page 2

    4.    His curriculum vitae, which includes a complete list of publications, is included as **Appendix A**.

    5.    Dr. Cremieux has provided expert reports, deposition, and/or testimony in 30 antitrust litigations. A list of the cases in which he provided expert testimony during the past four years is included in **Appendix B**.

    6.    At trial, Dr. Cremieux will provide expert economic analysis of the alleged agreements in the Indictment between the defendants and their alleged co-conspirators to a reasonable degree of scientific certainty. If asked to testify at a trial regarding his opinions, Dr. Cremieux reserves the right to address any further issues relevant to his opinions and to use additional materials, including exhibits and demonstratives, for support as may be appropriate.

## II. Expected Testimony of Dr. Pierre-Yves Cremieux

### A. Testimony

    1.    Dr. Cremieux is expected to testify that in his expert opinion the economic evidence does not support the existence of a labor market allocation agreement between DaVita Inc. or Mr. Thiry and the entities identified in Counts 1, 2, and 3 of the Indictment. In support of his opinion that the economic evidence does not support the existence of a labor market allocation agreement, Dr. Cremieux is expected to testify as to the following:

        a.    Dr. Cremieux's opinion is that the evidence regarding employee separations at DaVita does not align with the expected effect of a labor market allocation agreement. Dr. Cremieux analyzed DaVita's separation rates for the relevant sets of DaVita employees. That analysis confirms, in Dr. Cremieux's opinion, that the relevant separation rates were not depressed during the alleged conspiracy periods.

        b.    Dr. Cremieux's opinion is that patterns of DaVita employee compensation do not align with the expected effects of a labor market allocation agreement. In particular, Dr. Cremieux's analysis of DaVita-specific compensation data and national benchmarks does not reveal a depression in the compensation of DaVita senior-level employees specific to the alleged conspiracy periods; in fact, the elevation of

December 3, 2021
Page 3

   median salary for DaVita senior-level employees above benchmarks is *higher* during the alleged conspiracy periods than before or after.

c. Dr. Cremieux is expected to testify that evidence concerning employees at DaVita who provided notice that there were considering positions outside of DaVita often received offers for promotions, increased compensation and/or different job responsibilities, contrary to the allegation that DaVita entered into notice agreements with the entities identified in Counts 1, 2 and 3 of the Indictment as part of a market allocation agreement for labor. Dr. Cremieux is expected to testify and address the recruitment of specific employees that the Government may present at trial, including his analysis of the effects and incentives of alleged conduct.

d. Dr. Cremieux is expected to testify that, in his opinion, there was a lack of economic incentive for DaVita to enter into market allocation agreements for senior-level employees with the companies identified in the Indictment, making the existence of a labor market allocation agreement less likely. In particular, Dr. Cremieux is expected to testify that:

(i) The competition for senior-level DaVita employees was broad. Data suggests that during and outside the alleged conspiracy periods, senior-level employees departed DaVita for hundreds of other companies. These destination companies were not confined to the outpatient care industry or to the broader healthcare industry (which comprises thousands of companies), and the pool of potential destinations may have been far larger than the set of actual destination companies.

  Even outside the alleged conspiracy periods, moreover, the three companies referenced in the Indictment are a destination for a tiny fraction of senior-level employees departing DaVita. Market allocation agreements with those three companies could not reasonably be expected to have a material impact on employee compensation or employee turnover rates.

December 3, 2021
Page 4

    (ii) The defendants and their alleged co-conspirators had little, if any, power to suppress competition and wages, and correspondingly little, if any, incentive to enter into an agreement since such an agreement could not restrict competition for labor.

 e. Dr. Cremieux is expected to testify that the defendants' alleged conduct with regard to recruiting and hiring was consistent with those companies' and individuals' independent self-interest and thus provides no economic basis to infer a labor market allocation agreement from those actions.

 f. Dr. Cremieux is expected to testify that limitations on recruiting and hiring may help to promote or allow other joint economic activity.  DaVita discussed various business opportunities with SCA during the alleged conspiracy period, and Dr. Cremieux is expected to testify that limitations on recruiting may be expected, based on economic theory, to promote or allow such business arrangements, and so limitations that SCA may have placed on its own recruitment or hiring from DaVita would be in its own independent interest.

2. Dr. Cremieux may respond to the testimony of witnesses that the Government presents.  The content of Dr. Cremieux's response will depend, however, on the testimony as it is presented at trial, and so we reserve the right to have Dr. Cremieux address any further issues relevant to his opinions and to use additional materials for support as may be appropriate.

3. Defendants reserve the right to amend, supplement, and/or modify its testifying expert based on motions currently pending or that may become pending before the Court. Defendants reserve the right to call other economic experts to testify to the opinions identified above using the same materials relied upon as Dr. Cremieux if necessary.

 B. Materials Relied Upon

1. The bases for the facts and opinions that Dr. Cremieux will testify about are his extensive education, training, writing, and professorship in the field of economics, and the knowledge, skill,

December 3, 2021
Page 5

and experience he has acquired as a long-time author and professor on these topics. Dr. Cremieux will base his opinion upon a review of the testimony, documents, and data produced in this case, and relevant academic literature and articles.

2. The bases of Dr. Cremieux's testimony are expected to include:

    a. His review of DaVita and its alleged co-conspirators' compensation and termination data;

    b. His review and analysis of benchmark compensation and turnover data;

    c. His analysis of LinkedIn data;

    d. His analysis of ordinary course communications and documents produced by the parties in the case;

    e. His analysis of labor market conditions at the time of the charged conspiracy period; and

    f. His experience and expertise in the field of economics.

December 3, 2021
Page 6

Sincerely,

| | |
|---|---|
| JOHN C. DODDS<br>ERICA A. JAFFE<br>MORGAN LEWIS & BOCKIUS LLP<br>1701 MARKET STREET<br>PHILADELPHIA, PA 19103-2921<br>(215) 963-4942<br>john.dodds@morganlewis.com | CLIFF STRICKLIN<br>KING & SPALDING<br>1401 Lawrence Street, Suite 1900<br>Denver, CO 80202<br>(720) 535-2327<br>cstricklin@kslaw.com |
| J. CLAYTON EVERETT, JR.<br>TRACEY MILICH<br>MORGAN LEWIS & BOCKIUS LLP<br>1111 PENNSYLVANIA AVE. NW<br>WASHINGTON, DC 20004-2541<br>(202) 739-5860<br>clay.everett@morganlewis.com<br>tracey.milich@morganlewis.com | JEFFREY STONE<br>DANIEL CAMPBELL<br>MCDERMOTT WILL & EMERY LLP<br>444 W Lake St.<br>Chicago, IL 60606<br>(312) 984-2064<br>jstone@mwe.com |
| JOHN F. WALSH III<br>WILMER CUTLER PICKERING HALE & DORR LLP<br>1225 17th Street, Suite 2600<br>Denver, CO 80220<br>(720) 274-3154<br>john.walsh@wilmerhale.com | JUSTIN MURPHY<br>MCDERMOTT WILL & EMERY LLP<br>500 North Capitol Street, NW<br>Washington, DC 20001-1531<br>(202) 756-8018<br>jmurphy@mwe.com<br><br>*Counsel for Defendant Kent Thiry* |
| *Counsel for Defendant DaVita Inc.* | |

JCE