IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. DAVITA INC.,
2. KENT THIRY,

      Defendants.

**UNITED STATES' OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* TO PRECLUDE THE DIVISION FROM CHARACTERIZING THE CONSPIRACIES AS ANYTHING OTHER THAN AGREEMENTS TO "ALLOCATE" EMPLOYEES BY "NOT SOLICITING" THEM**

The United States opposes Defendants' Joint Motion *in Limine* To Preclude the Division from Characterizing the Conspiracies (ECF No. 111), which seeks to constrain the United States' description of three separate multiyear conspiracies to the precise verbiage of the Superseding Indictment's charging paragraphs: agreements to "allocate" employees by "not soliciting" them. There is no proper basis to preclude the jury from hearing the communications that implemented the conspiracy and that are quoted in the Superseding Indictment as part and parcel of the charged conspiracies. The United States is permitted to describe—and the jury is entitled to hear—evidence concerning the charged conspiracies using the language found in communications contemporaneous to the conspiracies and in the testimony of the witnesses to the conspiracies. Such descriptions are objective evidence of the existence of the charged conspiracies, and bear no inflammatory or emotionally inciting characteristics. Accordingly, exclusion of this evidence under Federal Rule of Evidence 403 is inappropriate.

1

## BACKGROUND

Defendants are charged with participating in three separate conspiracies, each spanning multiple years and involving a variety of implementation and enforcement mechanisms and multiple co-conspirators. Unsurprisingly, given the duration of the conspiracies and the nature of the conduct at issue, the contemporaneous documents reflecting the conspiracies as well as the witnesses who will testify concerning the conspiracies at trial employ a variety of terms to capture how each conspiracy was negotiated, implemented, monitored, and enforced by Defendants. As set forth in the Superseding Indictment, the conspiracies were described in a multitude of ways through contemporaneous communications. The Superseding Indictment reflects that the conspiracies precluded "proactive recruiting," ECF No. 74 ¶ 11(a); included agreements "not to solicit" certain employees, *id.* ¶¶ 11(b), (c); rendered employees "off limits," *id.* ¶¶ 11(c), 27(h); included a "gentlemen's agreement between [SCA] and DaVita re: poaching talent," *id.* ¶ 11(f); required participants to "steer clear of anyone at [DaVita]," *id.* at ¶ 19(b); and prohibited "targeting [DaVita] teammates," *id.* ¶ 27(a). Far from tending to inflame the emotions of the trier of fact, descriptions such as these merely set forth the charged conspiracies as understood at the time by those with knowledge of the conspiracies.

## LEGAL STANDARD

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an

extraordinary remedy and should be used sparingly." *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999) (holding district court abused its discretion in excluding evidence under Rule 403) (quoting *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996)).  "To be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quoting Fed. R. Evid. 403 advisory committee's note).

## ARGUMENT

The United States is aware of no authority that restricts it or its witnesses to the precise verbiage of an indictment's charging paragraphs when describing the charged conduct, and Defendants' motion offers none.  Moreover, far from representing "uncharged theories of liability," Mot. at 3, the terms Defendants seek to preclude would unduly constrain witnesses from describing their first-hand knowledge of the charged conspiracies.  References to hiring, notice, or poaching are integral to the descriptions and means and methods of the charged conspiracies—there is no basis to conclude that their use would be inflammatory or unduly prejudicial.

**I.   THE UNITED STATES' DESCRIPTIONS OF THE CHARGED CONSPIRACIES WILL BE DERIVED FROM ANTICIPATED WITNESS TESTIMONY AND DOCUMENTARY EVIDENCE THAT IS PROBATIVE TO ELEMENTS OF THE CHARGED CRIME**

The United States anticipates describing the charged conspiracies using terms from contemporaneous documents and language used by witnesses to the charged conspiracies.  This evidence speaks directly to two of the three elements at issue in this case: (1) the existence of an

allocation conspiracy for employees;[1] and (2) Defendants' knowing participation in the conspiracy. *See United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1210 (9th Cir. 1992); *United States v. Coop. Theatres of Ohio, Inc.*, 845 F.2d 1367, 1373 (6th Cir. 1988). Because witness and documentary descriptions of the charged conspiracy tend to make facts of consequence to the determination of this action more or less probable, they are relevant under Rule 401. *See* Fed. R. Evid. 401.

As Defendants admit, the Superseding Indictment itself contains references to language that the Defendants assert is objectionable. *See, e.g.*, Superseding Indict. ¶ 11(f) ("I thought there was a gentlemen's agreement between us and DaVita re: poaching talent."); Mot. at 2, n.1. But the fact that the Superseding Indictment might not explicitly contain every conceivable synonym for the charged conduct does not mean that such descriptors would not be relevant to the charged conduct. Of course, "an 'indictment need not plead the government's theory of liability,'" *United States v. Rosalez*, 711 F.3d 1194, 1210 (10th Cir. 2013). But in any event, the charged offenses of conspiring to allocate employees encompass conduct that may be appropriately be characterized as agreements not to solicit, poach, or hire—by the terms of the agreements alleged, the conspirators would not poach or hire the set of employees who did not apply unsolicited and did not notify their employer. The anticipated evidence will show that conspirators declined to pursue their conspirators' employees in furtherance of those agreements, and the United States may plainly put on evidence of acts in furtherance of the conspiracy.

