IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. DAVITA INC.,
2. KENT THIRY,

      Defendants.

---

**UNITED STATES' SUPPLEMENTAL MOTION *IN LIMINE* TO EXCLUDE INSUFFICIENT AND IRRELEVANT EVIDENCE FOR AN ANCILLARITY DEFENSE**

---

The United States moves *in limine* to exclude evidence or argument that Defendants' conspiratorial agreements were ancillary to business transactions, unless Defendants make a satisfactory pretrial proffer that legally sufficient evidence exists to support a defense under the ancillary-restraints doctrine. The joint ventures, asset sales, and other potential transactions identified on Defendants' preliminary exhibits list would not meet the requirements of that doctrine because the charged conspiratorial agreements were not part of, let alone reasonably necessary to, any legitimate joint venture or other transaction between DaVita and its co-conspirators. To the contrary, the charged conspiracies spanned multiple years and were not connected to any particular business transaction.

On January 28, 2022, this Court denied Defendants' joint motion to dismiss, concluding that each count alleged a per se unlawful horizontal market allocation of employees. ECF No. 132. In its order, this Court recognized that Defendants reserved their right to litigate later whether a charged agreement was ancillary and that they "could choose to challenge the government's allegations that this was a naked agreement to escape a per se designation." *Id.* at

1

18.  In order to mount a valid ancillarity defense at trial (that is, to offer evidence and argument in support of the defense and to obtain an instruction on the defense), Defendants must produce a sufficient factual basis that the employee-allocation conspiracies were in fact ancillary within the meaning of the ancillary-restraints doctrine.  Absent such a factual predicate, such evidence is irrelevant under Federal Rule of Evidence 401 and inadmissible under Federal Rule of Evidence 402.  Likewise, absent that predicate, any argument that the agreements were justified by business transactions is impermissible and would serve only to confuse and mislead the jury.  Accordingly, the Court should exclude evidence of transactions offered for an improper purpose and bar argument on ancillarity, unless Defendants can establish that such evidence, if admitted, would meet their burden of production for a valid defense.

## THE ANCILLARY-RESTRAINTS DOCTRINE

The ancillary-restraints doctrine "governs the validity of restrictions imposed by a legitimate business collaboration, such as a business association or joint venture, on nonventure activities." *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006); *see United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 280–83 (6th Cir. 1898), *aff'd in relevant part & modified on other grounds*, 175 U.S. 211 (1899).  An agreement that otherwise falls into a traditional per se category will not receive per se treatment if it is an "ancillary" rather than "naked" agreement.  ECF No. 132, at 5 (citing *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1037 (N.D. Cal. 2013)).  *See also Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986).

But more than the existence of a joint venture or transaction between competitors is needed to "state a valid defense" based on the ancillary-restraints doctrine.  *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1151–52 (9th Cir. 2003) (rejecting argument that price restraint was "justified to convince the smaller associations to join the countywide MLS").

Rather, to escape per se condemnation, the charged agreement must be both (1) "subordinate and collateral," *Rothery*, 792 F.2d at 224, to a "legitimate business collaboration," *Dagher*, 547 U.S. at 7, and (2) "reasonably necessary" to achieve that collaboration's potentially procompetitive purpose, *Addyston Pipe*, 85 F. at 281; see *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1109 (9th Cir. 2021). The "subordinate and collateral to" requirement means that the agreement must be both related (collateral) and secondary (subordinate) to the "main transaction." *Rothery*, 792 F.2d at 224. And the agreement must be "reasonably necessary" to achieving the efficiency contemplated by the main transaction. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 337 (2d Cir. 2008) (Sotomayor, J., concurring) ("[C]ompetitors engaged in joint ventures may be permitted to engage in a variety of activities that would normally be illegal under a per se rule when such activities are necessary to achieve the significant efficiency-enhancing purposes of the venture."). These conditions are analyzed "at the time [the agreement] was adopted." *Polk Bros. v. Forest City Enters., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985).

For example, in *Polk Brothers*, a retailer of appliances and home furnishings and a retailer of building materials and lumber agreed to build a single building and parking lot for their two stores. *Id.* at 187. In connection with their agreement to build and maintain the facility jointly, they agreed not to compete in each other's core product lines. *Id.* Because the agreement not to compete was, "at the time it was adopted," "an integral part" of a productive cooperation to build the stores—the parties would not have cooperated without protection from competition from each other and promotional free-riding—the agreement was subject to the rule of reason. *Id.* at 189–90. Such "ancillary" restraints that are "part of a larger endeavor whose

3

success they promote," are different from "naked" restraints that do "nothing but suppress competition." *Id.* at 188–89.

