**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 21-cr-0229-RBJ

UNITED STATES OF AMERICA,

                Plaintiff,

v.

      1.  DAVITA INC.,

      2.  KENT THIRY,

                Defendants.

_____

**REVISED JOINT SET OF PROPOSED FINAL JURY INSTRUCTIONS**
_____

        In accordance with this Court's order dated March 25, 2022, ECF No. 214, the United States and the Defendants submit these revised proposed jury instructions. The parties preserve their objections. The parties have also amended certain proposed instructions beyond those described in the Court's Order. Instructions to which changes have been made from ECF No. 174 are designated with an asterisk.

        The parties respectfully reserve the right to supplement, withdraw, and/or modify these requests depending upon what arises during the course of trial, including based on the evidence presented, the arguments of counsel, and subsequent requests for instructions, if any, filed by the opposing party.

        The portions in square brackets are included for the Court's consideration, to be included or modified depending on what occurs at trial.

**Contents**

Instruction No. 1: Substantive Preliminary Instruction ......................................................... 4

Stipulated Instruction No. 2: Introduction to Final Jury Instructions.................................... 5

Stipulated Instruction No. 3: Duty to Follow Instructions..................................................... 6

Stipulated Instruction No. 4: Presumption of Innocence—Burden of Proof—Reasonable Doubt............ 7

Stipulated Instruction No. 5: Evidence—Defined—Direct and Circumstantial—Inferences ................... 8

Stipulated Instruction No. 6: Credibility of Witnesses.........................................................10

[Stipulated Instruction No. 7: Non-Testifying Defendant(s)]............................................12

[Stipulated Instruction No. 8: Evidence of Good Character]............................................13

[Disputed Instruction No. 9: Impeachment]......................................................................14

Disputed Instruction No. 10: Testimony of Certain Witnesses—Immunity...........................15

Disputed Instruction No. 11: Expert and Opinion Testimony*.............................................17

[Disputed Instruction No. 12: Summary/Overview Witnesses]* .........................................18

[Stipulated Instruction No. 13: Charts and Summaries]...................................................20

Stipulated Instruction No. 14: References by Counsel......................................................21

[Stipulated Instruction No. 15: Similar Acts]...................................................................22

Stipulated Instruction No. 16: Multiple Defendants—Multiple Counts* .............................23

Stipulated Instruction No. 17: Corporate Defendant ........................................................24

Stipulated Instruction No. 18: Consider Only Crimes Charged*.........................................26

Stipulated Instruction No. 19: Markings on Documents ...................................................27

Stipulated Instruction No. 20: Equality of Parties...........................................................28

Disputed Instruction No. 21: Section 1 of the Sherman Act and the Charge*.....................29

Disputed Instruction No. 22: Elements of a Section 1 Offense.........................................31

Stipulated Instruction No. 23: Conspiracy*.....................................................................35

Disputed Instruction No. 24: Market Allocation...............................................................37

Stipulated Instruction No. 25: On or About—Period of the Conspiracy*............................43

Disputed Instruction No. 26: "Knowingly" .....................................................................44

Disputed Instruction No. 28: "Purpose" of Allocating Markets.........................................48

Disputed Instruction No. 28: Interstate Commerce .........................................................52

Disputed Instruction No. 29: Alleged Notice and Confirmation Requirements*...................55

Disputed Instruction No. 30: Evidence of Similarity.........................................................57

[Disputed Instruction No. 31: Statements Indicating Consciousness of Guilt]....................59

Disputed Instruction No. 32: Statute of Limitations* ........................................................61

Disputed Instruction No. 33: Defense Theory of the Case*..............................................66

[Stipulated Instruction No. 34: Good Faith]*..................................................................68

Stipulated Instruction No. 35: Punishment......................................................................69

Stipulated Instruction No. 36: Duty to Deliberate—Verdict Form*..................................70

Stipulated Instruction No. 37: Communication with the Court..........................................72

[Stipulated Instruction No. 38: Modified *Allen* Instruction] ............................................73

[Stipulated Instruction No. 39: Partial Verdict Instruction]...............................................75

**Instruction No. 1: Substantive Preliminary Instruction**

[As circulated to the parties by this Court on 04/02/2022.]

**Stipulated Instruction No. 2: Introduction to Final Jury Instructions**

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

---

**Authority**

Tenth Circuit Criminal Pattern Jury Instruction 1.03 (2021, ed).

**Stipulated Instruction No. 3: Duty to Follow Instructions**

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

---

**Authority**

Tenth Circuit Criminal Pattern Jury Instruction 1.04 (2021, ed).

**Stipulated Instruction No. 4: Presumption of Innocence—Burden of Proof—Reasonable Doubt**

The government has the burden of proving each defendant guilty beyond a reasonable doubt.  The law does not require a defendant to prove his or its innocence or produce any evidence at all.  The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.  A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case.  If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find the defendant guilty.  If on the other hand, you think there is a real possibility that he is not guilty, you must give the defendant the benefit of the doubt and find him not guilty.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.05 (2021 ed.) (updated Apr. 2, 2021) (modified).

**Stipulated Instruction No. 5: Evidence—Defined—Direct and Circumstantial—Inferences**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  And my comments and questions are not evidence.

However, while you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

[Sometimes evidence was admitted only for a particular purpose and not generally for all purposes.  For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves.  You may not, however, use this evidence for any other purpose not specifically mentioned.]

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence.  The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked.  I also ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

**Authorities**

Tenth Circuit Pattern Jury Instruction Nos. 1.06 and 1.07 (2021 ed.) (updated Apr. 2, 2021) (modified); Final Jury Instructions, Instr. No. 4, *United States v. Harmon*, No. 1:18-cr-00270 (D. Colo. May 9, 2019), ECF 78 (Jackson, J.); Final Jury Instructions, Instr. No. 4, *United States v. Wu*, No. 1:18-cr-00293 (D. Colo. Apr. 12, 2019), ECF 73 (Jackson, J.); Final Jury Instructions, Instr. No. 4, *United States v. Coddington*, No. 1:15-cr-00383 (D. Colo. July 25, 2018), ECF 234 (Jackson, J.).

**Stipulated Instruction No. 6: Credibility of Witnesses**

I remind you that it is your job to decide whether the government has proved the guilt of the defendants beyond a reasonable doubt.  In doing so, you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case.  You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.  In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome in this case?  Did the witness have any relationship with either the government or the defense?  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he/she testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

[You have heard the testimony of [state, local, and] federal law enforcement officials.  The fact that a witness may be employed by the federal[, state or local] government as a law

enforcement official does not mean that the witness's testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.]

[Defendant Kent Thiry has testified.  You should treat this testimony just as you would the testimony of any other witness.]

In reaching a conclusion on particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

---

**Authorities**

Tenth Circuit Criminal Pattern Jury Instruction 1.08 (2021, ed); Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 8-9; United States' Proposed Jury Instructions, *United States v. Aiyer*, No. 18-cr-333, Dkt. 122 (S.D.N.Y. Oct. 1, 2019) at 36 (Request No. 22 – Law Enforcement Witness); Jury Instructions, *United States v Lischewski,* 3:18-cr-00203 (N.D. Cal. Dec. 2, 2019), Dkt. 626 at 4 (Jury Instruction No. 3 – Defendant's Decision to Testify).

**[Stipulated Instruction No. 7: Non-Testifying Defendant(s)]**

Defendant Thiry did not testify and I remind you that you cannot consider his decision not to testify as evidence of guilt.  You must understand that the Constitution of the United States grants to a defendant the right to remain silent.  That means the right not to testify.  That is a constitutional right in this country, it is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify [or call any witnesses].

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.08.1 (2021 ed.) (updated Apr. 2, 2021) (modified).

**[Stipulated Instruction No. 8: Evidence of Good Character]**

[Defendant Thiry has offered evidence of his reputation for good character.]  [Defendant Thiry has offered evidence of someone's opinion as to his good character.]  You should consider such evidence along with all the other evidence in the case.

Evidence of good character may be sufficient to raise a reasonable doubt whether the defendant is guilty, because you may think it improbable that a person of good character would commit such a crime.  Evidence of a defendant's character, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt.

You should also consider any evidence offered to rebut the evidence offered by the defendant.

You should always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.09 (2021 ed.) (updated Apr. 2, 2021) (modified).

