# Exhibit A

Government Proposal

The first element is the existence a particular type of conspiracy, a conspiracy to allocate the market for employees as charged in each count of the Indictment. A conspiracy to allocate the market for employees is an agreement or mutual understanding among competitors for employees not to compete with one another for the services of an employee or set of employees.  In order to prove that a conspiracy to allocate the market for employees existed, the government must prove that the defendant conspired to suppress meaningful competition for the services of an employee or set of employees in the market.  The government does not need to prove that the defendant agreed to allocate the entire market for employees or that the conspiracy succeeded in actually allocating the market for employees, so long as the defendant conspired to do so, as charged in this case.

You may find that a conspiracy to allocate the market for employees existed even though you find that employees' switching employers was possible or that employees switched employers in a few cases.  If you find the government has proven such an agreement or mutual understanding beyond a reasonable doubt, then the government has satisfied its burden for this element.

A conspiracy to allocate the market for employees can take various forms.  Such a conspiracy exists, for example, where two or more competitors agree to not solicit the other's employees for the purpose of allocating the market for employees.

If you should find that a defendant entered into a conspiracy to allocate the market for employees, the fact that a defendant or their co-conspirator did not take any steps to effectuate the conspiracy, that one or more of them did not abide by the conspiracy, that one or more of them may not have lived up to some

aspect of the conspiracy, or that they may not have been successful in achieving their objectives, is no defense. The agreement or mutual understanding itself is the crime, even if it is never carried out.

If the conspiracy charged in each count of the Indictment is proved, it is no defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition. Nor is it a defense that the conspirators did not attempt to conspire with all of their competitors. Similarly, the conspiracy is unlawful even if it did not extend to all types of employees of the conspirators or did not affect all of their employees.

You need not be concerned with whether the conspiracy was reasonable or unreasonable, the justifications for the conspiracy, or the harm, if any, done by it. It is not a defense and not relevant that the parties may have acted with good motives, had a business justification, or have thought that what they were doing was legal, or that the conspiracy may have had some good results. If there was, in fact, a conspiracy as charged, it was illegal.

Defendants' Proposal

The first element of the offense also requires the government to prove that defendants entered into horizontal market allocation agreements. To allocate means to divide.

The government alleges that Defendants conspired to allocate the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3) by entering into non-solicitation agreements. Not every non-solicitation agreement, however, would allocate a market as charged in the indictment. A horizontal market allocation requires cessation of meaningful competition in the allocated market. Thus, the government must prove beyond a reasonable doubt that the defendants entered a conspiracy to actually

allocate the market to a meaningful extent.  The fact that a non-solicitation agreement may constrain the companies in recruiting each other's employees to some degree does not by itself allocate the market for employees.

**RBJ Instruction**

The first element is the existence of a conspiracy to allocate the market for employees as charged in each count of the Indictment.  To understand this element, I first must explain the concept of allocating a market.  In the instruction I gave at the beginning of jury selection I used the example of allocating a market for customers.  If two or more companies or individuals are competing for the same customers, it is unlawful for them to agree to divide the customers between or among them.  Suppose that in Denver there were two companies selling auto parts.  It would be unlawful for the two companies to agree to allocate the market for Denver customers.  For example, it would be an unlawful market allocation agreement if they agreed that Company A would only sell to customers who reside north of Sixth Avenue and Company B would sell only to customers who reside south of Sixth Avenue; or if they agreed that Company A would be the only company allowed to sell to Honda owners; or if they agreed that Company A would not sell to anyone who has been a customer of Company B, and vice versa.  Those are hypothetical examples of an unlawful market allocation agreement, the market being customers who purchase auto parts in Denver.  The customers could, of course, purchase their auto parts from auto parts stores in Colorado Springs or Fort Collins.  But, if they wanted to purchase auto parts in Denver, they would only be able to buy from A or B, and potential competition between A and B for those customers — that is, in that market for customers between A and B — would have been unlawfully restrained.  Normal competition, such as reducing the prices of their respective products to woo customers away from their competitor, would have been undermined by the agreement.  The same concept can be applied to a market for employees.

In this case the government claims in Count 1 that DaVita and Surgical Care Affiliates were potentially competing for the same employees; namely, senior level employees who were working either

Case 1:21-cr-00229-RBJ   Document 242-1   Filed 04/08/22   USDC Colorado   Page 5 of 5

for DaVita or Surgical Care Affiliates.  The market, therefore, is employment opportunities for senior level employees at each other's companies.  The government contends that the companies, through their respective Chief Executive Officers Kent Thiry and Andrew Hayek, entered into agreements and understandings with the purpose of unlawfully allocating the market by ending meaningful competition between the two companies for their senior level employees  There are other companies in the health care industry and other industries that potentially would hire these same senior level employees, but that is not the market that is the subject of this case.

The government has the burden as to Count 1 to prove, beyond a reasonable doubt, that Mr. Thiry and/or DaVita conspired with Surgical Care Affiliates to allocate the market for those senior level employees during the time period charged.  The government also has the burden to prove beyond a reasonable doubt that defendants had the purpose of allocating that market.  Defendants deny that the agreements and understandings between Mr. Thiry and Mr. Hayek allocated the market and also deny that Mr. Thiry's intent was to allocate the market.  Remember, the defendants have no burden to prove anything.

Count 2 charges a conspiracy between DaVita and Hazel Health to allocate the market of employees who had jobs at DaVita, not just senior employees, during the time period applicable to that count.  Count 3 charges a conspiracy between DaVita and Radiology Partners to allocate the market of employees who had jobs at DaVita, not just senior employees, during the time period applicable to that count.  However, while the alleged co-conspirators, the alleged markets, and the alleged time periods are different, the basic concepts described in this instruction concerning Count 1 also apply to Counts 2 and 3.

You may find that a conspiracy to allocate the market for employees existed even if you find that employees' switching employers was possible and actually happened in some cases.  However, you may not find that a conspiracy to allocate the market for the employees existed unless you find that the alleged agreements sought to end meaningful competition for the services of the affected employees.