**Instruction No. 1**

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case. Finally, I will explain the procedures you should follow in your deliberations and the possible verdicts you may return.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

Final Instructions given

4|13|22   1

**Instruction No. 2**

The government has the burden of proving each defendant guilty beyond a reasonable doubt.  The law does not require a defendant to prove his or its innocence or produce any evidence at all.  The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.  A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case.  If, based on your consideration of the evidence, you are firmly convinced that a defendant is guilty of the crime charged, you must find that defendant guilty.  If on the other hand, you think there is a real possibility that a defendant is not guilty, you must give that defendant the benefit of the doubt and find him or it not guilty.

**Instruction No. 3**

The evidence in this case includes only what the witnesses said while they were testifying under oath and the exhibits that I allowed into evidence. Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

However, while you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts that have been proved. By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and exhibits in this case.

Put another way, there are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness or an admitted exhibit. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

Many of the documents admitted in the trial are marked as "confidential," "highly confidential," or with something similar, generally on the bottom of the page. These markings

3

were added as part of the litigation after the creation of the documents. They have no

significance to the contents of the documents, and the markings should be disregarded.

During the trial, I sustained objections to some of the questions that the lawyers asked. I

sustained objections to certain exhibits that were offered. You must completely ignore the

questions and any answers that were given by a witness before the objection was sustained. Do

not speculate about what a witness might have said or what an exhibit might have shown.

If any reference by the Court or by counsel to matters of testimony or exhibits does not

coincide with your own recollection of that evidence, it is your recollection which should control

during your deliberations and not the statements of the Court or of counsel.

**Instruction No. 4**

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to their testimony.  An important part of your job will be making judgments about the testimony of the witnesses who testified in this case.  You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.

In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome in this case?  Did the witness have any relationship with either the government or the defense?  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he/she testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  When weighing conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

The fact that a witness may be employed by the federal government as a law enforcement official does not mean that the witness's testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

You might have heard evidence that one or more witnesses had previously made statements that differed from his or her testimony in court.  The witness's previous statements may be considered only in deciding whether or not to believe the witness and how much weight

to give to the in-court testimony of the witness.  The exception is prior testimony given before a grand jury, which may be considered for its truth.

In reaching a conclusion on particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

**Instruction No. 5**

Defendant Thiry did not testify, and I remind you that you cannot consider his decision not to testify as evidence of guilt.  You must understand that the Constitution of the United States grants to a defendant the right to remain silent.  That means the right not to testify.  That is a constitutional right in this country, it is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify.

### Instruction No. 6

A person may testify under a grant of immunity (an agreement with the government, such as a leniency or a non-prosecution agreement). His or her testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence. You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness. You should consider whether testimony under a grant of immunity has been affected by the witness's own interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against the defendants. On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement. After considering these things, you may give testimony given under a grant of immunity such weight as you feel it deserves. You should not convict a defendant based on the unsupported testimony of an immunized witness unless you believe the unsupported testimony beyond a reasonable doubt.

**Instruction No. 7**

During the trial you heard the testimony of Dr. Pierre-Yves Cremieux, who expressed certain opinions.  In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue.  A witness who has knowledge, skill, experience, training, or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

**Instruction No. 8**

Agent Hamel testified as a summary witness in this case.  A witness's testimony may include, in part or in-whole, summary testimony.  Summary testimony is sometimes used in cases where there are a great number of documents in evidence, where testimony has been long, and where there have been a multiplicity of matters that have been testified to.  In such situations, it may be appropriate for a witness to attempt to summarize certain of the evidence.

Like any witness, a summary witness's testimony is not binding on you.  A witness may have summarized certain pieces or certain types of evidence but, of course, you are the triers of fact.  It will be ultimately up to you to decide what evidence to believe or what parts of evidence to credit or discredit.  You do not have to accept as true a summary witness's testimony in its entirety or any part of it.  You can totally disregard his testimony if you wish.  That is your prerogative as the fact-finder.  Summary testimony serves merely as a summary of evidence that you will then evaluate and determine what weight, if any, to give any of this evidence.

During the trial, certain summaries were admitted in evidence because they may assist you in understanding the evidence that has been presented.  The summaries themselves are not evidence of the material they summarize and are only as valid and reliable as the underlying material they seek to summarize.  You may give a summary exhibit entire weight, some weight, or no weight at all depending on your assessment of the underlying material and the accuracy of the summary.