---

[1] That the agreements charged are per se unlawful allocation agreements under the Sherman Act does not require use of, or constrain the United States to, that terminology. Such unlawful agreements may take many different factual forms. *See, e.g.*, *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647–48 (1980) (per curiam) (finding an agreement on credit terms a form of price fixing and reciting various factual iterations of per se unlawful price-fixing agreements).

*United States v. Lipford*, 203 F.3d 259, 265 (4th Cir. 2000) (holding evidence of overt acts in furtherance of the conspiracy were admissible to prove the existence and scope of the conspiracy); *United States v. Van Putten*, 2005 U.S. Dist. LEXIS 4009, at *13 (S.D.N.Y. Mar. 14, 2005) ("Acts in furtherance of the conspiracy are generally relevant to evidence of the conspiracy."). That the conspirators in some instances did hire another's employees, Mot at 4, does not undermine that evidence, let alone require its exclusion.

Defendants seek to manufacture confusion by conflating the legal parlance distinguishing "no-poach" from "non-solicitation" and "no-hiring" legal theories, *see* Mot. at 4 (citing *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 2020 WL 2553181, at *13 (S.D. Cal. May 20, 2020) (explaining that a "non-solicitation agreement is not synonymous with a no-poaching agreement" or a no-hiring agreement)), with a layperson's everyday use of the terms "poach" or "solicit." If a witness responsible for implementing a nonsolicitation agreement understood that a charged nonsolicitation agreement precluded "poaching" certain employees as the term "poaching" is commonly used, the witness should be permitted to testify concerning their own understanding of the charged conspiracies using whatever language they deem to be most accurate and natural to them. There would be nothing inappropriate or confusing about the United States adopting the witness's or document's description in addressing the jury. Nor would such a description amount to an amendment of the indictment, especially where the indictment's own allegations use the terms. Should Defendants believe a particular witness's description to be inconsistent with the charged conduct, the appropriate remedy is cross-examination, not wholesale exclusion.

## II. THE UNITED STATES' ANTICIPATED DESCRIPTIONS OF THE CHARGED CONSPIRACIES ARE OBJECTIVE AND ARE NOT UNFAIRLY PREJUDICIAL

The terms used by individuals familiar with the charged conspiracies—including, commonly, in direct communication with Defendant Thiry—are objective, descriptive terms. It strains logic that common terms such as "poach" or "nonsolicit" or "hire" might be construed as inflammatory or confusing, much less sufficiently inflammatory or confusing to warrant exclusion under Rule 403. *See United States v. Shaw*, 562 Fed. Appx. 593, 597 (10th Cir. 2014) (affirming admission of evidence even though the evidence prejudiced defendants, but not so unfairly as to warrant exclusion under Rule 403). As the Tenth Circuit has repeatedly explained,

> Relevant evidence is usually prejudicial to one side or another. It only becomes unfairly prejudicial when it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged."

*Id.* (quoting *United States v. Tan*, 254 F.3d 1204, 1211–12 (10th Cir. 2001)). For example, the term "poach" is not a colorful expression concocted by the United States to inflame the passions of the jury; that term is lifted from an email in which an employee of SCA sets out his understanding of the agreement between Defendants and SCA. ECF No. 74 at ¶ 11(f) ("I thought there was a gentlemen's agreement between us and DaVita re: poaching talent."). Such descriptions are well within the liberal standard of admissibility under Rule 403 for the purpose of proving the existence of a conspiracy, under which even prejudicial conduct *outside* of a particular conspiracy may be relevant for the purpose of proving the existence of a conspiracy. *See, e.g.*, *United States v. Valencia-Montoya*, 2012 U.S. Dist. LEXIS 151534, at *31 (D.N.M. Sep. 17, 2012); *United States v. Deleon*, 2020 U.S. Dist. LEXIS 1, at *194–99 (D.N.M. Jan. 1, 2020).

The United States anticipates describing the conspiracies in a manner that reflects the

6

anticipated witness testimony and proper legal categorization of the conduct. To the extent that Defendants wish to argue that the United States has not proven the conspiracies charged in the Superseding Indictment, such arguments are not appropriate for a pretrial ruling seeking to prospectively limit the evidence that the jury may hear. This Court should reject Defendants' attempt to exclude common-sense, lay vernacular used to describe objective evidence that is directly relevant to elements of the charged crimes in the Superseding Indictment. Accordingly, Defendants' Motion must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

DATED: January 14, 2022

        Respectfully submitted,

        */s/ Sara M. Clingan*
        Sara M. Clingan, Trial Attorney
        Megan S. Lewis, Assistant Chief
        Anthony W. Mariano, Trial Attorney
        William J. Vigen, Trial Attorney
        U.S. Department of Justice, Antitrust Division
        Washington Criminal I Section
        450 Fifth Street, N.W.
        Washington, D.C. 20530
        Tel: 202-598-2737 / 202-598-8145 / 202-480-1951 / 202-353-2411
        FAX: 202-514-9082
        E-mail: sara.clingan2@usdoj.gov / megan.lewis@usdoj.gov / anthony.mariano@usdoj.gov / william.vigen@usdoj.gov

## CERTIFICATE OF SERVICE

On January 14, 2022, I filed this document with the Clerk of the Court using CM/ECF, which will serve this document on all counsel of record.

        */s/ Sara M. Clingan*
        Sara M. Clingan
        Trial Attorney
        U.S. Department of Justice
        Antitrust Division
        Washington Criminal I Section
        450 5th Street, NW
        Washington, DC 20001
        Tel: 202-480-1951
        Fax: 202-514-9082
        Sara.Clingan2@usdoj.gov
        NY Bar No. 5090998