By contrast, in *Blackburn v. Sweeney*, after a state court dissolved a law-firm partnership, the former partners settled their dispute by agreeing not to advertise against one another in different markets. 53 F.3d at 826–28. In arguing that their advertising restraint was not a per se unlawful market-allocation agreement, the defendants asserted that "the Agreement not to advertise in each other's territories is ancillary to the agreement to dissolve the partnership" because "the advertising restriction is a limited covenant not to compete that is part of a larger agreement, the overall effect of which is pro-competitive." *Id.* at 828. The court noted that, "[a]t first blush," the defendants' "characterization of the Agreement seems plausible," for "[t]he dissolution of the partnership into two competing economic units cannot but have a positive effect on competition in the market generally." *Id.* But "[o]n closer scrutiny," the court found that "this picture breaks down." *Id.* The court explained that, "at the time it was entered," the advertising restraint "was not necessary for the dissolution of the partnership and the resulting potential increase in competition" because the parties "had already sued to dissolve the partnership and the judge had ordered the dissolution." *Id.* "Starting then with the actual status quo of a dissolved partnership, the only effect of the Agreement was to limit the potential competition between the resulting firms." *Id.* For that reason, the advertising restraint was "naked, not ancillary, and per se illegal to boot." *Id.* at 829.

## ARGUMENT

### I. Defendants Will Not Be Able to Meet Their Burden of Production for a Defense Based on the Ancillary-Restraints Doctrine

The charged conspiracies are not part of, much less reasonably necessary to, any legitimate joint ventures or other transactions between Defendants and their co-conspirators.

4

Specifically, the Superseding Indictment charges Defendants with entering into three naked conspiracies between employers to allocate employees through agreements not to solicit employees. The conspiracies lasted for years, and encompassed broad sets of employees without limitation to particular transactions or geographical regions. Ind. ¶¶ 9 (Count 1: February 2012–July 2017), 17 (Count 2: April 2017–June 2019), 25 (Count 3: November 2013–June 2019). Based on the preliminary witness and exhibit lists that the United States and Defendants exchanged on January 24, 2022, it appears Defendants intend to assert that their employee-allocation agreements were ancillary to some unspecified other legitimate business transaction.

But the joint ventures and transactions between DaVita and its co-conspirators are not connected in time, employees, or purpose with the charged conspiracies. For example, the preliminary exhibits Defendants have identified include a 2014 purchase agreement involving affiliated entities' stakes in a specific surgery center, *see* Ex. 1; and a 2018 nondisclosure agreement related to a "possible business relationship" involving a subsidiary in a specific state, *see* Ex. 2.

Even assuming that Defendants entered into separate, legitimate business transactions with certain of their co-conspirator companies,[1] Defendants will be unable to produce evidence that the per se unlawful charged agreements were, at the time of their adoption, subordinate, collateral, and reasonably necessary to any of those transactions. For example, Count One alleges that the unlawful agreement between Defendants and SCA was formed at least as early as February 2012—thus, even facially, any legitimate business transactions that Defendants entered into after the conspiracy was formed could not meet the requirements for ancillarity. *See Polk*

---

[1] The United States reserves the right to challenge the sufficiency or legitimacy of any particular business transaction that Defendants may seek to advance, and to advance other evidentiary objections, such as Rule 403, if such evidence is not precluded pretrial.

5

*Bros.*, 776 F.2d at 189 (analyzing the question of ancillarity "[a]t the time [two competitors] strike their bargain"); *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 n.3 (1988) (recognizing that while a "classic 'ancillary' restraint is an agreement by the seller of a business not to compete within the market," "an agreement is not 'ancillary' unless it is designed to enforce a contractual obligation of one of the parties to the contract").

Defendants cannot offer later business transactions as a retrospective rationale for the naked conspiratorial agreement they previously entered.  Nor is the potential for future business transactions a valid predicate for ancillarity—if it were, any unlawful price-fixing, bid-rigging, or market-allocation agreement between competitors could be justified by the bare assertion that co-conspirators might someday do business with each other.  In other words, such an agreement does not escape per se condemnation because it suppresses competition between rivals who may someday be partners, however supposedly "ruinous" today's competition may be to tomorrow's collaboration.  *Cf. United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221 (1940) ("It has not permitted the age-old cry of ruinous competition and competitive evils to be a defense to price-fixing conspiracies.").

Any such evidence is therefore irrelevant to an ancillarity defense and inadmissible under Rule 402 if offered for that purpose.  *See United States v. Bailey*, 444 U.S. 394, 416 (1980) (explaining if testimony as to one element of a defense is insufficient even if believed, "the trial court and jury need not be burdened with testimony supporting other elements of the defense."). Defendants should not be permitted to sow confusion throughout the trial by presenting an array of irrelevant joint ventures or potential business transactions.  Nor should they be permitted to

6

offer such transactions as a backdoor attempt to impermissibly introduce purported procompetitive justifications for their per se unlawful agreements.[2]

## II. The Court Should Require Defendants to Provide Pretrial Disclosure of the Factual Basis for any Ancillarity Defense They Intend to Raise

In order to ensure a fair and efficient trial, and prohibit the introduction of evidence aimed solely at jury nullification, the Court should order Defendants to provide a detailed factual proffer of the evidence that they intend to introduce in support of any purported ancillarity defense, to enable a determination whether such evidence, if admitted at trial, would be sufficient to meet Defendants' burden of production for a valid defense under the ancillary-restraints doctrine. Certainly, if Defendants intend to seek a jury instruction on that defense, it will be their burden to produce evidence sufficient to warrant that instruction. *Cf. Beck v. United States*, 305 F.2d 595, 599 (10th Cir. 1962) ("[A] defendant in a criminal case is entitled to adequate jury instructions on his theory of defense, provided, however, there is evidence before the jury to reasonably support such theory."); *Bailey*, 444 U.S. at 415 (recognizing the burden of production requires more than "[v]ague and necessarily self-serving statements").