**[Disputed Instruction No. 9: Impeachment]**

| Offered by the United States | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| You have heard the testimony of [name of witness].  You have also heard that, before this trial, he or she made a statement that may be different from his or her testimony here in court.<br><br>That earlier statement was brought to your attention only to help you decide how believable his testimony in this trial was.  You cannot use it as proof of anything else.  You can only use it as one way of evaluating his testimony here in court. | You have heard evidence that [name of witness], a witness, [specify basis for impeachment]. You may consider this evidence in deciding whether or not to believe this witness and how much weight to give to the testimony of this witness. | |
| **Authority**<br><br>Tenth Circuit Pattern Jury Instruction No. 1.10 (2021 ed.) (updated Apr. 2, 2021) (modified). | **Authorities**<br><br>Jury Instructions, *United States v. Lischewski,* 3:18-cr-00203 (N.D. Cal. Oct. 29, 2019), Dkt. 454 at 34 (Jury Instruction No. 31 – Impeachment Evidence - Witness); Ninth Circuit Model Jury Instruction (2010) No. 4.3; *see also* Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 13-14 (arguing that the Division's proposed instruction is incomplete because, for example, a trial witness may be impeached with grand jury testimony, and the inconsistent statement would also be admissible for the truth of the matter asserted in such circumstance). | |

**Disputed Instruction No. 10: Testimony of Certain Witnesses—Immunity**

| Offered by the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| A person may testify under a grant of immunity (an agreement by the government, such as a non-prosecution agreement).  It is permissible for the government to make such a promise and the government's reasons for doing so are not relevant to you.  His or her testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence.  You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness.  You should consider whether testimony under a grant of immunity has been affected by the witness's own interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against the defendants.  On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement.  After considering these things, you may give testimony given under a grant of immunity such weight as you feel it deserves.  You should not convict a defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt. | You heard testimony from [Individual X], who is subject to an immunity and cooperation agreement with the government.  The government has exclusive authority to grant immunity to a witness.  This agreement is not evidence of guilt of any of the defendants and you may consider it only in determining [Individual X]'s credibility.<br><br>You also saw evidence that [Company X] is subject to an immunity and cooperation agreement with the government, which grants immunity to the company and its employees, including [TK], in exchange for cooperation. The government has exclusive authority to grant immunity to a company and its employees.  This agreement is not evidence of guilt of any of the defendants and you may consider it only in determining the credibility of [Company X] witnesses, including [TK], who received immunity under it.<br><br>You should consider the testimony of these witnesses with greater care and caution than the testimony of an ordinary witness. You should consider whether the testimony and credibility of these witnesses has been affected by the witness's own interest, the promise not to prosecute them personally, the government's agreement, the witness's interest in the outcome of the case, or by any prejudice he may have against | |

| | | |
|---|---|---|
| | some or all of the defendants. On the other hand, you should also consider that these witnesses can be prosecuted for perjury for making a false statement. After considering these things, you may give their testimony such weight as you feel it deserves. | |
| **Authorities** | **Authorities** | |
| Tenth Circuit Pattern Jury Instruction No. 1.14 (2021 ed.) (updated Apr. 2, 2021) (modified). *Cf.* Final Jury Instructions, Instruction No. 6, *United States v. Gerhmann*, No. 1:15-cr-00303 (D. Colo. Nov. 2, 2018), ECF 161 ("Plea bargaining is lawful and proper, and the rules of this court expressly provide for it."); Final Jury Instructions, Instruction No. 3, *United States v. Coddington*, No. 1:15-cr-00383 (D. Colo. July 25, 2018), ECF 234 ("Plea bargaining is lawful and proposer, and the rules of this court expressly provide for it."); *see also* Sixth Circuit Pattern Jury Instruction No. 7.07 (2021 ed.) (updated Oct. 1, 2021) (discussing immunity agreements, "It is permissible for the government to make such a promise."). *See also* United States' Brief in Support of Disputed Proposed Jury Instructions, ECF No. 178 at 2 (noting that Defendants' proposed adoption of the *Penn* instruction would be inappropriate in this case, where the United States anticipates that its witnesses testifying under immunity agreements *can* provide testimony sufficient to support a guilty verdict for Thiry and DaVita on the counts relevant to their testimony). | Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 12; *see also* Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 14 (arguing that the Division's proposed instruction is inappropriate because "the Division points to no court adopting its modification to the Tenth Circuit Pattern Instructions," whereas "defendants follow verbatim the instruction given in *Penn*, Dkt. 921 at 12, and thus, their instruction is proper."). | |

**Disputed Instruction No. 11: Expert and Opinion Testimony\***

| Position of the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| The United States opposes this instruction in its entirety on the basis that expert testimony should be excluded, for the reasons set forth in its pending Motion for a Daubert Hearing and to Exclude Certain Opinion, ECF No. 213, filed on 03/24/22.  If the Court permits expert testimony, the United States does not oppose the 10th Circuit Pattern instruction language. | During the trial you heard the testimony of Dr. Pierre-Yves Cremieux, who expressed opinions concerning [describe trial testimony]. In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.<br><br>You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial. | |
| **Authorities** | **Authorities**<br><br>Tenth Circuit Criminal Pattern Jury Instruction 1.17(2021, ed). | |

**[Disputed Instruction No. 12: Summary/Overview Witnesses]\***

| Position of the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| The United States opposes this instruction in its entirety in light of the parties' stipulation during the motion hearing about the anticipated testimony from the FBI Agent. *See* ECF No. 210 (denying motion on summary testimony as moot). | Agent [XXX] testified as a summary witness in this case. A summary witness is sometimes used in cases where there are a great number of documents in evidence, where testimony has been long and where there have been a multiplicity of matters that have been testified to.

I have previously instructed you, and I remind you now, that such witness testimony is not binding on you in any way. Agent [XXX] has summarized certain pieces or certain types of evidence but, of course, you are the triers of fact. It will be ultimately up to you to decide what evidence to believe or what parts of evidence to credit or discredit. You do not have to accept as true Agent [XXX]'s testimony in its entirety or any part of it. You can totally disregard his testimony if you wish. That is your prerogative as the fact-finder. That testimony serves merely as a summary of evidence that you will then evaluate and determine what weight, if any, to give any of this evidence.

So I warn you that Agent [XXX]'s testimony was nothing more than a summary of the evidence. It is not to be taken as truthful as to what that evidence is because, again, that is something that you must determine from the evidence that has been admitted in this case, both in the form of testimony of witnesses and in the form of the numerous documents that you have seen admitted in this case and that, ultimately, you will have to access during your deliberations in the jury room. | |

| Authorities | Authorities | |
| --- | --- | --- |
| | Jury Instructions, *United States v. Wittig et al,* No. 5:03-CR-40142 (D. Kan. Sept. 15, 2005), Dkt. 528-1 at 17; Mar. 3, 2022 Mot. Hrg. Tr. at 54-56 (government confirmed they "are not going to have [their agent testifying at trial], like Agent Timens did [at the *James* hearing], state this person was a co-conspirator," which defendants objected to "because we think it's beyond the proper purpose of a summary witness"; but government also confirmed that they would have their agent "explain who sent the email to who, and what those persons' titles were," with respect to emails the agent was not on and has no personal or percipient knowledge of, which is classic summary witness testimony); *United States v. Ray*, 370 F.3d 1039, 1048 n. 8 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005) and *opinion reinstated in part*, 147 F. App'x 32 (10th Cir. 2005) (noting the fact that the "District Court explicitly instructed the jury on the proper use of the testimony and charts" as factor in concluding that the summary witness testimony did not prejudice the jury); Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 18 (arguing that this instruction is necessary because "the jury should be instructed on the limitations" of summary evidence, which "raises the very real specter that the jury verdict could be influenced by statements of fact or credibility assessments in the overview but not in evidence."). | |

**[Stipulated Instruction No. 13: Charts and Summaries]**

During the trial, certain summaries prepared by [the government/the defense] were

admitted in evidence because they may assist you in understanding the evidence that has

been presented. The summaries themselves are not evidence of the material they summarize and

are only as valid and reliable as the underlying material they seek to summarize.

You may give a summary exhibit entire weight, some weight, or no weight at

all depending on your assessment of the underlying material and the accuracy of the summary.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt.

921 at 31.

**Stipulated Instruction No. 14: References by Counsel**

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 13.

**[Stipulated Instruction No. 15: Similar Acts]**

You have heard evidence of other [crimes] [acts] [wrongs] engaged in by the defendants.

You may consider that evidence only as it bears on the defendants' [e.g., motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident] and for no other purpose.

Of course, the fact that the defendants may have previously committed an act similar to the one charged in this case does not mean that the defendants necessarily committed the act charged in this case.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.30 (2021 ed.) (updated Apr. 2, 2021) (modified).

**Stipulated Instruction No. 16: Multiple Defendants—Multiple Counts\***

A separate crime is charged against both of the defendants in each count of the Indictment.  You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant on each count.  But as I will next instruct you, you can consider the actions and intent of Defendant Thiry, as an agent of Defendant DaVita, in determining whether DaVita is guilty or not guilty.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendant or counts.

---

**Authorities**

Tenth Circuit Pattern Jury Instruction No. 1.22 (2021 ed.) (updated Apr. 2, 2021) (modified); *see, e.g.*, *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 204–05 (3d Cir. 1970) (approving instruction in a criminal antitrust conviction for price fixing, "When the act of the agent is within the scope of his employment or his apparent authority, the corporation is held legally responsible for it, although what he did may be contrary to his actual instructions and may be unlawful.").

**Stipulated Instruction No. 17: Corporate Defendant**

Defendant DaVita, Inc. is a corporation.

A corporation is a legal entity, and it may be found guilty of a criminal offense. A corporation is entitled to the same fair trial and presumption of innocence as an individual, and it may be found guilty only if the evidence establishes its guilt beyond a reasonable doubt. All persons, including corporations, stand equal before the law.

Under the law, a corporation is a person, but it can act only through its agents—such as its directors, officers, employees, or others acting on its behalf. A corporation is legally bound by the acts and statements its agents do or make within the scope of their employment or within the scope of their authority.

An act or statement is within an agent's scope of employment or authority if it relates directly to his general duties for the corporation. The corporation need not have directed or authorized the act or statement, either orally or in writing.

Additionally, in committing the offense, the agent must have intended, at least in part, to benefit the corporation. The fact that he may have acted for other reasons as well, such as for his own personal benefit or for the benefit of a different corporation, is of no consequence. And the agent's acts or statements need not actually have resulted in any benefit to the corporation.

[The fact that a corporation has instructed its agents not to violate the Sherman Act or other laws does not excuse the corporation from responsibility for the unlawful acts or statements of its agents done within the scope of their employment or authority.]