**Instruction No. 9**

You have heard evidence concerning agreements or understandings that defendants might have had with companies other than SCA, Hazel Health, or Radiology Partners.  The Indictment in this case did not address any agreements or understandings with those companies.  You may consider that evidence only as it might bear on the defendants' intent or purpose in respect to the matters charged but for no other purpose.  Moreover, the fact that the defendants may have agreements or understandings with other companies does not mean that the defendants necessarily committed the acts charged in this case.

You are here to decide whether the government has proved beyond a reasonable doubt that each defendant is guilty of the crimes charged.  The defendants are not on trial for any act, conduct, or crime not charged in the Indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged.  The fact that another person or company *also* may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether each defendant has been proved guilty of the crime charged.

**Instruction No. 10**

A separate crime is charged against both of the defendants in each count of the Indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant on each count. But you can, of course, consider the actions and intent of Defendant Thiry, as an agent of Defendant DaVita, in determining whether DaVita is guilty or not guilty.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendant or counts.

## Instruction No. 11

Defendant DaVita, Inc. is a corporation. A corporation is a legal entity, and it may be found guilty of a criminal offense. A corporation is entitled to the same fair trial and presumption of innocence as an individual, and it may be found guilty only if the evidence establishes its guilt beyond a reasonable doubt. All persons, including corporations, stand equal before the law.

A corporation can act only through its agents—such as its directors, officers, employees, or others acting on its behalf. A corporation is legally bound by the acts and statements its agents do or make within the scope of their employment or within the scope of their authority. An act or statement is within an agent's scope of employment or authority if it relates directly to his general duties for the corporation. The corporation need not have directed or authorized the act or statement, either orally or in writing.

Additionally, in committing the offense, the agent must have intended, at least in part, to benefit the corporation. The fact that he may have acted for other reasons as well, such as for his own personal benefit or for the benefit of a different corporation, is of no consequence. And the agent's acts or statements need not actually have resulted in any benefit to the corporation.

The fact that this prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that granted to defendants or any other party to a legal case. All parties, whether the government or individuals, stand as equals at the bar of justice.

**Instruction No. 12**

The Indictment charges each defendant with violating Section 1 of the Sherman Act. Section 1 of the Sherman Act outlaws every "conspiracy, in restraint of trade or commerce among the several States or with Foreign nations," which includes a conspiracy to allocate the market for employees.  Counts One, Two, and Three charge separate conspiracies:

For Count One, the Indictment charges that beginning at least as early as February 2012 and continuing until at least as late as July 2017, the defendants entered into and engaged in a conspiracy with Surgical Care Affiliates (SCA) to allocate the market for DaVita's and SCA's senior-level employees located across the United States in violation of Section 1 of the Sherman Act.

For Count Two, the Indictment charges that beginning at least as early as April 2017 and continuing until at least as late as June 2019, the defendants entered into and engaged in a conspiracy with Hazel Health and others to allocate the market for DaVita's employees located across the United States, in violation of Section 1 of the Sherman Act.

For Count Three, the Indictment charges that beginning at least as early as November 2013 and continuing until at least as late as June 2019, the defendants entered into and engaged in a conspiracy with Radiology Partners to allocate the market for DaVita's employees located across the United States, in violation of Section 1 of the Sherman Act.

**Instruction No. 13**

In order to establish the offense of conspiracy to allocate the market for employees charged in the Indictment, the government must prove each of these elements beyond a reasonable doubt:

1.  A conspiracy existed on or about the time periods alleged (a) to allocate the market for senior executives of DaVita and SCA (Count 1); (b) to allocate the market for employees of DaVita (Counts 2 and 3).

2.  The defendant knowingly entered into the conspiracy with the purpose of allocating the market with respect to that conspiracy.

3.  The conspiracy occurred in the flow of or substantially affected interstate trade or commerce.

If you find from your consideration of all the evidence that the government has proven each of these elements as to a particular alleged conspiracy beyond a reasonable doubt, then you should find the defendant guilty as to that alleged conspiracy.  If, on the other hand, if you find from your consideration of all the evidence that the government has failed to prove any of these elements as to an alleged conspiracy beyond a reasonable doubt, then you should find the defendant not guilty as to that alleged conspiracy.

15

**Instruction No. 14**

In the first element of the offense of conspiracy to allocate the market for employees listed in Instruction No. 13 I referred to a "conspiracy." A conspiracy is often described as a partnership in crime, in which each person found to be a member of the conspiracy is liable for all reasonably foreseeable acts and statements of the other members made during the existence of and in furtherance of the conspiracy.