Whether sufficient evidence exists for an ancillarity defense at trial is a matter for the Court to decide. Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible."). Requiring a pretrial proffer will enable the Court to resolve these issues more efficiently than addressing repeated in-trial objections and will avoid prejudice from the introduction of insufficient evidence. *Cf. United States v. Dallmann*, 433 F. Supp. 3d 804, 813 (E.D. Va. 2020) (noting that where a defense presents complex issues or

---

[2] *See* United States' Omnibus Motions in Limine, ECF No. 107, filed on December 17, 2021 (setting forth supporting authorities for exclusion of evidence of procompetitive justifications or effects for a per se unlawful agreement); United States Motion to Exclude Defendants' Expert, ECF No. 106, filed on December 17, 2021 (same).

requires additional briefing ahead of trial, those factors "weigh heavily in favor of a pretrial notice and discovery requirement to avoid unnecessary delays during trial."). If Defendants would like to proffer evidence of a specific transaction to which any of the charged agreements purportedly was ancillary, they should do so before trial. *See United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990) (holding that, in the context of a duress defense, "[w]here the evidence to be presented would be insufficient as a matter of law, however, no proper interest of the defendant would be served by permitting his legally insufficient evidence to be aired at trial, and interests of judicial economy suggest that the jury should not be burdened with the matter.").

      The Court is well within its authority to require Defendants to make this type of pretrial proffer. For example, in another Sherman Act prosecution, *United States v. Nusbaum*, the defendants were charged with conspiring to rig bids and raised a joint venture/single entity defense. 2009 WL 4738075, at *1 (D. Md. Dec. 4, 2009). Following the government's motion *in limine*, the court required the defendants to proffer the facts regarding the supposed joint venture at a pretrial hearing. *Id.* The court found that the proffered facts were not sufficient to establish a joint venture, and granted the government's motion to exclude evidence and argument that the defendants were operating a joint venture. *Id.* In the same vein, if Defendants here wish to proffer facts of a specific business transaction to show that any of the employee-allocation agreements charged here was a subordinate and collateral part of that transaction and reasonably necessary to achieve that transaction's potentially procompetitive purpose, they should do so before trial. Otherwise, the Court should exclude any evidence of joint ventures or other business transactions offered, or arguments made, in support of a claim the charged agreements were ancillary restraints.

The United States does not seek to exclude all references to business transactions between Defendants and their co-conspirators. For example, some may provide context to co-conspirators' emails, and the United States expects that objections to such evidence, if any, by either party can be addressed at trial. Defendants' exhibit list suggests, however, that they intend to go far beyond that and offer evidence of a series of business transactions untethered to any proper purpose. *See* Section I, *supra*. Without a pretrial proffer, there is a meaningful risk that Defendants will mislead the jury with irrelevant and prejudicial evidence of business transactions that bear no relationship to the conspiracies charged in the Superseding Indictment. *See* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). The Court should, therefore, exercise its authority to order Defendants to proffer their basis for an ancillarity defense pretrial, and should, in the absence of legally sufficient evidence to support such a defense, exclude evidence or argument that Defendants' conspiratorial agreements were ancillary to business transactions.

## CONCLUSION

For the reasons stated above, the United States' supplemental motion *in limine* should be granted.

DATED: February 7, 2022

                                          Respectfully submitted,

                                          */s/ Megan S. Lewis*
                                          Megan S. Lewis, Assistant Chief
                                          Sara M. Clingan, Trial Attorney
                                          Anthony W. Mariano, Trial Attorney
                                          William J. Vigen, Trial Attorney
                                          Terence A. Parker, Trial Attorney
                                          U.S. Department of Justice, Antitrust Division
                                          Washington Criminal II Section
                                          450 Fifth Street, N.W.
                                          Washington, D.C. 20530
                                          Tel: 202-598-8145 / 202-598-2737 / 202-480-1951 /
                                          202-353-2411 / 202-705-6156
                                          FAX: 202-514-9082
                                          E-mail: megan.lewis@usdoj.gov /
                                          sara.clingan2@usdoj.gov /
                                          anthony.mariano@usdoj.gov /
                                          william.vigen@usdoj.gov / terence.parker2@usdoj.gov

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule 7.1(a), the United States conferred with counsel for DaVita and Thiry regarding this motion *in limine* on February 4, 2022, and DaVita and Thiry confirmed that they oppose this motion.

                                                              */s/ Megan S. Lewis*
                                                             Megan S. Lewis
                                                             Assistant Chief

## CERTIFICATE OF SERVICE

On February 7, 2022, I filed this document with the Clerk of the Court using CM/ECF, which will serve this document on all counsel of record.

                                                              */s/ Megan S. Lewis*
                                                             Megan S. Lewis
                                                             Assistant Chief