## Authorities

1A Kevin F. O'Malley, et al., *Fed. Jury Practice & Instructions: Criminal* § 18.05 (6th ed. 2006); 3d Cir. Model Crim. Jury Instr. 7.06 (2018); 7th Cir. Pattern Crim. Jury Instrs. 5.03, 5.04 (2020); 8th Cir. Model Crim. Jury Instr. 5.03 (2020); *United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 196 (4th Cir. 2018); *United States v. Potter*, 463 F.3d 9, 25 (1st Cir. 2006) ("The case law has rejected arguments that the corporation can avoid liability by adopting abstract rules that no agent can make an unlawful price-fixing contract . . . ."); *United States v. Sun-Diamond Growers of Cal.*, 138 F.3d 961, 970–71 (D.C. Cir. 1998); *United States v. Basic Constr. Co.*, 711 F.2d 570, 572–573 (4th Cir. 1983) ("These cases hold that a corporation may be held criminally responsible for antitrust violations committed by its employees if they were acting within the scope of their authority, or apparent authority, and for the benefit of the corporation, even if, as in *Hilton Hotels* and *American Radiator*, such acts were against corporate policy or express instructions."); *United States v. Beusch*, 596 F.2d 871, 877 (9th Cir. 1979) (approving instruction, "A corporation may be responsible for the acts of its agents done or made within the scope of [their] authority, even though the agent's conduct may be contrary to the corporation's actual instruction or contrary to the corporation's stated policies."); *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1090 (5th Cir. 1978); *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 204–05 (3d Cir. 1970) (criminal antitrust conviction for price fixing) (approving instruction, "When the act of the agent is within the scope of his employment or his apparent authority, the corporation is held legally responsible for it, although what he did may be contrary to his actual instructions and may be unlawful.").

**Stipulated Instruction No. 18: Consider Only Crimes Charged\***

You are here to decide whether the government has proved beyond a reasonable doubt that each defendant is guilty of the crimes charged.  The defendants are not on trial for any act, conduct, or crime not charged in the Indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged.  The fact that another person or company *also* may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether each defendant has been proved guilty of the crime charged.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.19 (2021 ed.) (updated Apr. 2, 2021) (modified).

**Stipulated Instruction No. 19: Markings on Documents**

Many of the documents admitted in the trial are marked as "confidential," "highly confidential," or with something similar, generally on the bottom of the page. These markings were added as part of the litigation after the creation of the documents, have no significance to the contents of the documents, and should be disregarded.

---

**Authority**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 30.

**Stipulated Instruction No. 20: Equality of Parties**

The fact that this prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that granted to defendants or any other party to a legal case. All parties, whether the government or individuals, stand as equals at the bar of justice.

---

**Authority**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 34.

**Disputed Instruction No. 21: Section 1 of the Sherman Act and the Charge\***

| Offered by the United States* | Position of Defendants* | Comments by Chambers |
|---|---|---|
| The Indictment charges each defendant with violating Section 1 of the Sherman Act.  Section 1 of the Sherman Act outlaws every "conspiracy, in restraint of trade or commerce among the several States or with Foreign nations," which includes a conspiracy to allocate the market for employees. Counts One, Two, and Three charge separate conspiracies:<br><br>For Count One, the Indictment charges that beginning at least as early as February 2012 and continuing until at least as late as July 2017, the defendants entered into and engaged in a conspiracy with Surgical Care Affiliates (SCA) and others to allocate the market for DaVita's and SCA's senior-level employees between their companies, in violation of Section 1 of the Sherman Act.<br><br>For Count Two, the Indictment charges that beginning at least as early as April 2017 and continuing until at least as late as June 2019, the defendants entered into and engaged in a conspiracy with [Company B] and others to allocate the market for DaVita's employees, in violation of Section 1 of the Sherman Act.<br><br>For Count Three, the Indictment charges that beginning at least as early as November 2013 and continuing until at least as late as June 2019, the defendants entered into and engaged in a conspiracy with [Company C] and others to | Defendants oppose this instruction in its entirety.  *See* Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 12, n.5 (arguing that the Division's proposed instruction is inappropriate because the charges are already described in other jury instructions). |  |

| | | |
|---|---|---|
| allocate the market for DaVita's employees, in violation of Section 1 of the Sherman Act. | | |
| **Authorities**<br><br>15 U.S.C. § 1; Order Resolving Disputes on Proposed Jury Instructions, ECF No. 214 at 2. Indictment, *United States v. DaVita, Inc.*, No. 1:21-cr-00229-RBJ (D. Colo. Nov. 11, 2021), ECF No. 74; Order Denying Defendants' Mot. to Dismiss, ECF No. 132. | **Authorities** | |

**Disputed Instruction No. 22: Elements of a Section 1 Offense**

| Offered by the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| In order to establish the offense of conspiracy to allocate the market for employees charged in the Indictment, the government must prove each of these elements beyond a reasonable doubt:<br><br>1.    A conspiracy between two or more competitors for employees to allocate the market for employees or particular employees as alleged in each count of the Indictment existed on or about the time period alleged in the Indictment;<br><br>2.   The defendant knowingly— that is, voluntarily and intentionally—joined or participated in each of the conspiracies charged in the Indictment, with the purpose of allocating the market between DaVita and SCA for their senior-level employees with respect to Count 1, and the market for DaVita's employees with respect to the companies in Counts 2 and 3; and<br><br>3.   Each conspiracy occurred in the flow of, or substantially affected, involved interstate trade or commerce.<br><br>If you find from your consideration of all the evidence that the government has proven each of these elements beyond a reasonable doubt, then you should find the defendant guilty. | Each defendant is charged in the indictment with three violations of 15 U.S.C. § 1 of the Sherman Act. This law makes it a crime to unreasonably restrain trade by entering into a horizontal market allocation agreement. The indictment charges the defendants with: (1) a conspiracy with Surgical Care Affiliates to allocate the market for senior executives beginning at least as early as February 2012 and continuing at least as late as July 2017; (2) a conspiracy with [Company B] to allocate the market for employees beginning at least as early as April 2017 and continuing at least as late as June 2019; and (3) a conspiracy with [Company C] to allocate the market for employees beginning at least as early as November 2013 and continuing until at least as late as June 2019.<br><br>To find a defendant guilty of this crime, you must be convinced that the government has proved, for each count, each of the following elements beyond a reasonable doubt that:<br><br>1.  (i) A conspiracy existed; (ii) to allocate the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3); (iii) on or about the times alleged;<br><br>2.  Defendants (i) knowingly entered into the conspiracy to allocate the market; (ii) with the purpose of allocating the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3); and | |

| | | |
|---|---|---|
| If, on the other hand, if you find from your consideration of all the evidence that the government has failed to prove any of these elements beyond a reasonable doubt, then you should find the defendant not guilty. | 3. The conspiracy occurred in the flow of, or substantially affected, interstate trade or commerce.<br><br>If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you must find the defendants guilty. If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you must find the defendants not guilty. | |
| **Authorities**<br><br>Order Resolving Disputes on Proposed Jury Instructions, ECF No. 214; 15 U.S.C. § 1; Elements of the Offense, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law ("One: that the conspiracy described in the indictment existed at or about the time alleged; Two: that the defendant knowingly became a member of the conspiracy; and Three, that the conspiracy describe in the indictment either affected interstate [ ] commerce… or occurred within the flowed of interstate commerce …"); *United States v. Metro. Enters., Inc.*, 728 F.2d 444 (10th Cir. 1984); *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1273 (10th Cir. 2018); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469 (10th Cir. 1990). | **Authorities**<br><br>• **Proposed Language**: Order Resolving Disputes on Proposed Jury Instructions, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Mar. 25, 2022), Dkt. 214 at 8-11 (describing how the parties should structure the elements instruction); *id.* at 4 (instructing the parties to use the word "market" in jury instructions); Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 16 (Instruction No. 14) (reflecting elements in a traditional price-fixing case).<br><br>• **The "Market"**: Order Resolving Disputes on Proposed Jury Instructions, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Mar. 25, 2022), Dkt. 214 at 2 ("The novelty of this case persuades me to depart from the instructions of customer allocation cases…. I am conscious and careful in this case not to enlarge the traditional 'market allocation' per se category. Including the word "market" in descriptions of the offense ties the | |

government's burden to the traditional per se category."), 2-3 (considering and rejecting Suntar Roofing), 3 ("Although the superseding indictment alleges an agreement 'to allocate employees,' its characterization of the agreement as a per se unlawful restraint of trade implies the allocation of a market for employees consistent with the per se category 'market allocation agreement.' I denied defendants' motion to dismiss on this basis."), 6 (holding that "a horizontal market allocation requires cessation of 'meaningful competition' *in the allocated market*" (emphasis added) and indicating that the government must prove, "in this case, a conspiracy to actually allocate"—i.e., a conspiracy to "ce[ase] [] 'meaningful competition' *in the allocated market*" (emphasis added)).

- *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) ("[E]xperienced NML agents do not comprise the entire set of suppliers of their services. Thus, while the Agreement may constrain General Agents to some degree, it does not allocate the market for agents to any meaningful extent.").