To prove that a conspiracy existed, the evidence must show that the alleged members of the conspiracy in some way came to an agreement or mutual understanding to accomplish some unlawful purpose. Direct proof of a conspiracy may not be available. A conspiracy may, however, be disclosed by the circumstances or by the acts of the members, such as their course of dealings or other circumstances. Therefore, you may infer the existence of a conspiracy from what you find the members actually did or said.

To establish the existence of a conspiracy, the evidence need not show that the members of the conspiracy entered into any express, formal, or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished.

Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy. If actions were taken independently by them, without any agreement or mutual understanding among them, then there would be no conspiracy.

A conspiracy may vary in its membership from time to time.  It may be formed without all the parties coming to an agreement at the same time, knowing all the details of the agreement, or knowing who all the other members are.  It is not essential that all members acted exactly alike or agreed to play any particular part in carrying out the agreement.  The unlawful agreement may be proven if the evidence establishes that the parties each aimed to accomplish a common purpose.

In determining whether a conspiracy has been proved, you must view the evidence as a whole, and not piecemeal.  You should consider the actions and statements of all the alleged conspirators.  The conspiracy may be inferred from all the circumstances and the actions and statements of the alleged participants.

Acts that are, by themselves, totally innocent acts, may be among the acts that make up a conspiracy.

It does not matter whether the conspiracy was carried out or succeeded or failed, or that one or more co-conspirators may not have lived up to some aspect of the conspiracy.

**Instruction No. 15**

With respect to the first element of the offense of conspiracy to allocate the market for employees as listed in Instruction No. 13, I also need to explain the concept of allocating a market. In the instruction I gave at the beginning of jury selection I used the example of allocating a market for customers. If two or more companies or individuals are competing for the same customers, it is unlawful for them to agree to divide the customers between or among them.

Suppose that in Denver there were two companies selling auto parts. It would be unlawful for the two companies to agree to allocate the market for Denver customers. For example, it would be an unlawful market allocation agreement if they agreed that Company A would sell only to customers who reside north of Sixth Avenue and Company B would sell only to customers who reside south of Sixth Avenue; or if they agreed that Company A would be the only company allowed to sell to Honda owners; or if they agreed that Company A would not sell to anyone who has been a customer of Company B, and vice versa. Those are hypothetical examples of an unlawful market allocation agreement, the market being customers who purchase auto parts in Denver. The customers could, of course, purchase their auto parts from auto parts stores in Colorado Springs or Fort Collins. But, if they wanted to purchase auto parts in Denver, they would only be able to buy from A or B, and potential competition between A and B for those customers — that is, potential competition in that market for customers between A and B — would have been unlawfully restrained. Normal competition, such as reducing the prices of their respective products to woo customers away from their competitor, would have been undermined by the agreement. The same concept can be applied to a market for employees.

In this case the government claims in Count 1 that DaVita and Surgical Care Affiliates were potentially competing for the same employees; namely, senior level employees who were working either for DaVita or Surgical Care Affiliates. The market, therefore, is senior level employees at each other's companies. The government contends that the companies, through their respective Chief Executive Officers Kent Thiry and Andrew Hayek, entered into agreements and understandings with the purpose of unlawfully allocating the market by ending meaningful competition between the two companies for their senior level employees There are other companies in the health care industry and other industries that potentially would hire these same senior level employees, but that is not the market that is the subject of this case.

The government has the burden as to Count 1 to prove, beyond a reasonable doubt, that Mr. Thiry and/or DaVita conspired with Surgical Care Affiliates to allocate the market for those senior level employees during the time period charged. Count 2 charges a conspiracy between DaVita and Hazel Health to allocate the market of employees who had jobs at DaVita, not just senior employees, during the time period applicable to that count. Count 3 charges a conspiracy between DaVita and Radiology Partners to allocate the market of employees who had jobs at DaVita, not just senior employees, during the time period applicable to that count. While the alleged co-conspirators, the alleged markets, and the alleged time periods are different, the basic concepts described in this instruction concerning Count 1 also apply to Counts 2 and 3.

You may find that a conspiracy to allocate the market for employees existed even if you find that employees' switching employers was possible and actually happened in some cases. However, you may not find that a conspiracy to allocate the market for the employees existed

unless you find that the alleged agreements and understandings sought to end meaningful competition for the services of the affected employees.