- *Les Shockey Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ("[R]emoval of one or a few competitors need not equate with injury to competition . . . [C]laimants must plead and prove a reduction of competition in the market in general, and not mere injury to their own positions as competitors in the market.").

|  | • Order on Defendants' Motion to Dismiss, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Jan. 28, 2022), Dkt. 132 at 18-19 ("[A]t trial, the government will not merely need to show that the defendants entered the non-solicitation agreement and what the terms of the agreement were. It will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of allocating the market for senior executives (Count 1) and other employees (Counts 2 and 3). … Similarly, [] the government will have to prove more than that defendants had entered into a non-solicitation agreement—it will have to prove that the defendants intended to allocate the market as charged in the indictment."). <br><br> • Instructing jury that "market" is "market for employees or particular employees" would constitute reversible constructive amendment of indictment.  *See United States v. Miller*, 891 F.3d 1220, 1231 (10th Cir. 2018) (vacating conviction and explaining that "constructive amendment occurs when the indictment alleges a violation of the law based on a specific set of facts, but the evidence and instructions then suggest that the jury may find the defendant guilty based on a different, even if related, set of facts"). |  |

**Stipulated Instruction No. 23: Conspiracy\***

In the first element, I referred to conspiracy. I will now explain that term. Conspiracy is often described as a partnership in crime, in which each person found to be a member of the conspiracy is liable for all reasonably foreseeable acts and statements of the other members made during the existence of and in furtherance of the conspiracy.

To prove that a conspiracy existed, the evidence must show that the alleged members of the conspiracy in some way came to an agreement or mutual understanding to accomplish some unlawful purpose. Direct proof of a conspiracy may not be available. A conspiracy may, however, be disclosed by the circumstances or by the acts of the members, such as their course of dealings or other circumstances. Therefore, you may infer the existence of a conspiracy from what you find the members actually did or said.

To establish the existence of a conspiracy, the evidence need not show that the members of the conspiracy entered into any express, formal, or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished.

Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy. If actions were taken independently by them, without any agreement or mutual understanding among them, then there would be no conspiracy.

A conspiracy may vary in its membership from time to time. It may be formed without all the parties coming to an agreement at the same time, knowing all the details of the agreement,

or knowing who all the other members are.  It is not essential that all members acted exactly alike, or agreed to play any particular part in carrying out the agreement.  The unlawful agreement may be proven if the evidence establishes that the parties each aimed to accomplish a common purpose.

In determining whether a conspiracy has been proved, you must view the evidence as a whole, and not piecemeal.  You should consider the actions and statements of all the alleged conspirators.  The conspiracy may be inferred from all the circumstances and the actions and statements of the alleged participants.

Acts that are, by themselves, totally innocent acts, may be among the acts that make up a conspiracy.

---

## Authorities

Conspiracy Explained, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law.

**Disputed Instruction No. 24: Market Allocation**

| Offered by the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| The first element is the existence a particular type of conspiracy, a conspiracy to allocate the market for employees as charged in each count of the Indictment. A conspiracy to allocate the market for employees is an agreement or mutual understanding among competitors for employees not to compete with one another for the services of an employee or set of employees.  In order to prove that a conspiracy to allocate the market for employees existed, the government must prove that the defendant conspired to suppress meaningful competition for the services of an employee or set of employees.  The government does not need to prove that the defendant agreed to allocate the entire market for employees or that the conspiracy succeeded in actually allocating the market for employees, so long as the defendant conspired to do so, as charged in this case.<br><br>You may find that a conspiracy to allocate the market for employees existed even though you find that employees' switching employers was possible or that employees switched employers in a few cases. If you find the government has proven such an agreement or mutual understanding beyond a reasonable doubt, then the government has satisfied its burden for this element.<br><br>A conspiracy to allocate the market for employees can take various | The first element of the offense also requires the government to prove that defendants entered into horizontal market allocation agreements.  To allocate means to divide.<br><br>The government alleges that Defendants conspired to allocate the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3) by entering into non-solicitation agreements.  Not every non-solicitation agreement, however, would allocate a market as charged in the indictment.  A horizontal market allocation requires cessation of meaningful competition in the allocated market. Thus, the government must prove beyond a reasonable doubt that the defendants entered into a conspiracy to actually allocate the market to a meaningful extent.  The fact that a non-solicitation agreement may constrain the companies in recruiting each other's employees to some degree does not by itself allocate the market for employees. | |

forms. Such a conspiracy exists, for example, where two or more competitors agree to not solicit the other's employees for the purpose of allocating the market for employees.

If you should find that a defendant entered into a conspiracy to allocate the market for employees, the fact that a defendant or their co-conspirator did not take any steps to effectuate the conspiracy, that one or more of them did not abide by the conspiracy, that one or more of them may not have lived up to some aspect of the conspiracy, or that they may not have been successful in achieving their objectives, is no defense. The agreement or mutual understanding itself is the crime, even if it is never carried out.

If the conspiracy charged in each count of the Indictment is proved, it is no defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition. Nor is it a defense that the conspirators did not attempt to conspire with all of their competitors. Similarly, the conspiracy is unlawful even if it did not extend to all types of employees of the conspirators or did not affect all of their employees.

You need not be concerned with whether the conspiracy was reasonable or unreasonable, the justifications for the conspiracy, or the harm, if any, done by it. It is not a defense and not relevant that the parties may have acted with good motives, had a business justification, or have thought that what they were doing was legal, or

| | | |
|---|---|---|
| that the conspiracy may have had some good results.  If there was, in fact, a conspiracy as charged, it was illegal. | | |
| **Authorities** | **Authorities** | |
| Order Resolving Disputes on Proposed Jury Instructions, ECF No. 214 at 4–8 ("Finally, the government need not prove that defendants allocated the entire market for employees. The Tenth Circuit made this clear when it said that an agreement may be a horizontal market allocation agreement even though 'the alleged agreement would only affect a small number of potential customers.'" (quoting *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1277 (10th Cir. 2018))); *id.* at 11 ("[W]hether a market allocation agreement is justified should have no bearing on the question of whether it existed"); Horizontal Allocations, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law ("If you should find that the defendants and alleged coconspirators entered into the charged agreement to allocate or divide [markets] [customers] [products] [output], the fact that the defendants or their alleged coconspirators did not abide by it, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have been successful in achieving their objectives, is no defense. The agreement is the crime, even if it was never carried out.); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n. 59 (1940) (rejecting argument "power or ability to commit an | • **Proposed Language**: Order Resolving Disputes on Proposed Jury Instructions, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Mar. 25, 2022), Dkt. 214 at 4, 8; *id.* at 6 (holding that "a horizontal market allocation requires cessation of 'meaningful competition' *in the allocated market*" (emphasis added)).<br><br>• Order on Defendants' Motion to Dismiss, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Jan. 28, 2022), Dkt. 132 at 17 ("Here, the government has sufficiently alleged that defendants allocated the market with their non-solicitation agreement. It does not follow that every non-solicitation agreement or even every no-hire agreement would allocate the market and be subject to per se treatment. …What I conclude is that if naked non-solicitation agreements or no-hire agreements allocate the market, they are per se unreasonable.").<br><br>• Jury Instructions, Dkt. 1232, *In re: Wholesale Grocery Products Antitrust Litigation* (0:09-md-02090-ADM-TNL) (D. Minn) (Apr. 20, 2018) ("Allocate means to divide."); *In re: Wholesale Grocery Products Antitrust Litigation*, 957 F.3d 879 (8th Cir. 2020) (affirming "[a]llocate means to divide" instruction). | |

offense was necessary in order to convict a person of conspiring" in violation of Section 1 of the Sherman Act" because "it is well established that a person 'may be guilty of conspiring, although incapable of committing the objective offense'"; and holding that no showing "that the conspirators had the means available for accomplishment of their objective" to establish violation because it "is the 'contract, combination * * * or conspiracy, in restraint of trade or commerce' which § 1 of the Act strikes down, whether the concerted activity be wholly nascent or abortive on the one hand, or successful on the other.").

*See also United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) (noting that "[t]he Court has consistently rejected the notion that naked restraints of trade are to be tolerated because they are well intended"); *Socony-Vacuum*, 310 U.S. at 221–22 (the Sherman Act does not allow as justifications "the good intentions of the members of the combination"); *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1273 (10th Cir. 2018) ("It is undisputed that an agreement to allocate or divide customers between competitors in the same horizontal market, constitutes a per se violation of § 1 of the Sherman Act") (citing *Topco Assocs.*, 405 U.S. at 610–12 (quotation marks omitted)); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990) ("[W]e concur with the determination of the trial court and hold that the activity alleged in the indictment in this case, an agreement to allocate or divide

- **The "Market"**: Order Resolving Disputes on Proposed Jury Instructions, United States v. DaVita et al., 21-cr-229 (D. Colo. Mar. 25, 2022), Dkt. 214 at 2 ("The novelty of this case persuades me to depart from the instructions of customer allocation cases…. I am conscious and careful in this case not to enlarge the traditional 'market allocation' per se category. Including the word "market" in descriptions of the offense ties the government's burden to the traditional per se category."), 2-3 (considering and rejecting *Suntar Roofing*), 3 ("Although the superseding indictment alleges an agreement 'to allocate employees,' its characterization of the agreement as a per se unlawful restraint of trade implies the allocation of a market for employees consistent with the per se category 'market allocation agreement.' I denied defendants' motion to dismiss on this basis."), 6 (holding that "a horizontal market allocation requires cessation of 'meaningful competition' in the allocated market" (emphasis added) and indicating that the government must prove, "in this case, a conspiracy to actually allocate"—i.e., a conspiracy to "ce[ase] [] 'meaningful competition' in the allocated market" (emphasis added)).