**Instruction No. 16**

The second element of the offense of conspiracy to allocate the market for employees

~~violation~~ listed in Instruction No. 1⅗ is that defendant knowingly entered into the conspiracy

with the purpose of allocating the market applicable to that conspiracy.

The term "knowingly" means to act voluntarily and intentionally, and not because of

mistake or accident.

The term "with the purpose of" means to intend.  To establish the second element as to

Count 1, the government must prove beyond a reasonable doubt that Mr. Thiry and DaVita

intended to allocate the market for senior level employees of DaVita and SCA when they entered

into the alleged agreements and understandings with SCA and its Chief Executive Officer

Andrew Hayek.  Likewise, to establish the second element as to Counts 2 and 3, the government

must prove beyond a reasonable doubt that Mr. Thiry and DaVita intended to allocate the market

for employees of DaVita when they entered into the alleged agreements and understandings with

Hazel Health and its Chief Executive Officer Josh Golumb (Count 2) and with Radiology

Partners and its Chief Executive Officer Richard Whitney (Count 3).

A conspiracy can have multiple purposes.  Allocating the market need not have been the

conspiracy's sole purpose for you to conclude that it was the conspiracy's purpose.  However,

the government must prove that allocation of the market was at least one of the purposes that

motivated defendants' actions.

If defendants entered into an agreement or understanding with the intent to allocate the

market, it is immaterial whether such an agreement or understanding was actually good for the

company or even good for the market as a whole.  However, evidence of lack of harm or

21

procompetitive benefits might be relevant to determining whether defendants entered into an agreement with the purpose of allocating the market for senior executives (Count 1) and other employees (Counts 2 and 3).  If there was, in fact, a conspiracy as charged in each count of the Indictment for the purpose of allocating the market, it was illegal.

**Instruction No. 17**

The third element is that the crime occurred in the flow of or substantially affected interstate trade or commerce.  The term "interstate commerce" includes transactions of goods, services, people, or funds that moved or are moving across state lines.

The "interstate commerce" element is satisfied in one of two ways.  First, you may find that the alleged conspiracy involved transactions in the flow of interstate commerce.  When such transactions are involved, the amount of commerce restrained by the conspiracy is of no significance.  Second, the element is satisfied if transactions that occurred entirely within a state had a substantial effect on interstate commerce (or could have had a substantial effect on interstate commerce if the conspiracy had been successful).  For these intra-state transactions, the government need not precisely quantify the impact on interstate commerce, but it must show a "substantial effect."

It is a question of fact for the jury to determine whether the alleged conspiracies involved interstate commerce.  I note that you evaluate the "interstate commerce" element for the conspiracy as a whole and not for each individual defendant or each individual act in furtherance of the conspiracy.

**Instruction No. 18**

The Indictment charges a conspiracy in Count One beginning at least as early as February

2012 and continuing at least as late as July 2017; a conspiracy in Count Two beginning at least

as early as April 2017 and continuing at least as late as June 2019; and a conspiracy in Count

Three beginning at least as early as November 2013 and continuing at least as late as June 2019.

For each count, the government does not need to prove that the conspiracy began or ended on

those exact dates.  The government must prove beyond a reasonable doubt that the conspiracy

existed reasonably near the time period alleged in that count.

**Instruction No. 19**

Defendants' theory of the case is that the government has not proven beyond a reasonable

doubt that either defendant engaged in any conspiracy with the purpose to allocate the market for

employees, by any means.  Specifically, defendants contend that the evidence shows that they

did not enter into any agreement with the purpose of allocating markets for senior executives

(Count 1) or other employees (Counts 2 and 3), and they did not intend to allocate such markets.

Rather, defendants contend that the evidence shows that they did not act with any unlawful

purpose with respect to each of the alleged non-solicitation agreements, and that they and their

alleged co-conspirators, along with many other employers all over the country, competed for

each other's employees throughout the alleged conspiracy periods, that they acted lawfully and

competitively, and that they pursued independent business strategies based on their own interests

and considerations.  Defendants also contend that they did not knowingly and intentionally join a

conspiracy to allocate employee markets, share that goal, or do anything with the intention of

accomplishing it.

**Instruction No. 20**

If you find the defendants guilty, it will be my duty to decide what the punishment will be.  You should not discuss or consider the possible punishment in any way while deciding your verdict.

**Instruction No. 21**

In a moment the bailiff will escort you to the jury room. All exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. Next, you might benefit from reviewing the instructions. Remember, although you are the judges of the facts, you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the Indictment. You will never have to explain your verdict to anyone. You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.