- *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) ("[E]xperienced NML agents do not comprise the entire set of suppliers of their services. Thus,

customers between competitors within the same horizontal market, constitutes a per se violation of § 1 of the Sherman Act."); *United States v. McKesson & Robbins, Inc.*, 351 U.S. 305, 309–10 (1956) ("It makes no difference whether the motives of the participants are good or evil; whether the price fixing is accomplished by express contract or by more subtle means . . . whether the effect of the agreement is to raise or to decrease prices."); *United States v. Reicher*, 983 F.2d 168, 170–72 (10th Cir. 1992) (holding that "the determination of a per se antitrust violation depends on whether there was an agreement to subvert the competition, not on whether each party to the scam could perform"). *Cf. United States v. Suntar Roofing, Inc.*, 709 F. Supp. 1526, 1536 (D. Kan. 1989), *aff'd*, 897 F.2d 469 (10th Cir. 1990) (quoting the full customer allocation instruction, which provides, in part, "A conspiracy to allocate customers is an agreement or understanding between competitors not to compete for the business of a particular customer or customers."); *United States v. True,* No. 4:97-cr-11, ECF No. 246, Trial Tr. 2092 (W.D. Ky. Sept. 17, 1998) ( "Customer allocation is an agreement or understanding between competitors not to compete for the business of a particular customer or customers. Customer allocation exists, for example, where two or more competitors agree not to solicit or sell to the customer or customers to which the other sells.").

while the Agreement may constrain General Agents to some degree, it does not allocate the market for agents to any meaningful extent.").

- *Les Shockey Racing, Inc. v. Nat' Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ("[R]emoval of one or a few competitors need not equate with injury to competition . . . [C]laimants must plead and prove a reduction of competition in the market in general, and not mere injury to their own positions as competitors in the market.").

- Order on Defendants' Motion to Dismiss, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Jan. 28, 2022), Dkt. 132 at 18-19 ("[A]t trial, the government will not merely need to show that the defendants entered the non-solicitation agreement and what the terms of the agreement were. It will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of allocating the market for senior executives (Count 1) and other employees (Counts 2 and 3). … Similarly, [] the government will have to prove more than that defendants had entered into a non-solicitation agreement—it will have to prove that the defendants intended to allocate the market as charged in the indictment.").

- Instructing jury that "market" is "market for employees or particular employees" would constitute reversible constructive amendment of indictment.  *See United States v. Miller*, 891 F.3d

|  | 1220, 1231 (10th Cir. 2018) (vacating conviction and explaining that "constructive amendment occurs when the indictment alleges a violation of the law based on a specific set of facts, but the evidence and instructions then suggest that the jury may find the defendant guilty based on a different, even if related, set of facts"). |  |
| --- | --- | --- |

**Stipulated Instruction No. 25: On or About—Period of the Conspiracy\***

The final component of the first element is that the government must prove that the conspiracy existed on or about the times alleged. The Indictment charges a conspiracy in Count One beginning at least as early as February 2012 and continuing at least as late as July 2017; a conspiracy in Count Two beginning at least as early as April 2017 and continuing at least as late as June 2019; and a conspiracy in Count Three beginning at least as early as November 2013 and continuing at least as late as June 2019. For each count, the government does not need to prove that the conspiracy began or ended on those exact dates. The government must prove beyond a reasonable doubt that the conspiracy existed reasonably near the time period alleged in that count.

---

**Authorities**

Tenth Circuit Pattern Jury Instruction No. 1.18 (2021 ed.) (updated Apr. 2, 2021) (modified); *United States v. Poole*, 929 F.2d 1476, 1482–83, 1182 n.5 (10th Cir. 1991) (upholding jury instruction that "it is not necessary that the proof establish with certainty the exact date of the alleged offenses" because that instruction "has been approved by this Circuit on numerous occasions"); *In re Urethane Antitrust Litig.*, 2013 WL 2097346, at \*9 (D. Kan. May 15, 2013), *amended*, 2013 WL 3879264 (D. Kan. July 26, 2013), *aff'd*, 768 F.3d 1245 (10th Cir. 2014) (in an antitrust case, "the jury was not required to find that a conspiracy existed for the entire period alleged by plaintiffs").

## Disputed Instruction No. 26: "Knowingly"

| Offered by the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| The second element the government must prove beyond a reasonable doubt for you to find each defendant guilty is that each defendant knowingly joined or participated in the employee-market-allocation conspiracy charged in each count of the Indictment.<br><br>To act "knowingly" means to act voluntarily and intentionally, and not because of a mistake or accident.  Therefore, before you may convict the defendant, the evidence must establish that the defendant voluntarily became a member of the conspiracy to allocate the market for employees with the intent to aid or further some purpose of the conspiracy.<br><br>As I have already instructed you, a conspiracy to allocate the market for employees is in itself an unreasonable restraint of trade and illegal; the government does not have to prove that the defendants specifically intended to unreasonably restrain trade or produce anticompetitive effects. The intent to unreasonably restrain trade is satisfied with the finding of intent to allocate the market for employees.  Therefore, you must disregard whether defendants knew allocating employees was prohibited, as well as whether there were possible good motives. You must disregard any questions on the reasonableness, or economic impact, of the defendants' actions. | The second element of the offense requires the government to prove beyond a reasonable doubt that defendants knowingly joined each of the conspiracies charged in the indictment. To act "knowingly" means to act voluntarily and intentionally, and not because of ignorance, mistake, or accident. Therefore, before you may convict a defendant, the evidence must establish that the defendant knowingly joined and engaged in each of the conspiracies to allocate the markets.<br><br>If you find that a defendant knowingly joined the conspiracy, then the defendant remains a member of the conspiracy and is responsible for all actions taken in furtherance of the conspiracy until the conspiracy has been completed or abandoned or until the defendant has withdrawn from the conspiracy. | |

A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, the part each member played in the charged conspiracy, or the means by which the objects were to be accomplished. Knowledge of the essential nature of the conspiracy is enough.

On the other hand, a person who has no knowledge of a conspiracy, but who happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a member of the conspiracy. Similarly, knowledge of a conspiracy, without participation in it, is also insufficient to make a person a member of the conspiracy.

But a person who knowingly joins an existing conspiracy or participates in part of the conspiracy, with knowledge of the overall conspiracy, is just as responsible as if he had been one of the originators of the conspiracy or had participated in every part of it. Likewise, a person who knowingly directs another to implement the details of the conspiracy is just as responsible as if he participated in every part of it, including its origin.

Your determination whether a defendant knowingly joined or participated in the conspiracy must be based solely on the actions of the defendant, as established by the evidence. You should not consider what others may have said or done to join the conspiracy. Membership of a defendant in this

| | | |
|---|---|---|
| conspiracy must be established by evidence of his own conduct; by what he said or did.  Or, as I have previously instructed, in the case of Defendant DaVita Inc., by what its agents said or did within the scope of their employment or authority as described in Instruction 15.<br><br>If you find that a defendant joined the conspiracy, then the defendant remains a member of the conspiracy, and is responsible for all reasonably foreseeable actions taken in furtherance of the conspiracy, until the conspiracy has been completed or abandoned, or until the defendant has withdrawn from the conspiracy. | | |
| **Authorities**<br><br>Order Resolving Disputes on Proposed Jury Instructions, ECF No. 214 at 8–12 ("As I have already instructed you, a conspiracy to allocate the market for employees is in itself an unreasonable restraint of trade and illegal; the government does not have to prove that the defendants specifically intended to unreasonably restrain trade or produce anticompetitive effects. The intent to unreasonably restrain trade is satisfied with the finding of intent to allocate the market for employees."); "Knowingly" Joining the Conspiracy, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law; *Bank of Utah v. Com. Sec. Bank*, 369 F.2d 19, 26 (10th Cir. 1966) ("[I]ntent to restrain trade is not essential to | **Authorities**<br><br>Order Resolving Disputes on Proposed Jury Instructions, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Mar. 25, 2022), Dkt. 214 at 8-9 ("Second, I think it might be helpful to bifurcate the intent instruction. The Proposed Instructions deal with intent in a single "knowingly joined" instruction, number 29. In my understanding, conspiracy requires two types of intent: the intent to join the conspiracy and the intent to further the conspiracy's ends… I think that splitting the intent instruction in two — one instruction focused on the "knowingly joined" element and the other on the intent to further the conspiracy's ends, described in the MTD Order as a purpose element — might help the jury better understand the government's burden on intent."); Defendants' Brief in Support of their Proposed Jury Instructions, | |

| | |
|---|---|
| violation of Section 1 of the Act"); *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221–22 (1940) (the Sherman Act does not allow as justifications "the good intentions of the members of the combination"); *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 450–51 (10th Cir. 1984) (holding that intent is satisfied "by showing that the appellants knowingly joined and participated in a conspiracy to rig bids," and also holding that "[a] co-conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy"); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 474–75 (10th Cir. 1990) (upholding instruction in Sherman Act case that, "[t]o be a member of the conspiracy a defendant need not know all of the other members, nor all of the details of the conspiracy, nor the means by which the objects were to be accomplished" as "properly set[ting] forth the law of this circuit"); *United Cheek v. United States*, 498 U.S. 192, 199 (1991) (stating "general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution"); *Law v. NCAA*, 185 F.R.D. 324, 336 n.19 (D. Kan. 1999) (instruction in antitrust case explained a "claim of good motives, like a claim of ignorance of the law, cannot justify or excuse a violation of the federal antitrust laws and so would be no defense in this case"); *Cf.* Tenth Circuit Pattern Jury Instruction No. 1.37 (2021 ed.) (updated Apr. 2, 2021). | Dkt. 175 at 16-17 (noting that the Division's reliance on the ABA Model should be rejected because it is not law, and further arguing that the Division's "language instructing the jury to ignore (a) the reasonableness of the restraint, and (b) any good motives for the alleged agreement tilt the playing field even further in favor of the prosecution than the ABA model, which is silent on these issues—and does so without support in precedent or practice."); Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 25 (modified). | |

**Disputed Instruction No. 28: "Purpose" of Allocating Markets**

| Offered by the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| As part of the second element, for each of the charged conspiracies the government must prove beyond a reasonable doubt that the defendant entered into an agreement with the purpose of allocating the market between DaVita and SCA for their senior-level employees, with respect to Count 1, and with the purpose of allocating the market for DaVita's employees with respect to the companies in Counts 2 and 3.

The government does not need to prove that the *sole* purpose of the conspiracy was to allocate the market.  A conspiracy can have multiple purposes.  Allocating the market need not have been the conspiracy's sole purpose for you to conclude that it was the conspiracy's purpose.

You need not conclude that the conspiracy was unreasonable, unjustified, or harmful to find that its purpose was to allocate the market. It is not for you to decide whether the conspiracy had good intentions or good results. You must decide only whether the defendant joined or participated in a conspiracy with the purpose of allocating the market for employees as charged in the Indictment. | The second element of the crime also requires the government to prove beyond a reasonable doubt that the defendants entered into an agreement with the purpose of allocating the market for senior executives (Count 1) and/or DaVita employees (Counts 2 and 3).

A conspiracy can have multiple purposes. Allocating the market need not have been the conspiracy's sole purpose for you to conclude that it was the conspiracy's purpose.  However, the government must prove beyond a reasonable doubt that the primary purpose for which defendants entered the conspiracies was to actually allocate the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3).

You need not conclude that the conspiracy to allocate the market for employees was unreasonable, unjustified, or harmful to find that its purpose was to allocate the market.  It is not for you to decide whether the conspiracy had good intentions or good results.  You must decide only whether a conspiracy with the purpose of allocating the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3) existed.  You may, however, take into consideration evidence of other purposes of the conspiracies in evaluating | |

| | | |
|---|---|---|
| | whether the government has proved beyond a reasonable doubt that the defendants entered into these alleged conspiracies with the purpose of allocating the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3).<br><br>A conspiracy to allocate the market for employees is in itself an unreasonable restraint of trade and illegal; the government does not have to prove that the defendants specifically intended to unreasonably restrain trade or produce anticompetitive effects. The intent to unreasonably restrain trade is satisfied with the finding of intent to allocate the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3). | |
| **Authorities**<br><br>Order Resolving Disputes on Proposed Jury Instructions, ECF No. 214 at 9–11 ("…the government 'will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of allocating the market for [employees].' . . . The government does not need to prove that the *sole* purpose of the conspiracy was to allocate the market. . . . A conspiracy can have multiple purposes. Allocating the market need not have been the conspiracy's sole purpose for you to conclude that it was the conspiracy's purpose. You need not conclude that the conspiracy was unreasonable, unjustified, or harmful to find | **Authorities**<br><br>• **The Primary Purpose**: *Compare* Order Resolving Disputes on Proposed Jury Instructions, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Mar. 25, 2022), Dkt. 214 at 11-12 (proposing a "purpose" jury instruction that says that "[a]llocating the market need not have been the conspiracy's sole purpose for you to conclude that it was the conspiracy's purpose") *with Zidell Expls., Inc. v. Conval Int'l*, Ltd., 719 F.2d 1465, 1471, 1469 (9th Cir. 1983) ("We believe it appropriate to apply a per se rule to cases in which the [defendant]'s primary motivation for its decision … is | |

that its purpose was to allocate the market. It is not for you to decide whether the conspiracy had good intentions or good results. You must decide only whether a conspiracy with the purpose of allocating the market existed.").

anticompetitive," and approving jury instructions that "The agreement or conspiracy need not be solely motivated by a desire to protect the [defendants] from … price competition. But this anti-competitive purpose must be a primary purpose in the parties' decision to enter into the agreement or conspiracy") *abrogated on other grounds by The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1156 (9th Cir. 1988).

- **Evidence of Other Purposes**: Order on Motions *in Limine*, Dkt. 210 at 3-4 (denying the government's motions to "[e]xclude evidence/argument of procompetitive justifications" and "[e]xclude evidence/argument of defendants' procompetitive intentions" because "[t]his evidence might be relevant to the question whether the defendants entered into an agreement to allocate the market and did so with the intent to allocate the market, as charged in the indictment, i.e., whether they entered into an agreement with purpose of allocating the market for senior executives (Count I) and other employees (Counts 2 and 3).").

- **The "Market"**: Order Resolving Disputes on Proposed Jury Instructions, Dkt. 214 at 6 (indicating that the government must prove, "in this case, a conspiracy to actually allocate"—i.e., a conspiracy to "ce[ase] []

|  | 'meaningful competition' *in the allocated market*" (emphasis added)); *Les Shockey Racing, Inc. v. Nat' Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ("[R]emoval of one or a few competitors need not equate with injury to competition . . . [C]laimants must plead and prove a reduction of competition in the market in general, and not mere injury to their own positions as competitors in the market."). |  |

**Disputed Instruction No. 28: Interstate Commerce**

| Offered by the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| The third element is that the crime involved interstate commerce. In order to satisfy this element, the government must prove beyond a reasonable doubt that the conspiracy charged in the indictment either occurred in the flow of interstate commerce or had a substantial effect on interstate commerce.<br><br>The term "interstate commerce" includes transactions in which products, services, people, property, salaries, or funds cross state lines.  If the conduct charged in the Indictment involves transactions that are in the flow of interstate commerce, the interstate-commerce element is satisfied and the size of any such transaction is of no significance.<br><br>Regardless of whether the conduct was in the flow of interstate commerce, the interstate commerce element is also satisfied if the conduct charged in the Indictment had a substantial effect on interstate commerce, or had the potential to do so.  A conspiracy may have such an effect even though some or all of the conspirators do not themselves engage in interstate commerce and have confined their activities to a single state.  The government's proof need not quantify or value any impact of such an effect.<br><br>It is a question of fact for the jury to determine whether the | The third element of the offense requires the government to prove beyond a reasonable doubt that the conspiracies charged in the indictment occurred in the flow of, or substantially affected, interstate trade or commerce.<br><br>The term "interstate commerce" includes transactions of goods or services that are moving across state lines or that are in the continuous flow of commerce from the commencement of their journey until their final destination in a different state.  When such transactions are involved, the amount of commerce restrained by the conspiracy is of no significance.<br><br>The term "interstate commerce" may also include entirely intrastate transactions in which some or all the defendants are not engaged in interstate commerce and some or all of the acts are wholly within a state, if the activities substantially and directly affect interstate commerce.<br><br>It is a question of fact for the jury to determine whether the conspiracies involve such interstate commerce. | |

| | | |
|---|---|---|
| conspiracy involved such interstate commerce.  Proof of interstate commerce as to any defendant or co-conspirator in the conspiracy charged in the Indictment satisfies the interstate-commerce element as to every defendant. | | |
| **Authorities**<br><br>*McLain v. Real Estate Bd. Of New Orleans*, 444 U.S. 232, 241–45 (1980) (explaining that the plaintiff must demonstrate "either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce," and explaining that the effects test does not require a plaintiff to "quantify the adverse impact of defendants conduct."); *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 329–30 & n.10 (1991) (holding that "proper analysis focuses, not upon actual consequences, but rather upon the potential harm that would ensue if the conspiracy were successful"); *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194–95 (1974); *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 744 (1976); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 477–78 (10th Cir. 1990) (explaining that "[a]n essential element of the offense prohibited by the Sherman Antitrust Act is that the defendants' alleged unreasonable restraint of trade must involve interstate commerce," then explaining that "The trial court first instructed that the jury was required to find '[t]hat the conspiracy charged in the indictment either affected | **Authorities**<br><br>Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 26; *see also* Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 13-14 (noting that the Division's version of Disputed Instruction No. 31 "has never been adopted by any court" and "[t]here is no reason to deviate from standard 'interstate commerce' instructions."). | |

| | | |
|---|---|---|
| interstate commerce in goods or services or occurred within the flow of interstate commerce in goods or services,'" and holding that "When such transactions [in the flow of interstate commerce] are involved, the amount of commerce restrained by the conspiracy is of no significance."); *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 & n.59 (1940); *United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 680 (5th Cir. 1981) ("[I]f an action or practice of defendants affected the movement of persons from one state to another, it affected interstate commerce and is within the scope of the Sherman Act."); *Park v. El Paso Bd. of Realtors*, 764 F.2d 1053, 1063 (5th Cir. 1995) ("In a conspiracy case, the plaintiff need not show that the business of each individual member of the conspiracy had a substantial effect on interstate commerce, as long as the coconspirators in general had such an effect."); Interstate Commerce, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law. | | |

**Disputed Instruction No. 29: Alleged Notice and Confirmation Requirements\***

| Position of the United States* | Offered by Defendants* | Comments by Chambers |
| --- | --- | --- |
| The United States opposes this instruction in its entirety for the reasons set forth in this Court's order on its motion to dismiss and in the United States' Brief in Support of Disputed Proposed Jury Instructions. *See* Order on Motion to Dismiss, ECF No. 132 at 8 (noting that the notification and other means and methods "outline the ways that the agreement made it difficult for employees to move between co-conspirator companies to the point where the market was allocated. They support the allegation that the purpose and effect of the agreement was to allocate the market."). *See also* United States' Brief in Support of Disputed Proposed Jury Instructions, ECF No. 178 at 11; *Hyde v. United States*, 225 U.S. 347, 360 (1912) (holding that acts that are "innocent, indeed, of themselves," take on their "criminal taint from the purpose for which they were done."); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946) ("Acts done to give effect to the conspiracy may be in themselves wholly innocent acts. Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition."). | For Count 1, the government alleges that the defendants monitored compliance with the agreement not to solicit senior executives by requiring senior executives of DaVita and SCA who applied to the other company to notify their current employer that they were seeking other employment in order for their applications to be considered.<br><br>For Count 2, the government alleges that the defendants monitored compliance with the agreement that [Company B] would not solicit employees from DaVita by requiring employees of DaVita who reached out to [Company B] to notify DaVita that they were seeking other employment in order to be considered by [Company B].<br><br>For Count 3, the government alleges that the defendants monitored compliance with the agreement that [Company C] would not solicit employees from DaVita by requiring employees of DaVita who reached out to [Company C] to either confirm that they were actively pursuing other job opportunities or to notify DaVita that they were seeking other employment in order to be considered by [Company C].<br><br>The government has not charged that those alleged notice and confirmation requirements were market allocation agreements, nor has the government charged that such notice and confirmation requirements are illegal under the Sherman Act.  You are instructed to consider evidence of | |

| | | |
|---|---|---|
| | any such notice and confirmation requirements solely as evidence of whether the parties attempted to monitor a non-solicitation agreement and are not to consider whether such notice and confirmation requirements were the means by which Defendants conspired to allocate the market. | |
| **Authorities** | **Authorities**<br><br>Indictment, *United States v. DaVita, Inc.*, No. 1:21-cr-00229-RBJ (D. Colo. Nov. 11, 2021), ECF No. 74 ¶¶ 10, 11(d)-(e), 18, 19(d)-(e), 26, 27(e)-(f).<br><br>Defendants recognize that the Court has found that the "Indictment does not charge a label." *See* Order Resolving Motions *in Limine*, Dkt. 210 at 7. However, no court has ever found a notice agreement to be *per se* unlawful. Defendants therefore request this instruction to preserve the issue for appeal and because they believe this instruction is necessary to prevent a reversible constructive amendment of the indictment. *See United States v. Miller*, 891 F.3d 1220, 1231 (10th Cir. 2018). | |

**Disputed Instruction No. 30: Evidence of Similarity**

| Offered by the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| The United States opposes this instruction in its entirety as redundant to language contained within the agreed upon instruction for conspiracy. | Evidence of the recruiting and hiring practices of the defendants and alleged co-conspirators has been admitted to assist you in deciding whether the defendant entered into an agreement to allocate the market for employees.  Such evidence may lead to you to conclude that some or all of the defendants never entered into the agreement charged in the indictment or that some or all of the defendants did enter into the agreement.<br><br>The mere fact that some or all of the defendants may have decided not to solicit or hire each others' employees does not by itself establish the existence of a conspiracy among them.  Evidence of similarity of business practices of defendants does not alone establish an agreement to allocate the market for employees, since such activities may be consistent with ordinary and competitive behavior in a free and open market.  A business may lawfully decide not to hire or solicit another's employees as long as it does so independently and not as part of an illegal agreement or understanding with one or more of its competitors. | |
| **Authorities** | **Authorities**<br><br>Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 15 (noting that defendants' "proposed instruction follows the instruction given by Chief Judge Brimmer in *Penn*, with slight modifications to reflect that this is a labor market case," and further noting that defendants are entitled to | |

| | | |
|---|---|---|
| | contend that they and "their co-conspirators made similar business decisions (e.g., not recruiting one another's employees) …[]as the result of independent decision-making based on legitimate business reasons."); Final Jury Instructions *United States v. Penn et al.,* No. 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 22-23 (Instruction No. 18 (excerpt, modified)); *see also* Jury Instructions*;* Jury Instructions, *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 3:07-md-01827-SI (N.D. Cal.), Dkt. 6036 at 11 (Horizontal Price Fixing – Evidence of Similarity); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554 (2007); *Theatre Enters. Inc. v. Paramount Film Distrib. Corp.,* 346 U.S. 540-41 (1954). | |

**[Disputed Instruction No. 31: Statements Indicating Consciousness of Guilt]**

| Offered by the United States* | Position of Defendants* | Comments by Chambers |
|---|---|---|
| You may consider statements knowingly and voluntarily made by a defendant to prevent detection of criminal activity.<br><br>When a defendant voluntarily offers an explanation or voluntarily makes some statement tending to show his innocence, and it is later shown that the defendant knew that this statement or explanation was false, you may consider this as showing a consciousness of guilt on the part of a defendant, since it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.<br><br>Whether evidence as to a defendant's explanation or statement points to a consciousness of guilt on his part, and the significance, if any, to be attached to any such evidence, are matters exclusively within the province of the jury since you are the sole judges of the facts of this case.<br><br>In your evaluation of evidence of an exculpatory statement shown to be false, you may consider that there may be reasons—fully consistent with innocence—that could cause a person to give a false statement showing that he did not commit a crime.  Fear of law enforcement, reluctance to become involved, and simple | Defendants oppose this instruction in its entirety as irrelevant.  *See* Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 17 (arguing that the Division's proposed instruction is inappropriate because "[t]he record is devoid of 'statements' that tend to show consciousness of guilt"); *see also* Order Resolving Motions *in Limine*, Dkt. 210 at 7 (denying the Division's motion *in limine* seeking to admit evidence of defendants' attorney-client privilege calls because "[t]his type of 'evidence,' if it can be called evidence, is irrelevant and has no place in this trial."). | |

| | | |
|---|---|---|
| mistake may cause a person who has committed no crime to give such a statement or explanation. | | |
| **Authorities**<br><br>1A Kevin F. O'Malley, et al., *Fed. Jury Practice & Instructions: Criminal* § 14:06 (6th ed. 2021); Jury Instr. No. 34, *United States v. B&H Maint. and Constr., Inc.*, No. 07-cr-00090-WYD (D. Colo. June 19, 2008), ECF 319-10; *United States v. Ingram*, 600 F.2d 260, 262 (10th Cir. 1979) ("We have held that false exculpatory statements are admissible to prove consciousness of guilt and unlawful intent."); *United States v. Smith*, 833 F.2d 213, 218 (10th Cir. 1987) (rejecting defendant's argument that there was insufficient evidence linking him to the conspiracy in part because "[a] false exculpatory statement will support an inference of consciousness of guilt"). *Cf. United States v. Mullins*, 4 F.3d 898, 900 n.2 (10th Cir. 1993) (rejecting defendant's challenge to a jury instruction because the instruction properly "sa[id] that an inference of consciousness of guilt may be drawn if a witness has denied incriminating facts."). | **Authorities** | |

**Disputed Instruction No. 32: Statute of Limitations\***

| Offered by the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| [The United States opposes a statute of limitations instruction, unless and until there defendants affirmatively raise a statute of limitations defense at trial and there is a factual predicate for it. *See Musacchio v. United States*, 577 U.S. 237, 718 (2016) ("[A] statute-of-limitations defense becomes part of a case only if the defendant puts the defense in issue."); *United States v. DeLia*, 906 F.3d 1212, 1217 (10th Cir. 2018).  It provides this instruction in the event an instruction is warranted because defendants' proposed instruction is legally incorrect and risks confusing the jury, *see* United States' Mem. in Support of Disputed Proposed Jury Instructions, ECF 178 at 17.]<br><br>A statute of limitations applies to the crime charged in the Indictment.  That means you cannot find Mr. Thiry or DaVita, Inc., guilty unless the government proves, beyond a reasonable doubt, that the alleged conspiracies existed at some point within the period of the statute of limitations, which for the purposes of Count One and Two means that those conspiracies existed after August 9, 2016, and for purposes of Count Three means that the conspiracy existed after November 29, 2016. | There is a five-year statute of limitations that applies to the crime charged in the indictment.  That means you cannot find Mr. Thiry or DaVita, Inc. guilty unless the government proves, beyond a reasonable doubt, that the alleged conspiracies existed at some point within the statute of limitations, which for the purposes of Counts One and Two means that those conspiracies existed after August 9, 2016, and for the purposes of Count Three means that conspiracy existed after November 29, 2016.<br><br>To prove that the conspiracies existed within the statute of limitations, the government must prove beyond a reasonable doubt that one or more of members of the conspiracy performed some act in furtherance of the conspiracy after August 9, 2016 as to Counts One and Two and after November 29, 2016 as to Count Three. | |

| | | |
|---|---|---|
| One way the government can prove that each conspiracy existed within the statute of limitations period is to prove beyond a reasonable doubt that one or more members performed some act in furtherance of each conspiracy after August 9, 2016 as to Counts One and Two and after November 29, 2016 as to Count Three<br><br>You may consider evidence of the defendants' and their co-conspirators' conduct prior to these dates in so far as it tends to prove or disprove the existence of the conspiracy. | | |
| **Authorities**<br><br>*United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011) ("[F]or conspiracy statutes that do not require proof of an overt act, the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period.") (quotation omitted); *United States v. Hayter Oil Co.*, 51 F.3d 1265, 1270–71 (6th Cir. 1995) ("Proof of an overt act is not required to establish a violation of § 1 of the Sherman Act. Because the price-fixing agreement itself constitutes the crime, the government is only required to prove that the agreement existed during the statute of limitations period and that the defendant knowingly entered into that agreement. Proof of an overt act taken in furtherance of the conspiracy within the statute of limitations period would clearly demonstrate the continued existence of the | **Authorities**<br><br>Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 29; *see also* Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 14-15 (noting that this instruction follows *Penn*, Dkt. 921 at 29, verbatim, and is a proper jury instruction). | |

conspiracy. However, once a conspiracy has been established, it is presumed to continue until there is an affirmative showing that it has been abandoned.") (cleaned up); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) (holding that conspiracy under Section 1 of the Sherman Act does not require showing of "an overt act" nor "that the conspirators had the means available for accomplishment of their objective"); *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1271 (10th Cir. 2018) ("In holding that the conspiracy there continued so long as the firms received payments on the unlawfully obtained contracts, we adopted the Eighth Circuit's holding that a Sherman Act violation [is] accomplished both by the submission of noncompetitive bids, and by the request for and receipt of payments at anti-competitive levels." (internal quotation marks omitted)); *United States v. Evans & Assocs. Constr. Co.*, 839 F.2d 656 (10th Cir.1988) (holding that statute of limitations began running when final payment on contract obtained through rigged bids was received, not when rigged bids were submitted), *aff'd on reh'g*, 857 F.2d 720 (10th Cir. 1988); *see also United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006) (explaining that the date of the original indictment sets the statute of limitations period for charges that are not broadened or substantially amended by the Superseding Indictment).

| | | |
|---|---|---|
| *See also, e.g.,* Instruction No. 19 Statute of Limitations, *United States v. Peake*, No. 3:11-cr-512, Dkt. 186 at 30 (D.P.R. Jan. 25, 2013) ("There is a five-year statute of limitations which applies to the offense charged here [15 U.S.C. § 1].  This means that the defendant cannot be found guilty unless you find beyond a reasonable doubt that the conspiracy existed at some point within the statute of limitations, which, for purposes of this case, is the period beginning November 17, 2006 and continuing until November 17, 2011.  One way the government can prove the conspiracy existed in this period is to prove that one or more member of the conspiracy performed some act after November 17, 2006 and before November 17, 2011 in furtherance of the purposes and objectives of the conspiracy.  You may consider evidence of the defendant's conduct prior to November 17, 2006 in so far as it tends to prove or disprove the existence of the conspiracy and the defendant's acts after that date."); Jury Instructions, *United States v. AU Optronics Corp.*, No. Cr. 09-110, Dkt. 822 at 4725-26 (N.D. Cal. Feb. 27, 2012) ("The Grand Jury returned its Indictment against the defendants on June 9th, 2010. This means that a defendant cannot be found guilty, unless you find beyond a reasonable doubt that the conspiracy existed at some time within the period of the statute of limitations, which is the period beginning from June 9th, 2005, and continuing until June 9th, 2010. One way the Government can prove the conspiracy existed | | |

| | | |
|---|---|---|
| in this period is to prove that one or more members of the conspiracy performed some act after June 9th, 2005, and before June 10th -- June 9th, 2010, in furtherance of the purposes and objectives of the conspiracy. You may consider evidence of a defendant's conduct prior to June 9th, 2005, insofar as it tends to prove or 2 disprove the existence of the conspiracy and the defendants acts after that date."). | | |

**Disputed Instruction No. 33: Defense Theory of the Case***

| Position of the United States* | Offered by Defendants* | Comments by Chambers |
|---|---|---|
| The United States opposes this instruction in its entirety because it does nothing more than ask the Court to put its imprimatur on Defendants' view of the evidence. *See* United States' Brief in Support of Disputed Proposed Jury Instructions, ECF No. 178 at 17-18 (citing *United States v. Grissom*, 44 F.3d 1507, 1513 (10th Cir. 1995) (explaining that the Court properly rejected a defense-theory-of-the-case instruction when it "could have led the jury to believe that the district court was putting its imprimatur on Defendant's factual theory of the case"); *see also United States v. Chadwick*, 554 F. App'x 721, 724 (10th Cir. 2014) ("His proposed instruction on the theory of defense would have served no purpose but to put the court's imprimatur on [the defendant's] interpretation of the evidence."). | Defendants' theory of the case is that the government has not proved beyond a reasonable doubt that either party engaged in any conspiracy with the purpose to allocate the markets for employees.  Specifically, defendants contend that the evidence shows that they (i) did not enter into any agreement with the purpose of allocating markets for senior executives (Count 1) or DaVita employees (Counts 2 and 3); and (ii) the nature of what they agreed to would not, and could not, result in the cessation of meaningful competition.  Rather, defendants contend that the evidence shows that not only did they not act with any unlawful purpose with respect to each of the alleged non-solicitation agreements and that they and their alleged co-conspirators, along with many other employers all over the country, meaningfully competed for each other's employees throughout the alleged conspiracy periods, but that they acted lawfully and competitively because any agreement they entered into did not and could not result in an allocation of the markets alleged.  The parties pursued independent business strategies based on their own interests and considerations.  Defendants also contend that they did not knowingly and intentionally join a conspiracy to allocate employee markets, share that goal, or do anything with the intention of accomplishing it. | |
| **Authorities** | **Authorities** | |

| | | |
|---|---|---|
| | Order Resolving Disputes on Proposed Jury Instructions, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Mar. 25, 2022), Dkt. 214; Defendants' Brief in Support of their Proposed Jury Instructions, Dkt. 175 at 18 (noting that this proposed instruction "is proper because it follows the structure and level of detail commonly given in antitrust cases, including *Penn.*"); Final Jury Instructions *United States v. Penn et al.*, 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 35-44; Final Jury Instructions, *United States v. Lischewski*, 3:18-cr-00203 (N.D. Cal. Dec. 2, 2019), Dkt. 626 at 25 (Instruction No. 22 Theory of Defense); Jury Charge, *United States v. Usher et. al*, 1:17-cr-00019 (S.D.N.Y Nov. 8, 2018), Dkt. 239 (Tr. at 2459:24-2460:6). | |

**[Stipulated Instruction No. 34: Good Faith]***

It is not necessary for the government to prove that the defendant knew that the conspiracy was a violation of the law.  Thus, if you find that the government proved beyond a reasonable doubt every element of the offense, then the fact that a defendant believed in good faith that what was being done was lawful is not a defense.

---

### Authorities

*United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) (The Supreme "Court has consistently rejected the notion that naked restraints of trade are to be tolerated because they are well intended."); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221–22 (1940) (the Sherman Act does not allow as justifications "the good intentions of the members of the combination"); *id.* at 224 n.59 (Section 1 violations do not require "[a]n intent and a power to produce" an anticompetitive result); *Bank of Utah v. Com. Sec. Bank*, 369 F.2d 19, 26 (10th Cir. 1966) ("intent to restrain trade is not essential to violation of Section 1 of the Act"); *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 450 (10th Cir. 1984) (intent is satisfied "by showing that the appellants knowingly joined and participated in a conspiracy to rig bids").

**Stipulated Instruction No. 35: Punishment**

If you find the defendants guilty, it will be my duty to decide what the punishment will be.  You should not discuss or consider the possible punishment in any way while deciding your verdict.

---

**Authorities**

Tenth Circuit Pattern Jury Instruction No. 1.20 (2021 ed.) (updated Apr. 2, 2021); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).

**Stipulated Instruction No. 36: Duty to Deliberate—Verdict Form\***

In a moment the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. [The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.]

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the Indictment. Your deliberations will be secret.

You will never have to explain your verdict to anyone. You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved the defendants' guilt beyond a reasonable doubt.

A form of verdict has been prepared for your convenience.

In a moment the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read.  Any exhibits admitted into evidence will also be placed in the jury room for your review.  The foreperson will write the unanimous answer of the jury in the space provided for each count of the Indictment, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the bailiff.  I will either reply in writing or bring you back into the court to respond to your message.  Under no circumstances should you reveal to me the numerical division of the jury.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.23 (2021 ed.) (updated Apr. 2, 2021).

**Stipulated Instruction No. 37: Communication with the Court**

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to [the marshal] [the bailiff] [my law clerk], who will bring it to my attention.  I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.  I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial and sentencing proceedings, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.44 (2021 ed.) (updated Apr. 2, 2021).

### [Stipulated Instruction No. 38: Modified *Allen* Instruction][1]

Members of the jury, I am going to ask that you return to the jury room and deliberate further. I realize that you are having some difficulty reaching a unanimous agreement, but that is not unusual. Sometimes, after further discussion, jurors are able to work out their differences and agree.

This is an important case. If you should fail to agree upon a verdict, the case is left open and must be tried again. Obviously, another trial would require the parties to make another large investment of time and effort, and there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you.

You are reminded that the defendant is presumed innocent, and that the government, not the defendant, has the burden of proof and it must prove the defendant guilty beyond a reasonable doubt. Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced. And those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt you have is a reasonable one, given that other members of the jury do not share your doubt. In short, every individual juror should reconsider his or her views.

It is your duty, as jurors, to consult with one another and deliberate with a view toward reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations do not hesitate to reexamine your

---

[1] Note: The parties agree that this instruction need not be given unless circumstances warrant.

own views and change your opinion if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

What I have just said is not meant to rush or pressure you into agreeing on a verdict. Take as much time as you need to discuss things. There is no hurry.

I will ask now that you retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions I have previously given you.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.42 (2021 ed.) (updated Apr. 2, 2021).

**[Stipulated Instruction No. 39: Partial Verdict Instruction]**[2]

Members of the Jury:

(1) You do not have to reach a unanimous agreement on all the charges or all defendants before returning a verdict on some of the charges.  If you have reached a unanimous agreement on some of the charges as to one of the defendants, you may return a verdict on those charges or that defendant and then continue deliberating on the others.

(2) If you do choose to return a partial verdict, that verdict will be final.  You will not be able to change your minds about it later on.

(3) Your other option is to wait until the end of your deliberations, and return all your verdicts then.  The choice is entirely yours.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.43 (2021 ed.) (updated Apr. 2, 2021).

---

[2] Note: The parties agree that this instruction need not be given unless circumstances warrant.