# EXHIBIT A

1

1           UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3    IN RE:  OUTPATIENT MEDICAL       )
     CENTER EMPLOYEE ANTITRUST        ) No. 1:21-cv-00305
4    LITIGATION                       )
                                      ) Chicago, Illinois
5                                     ) June 1, 2022
                                      ) 11:03 a.m.
6

7        TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING

8             BEFORE THE HONORABLE ANDREA R. WOOD

9
     APPEARANCES:
10   For Plaintiffs:          NUSSBAUM LAW GROUP, P.C.
                              BY:  MS. LINDA P. NUSSBAUM
11                            1211 Avenue of the Americas, 40th Floor
                              New York, New York 10036-8718
12                            (917) 438-9189
                              lnussbaum@nussbaumpc.com
13
                              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
14                            BY:  MS. LIN YEE CHAN
                                  MR. DEAN M. HARVEY
15                                MS. SARAH D. ZANDI
                              275 Battery Street, 29th Floor
16                            San Francisco, California 94111
                              (415) 956-1000
17                            lchan@lchb.com

18                            JOSEPH SAVERI LAW FIRM, INC.
                              BY:  MR. JOSEPH R. SAVERI
19                                MR. DAVID H. SEIDEL
                              601 California Street, Suite 1000
20                            San Francisco, California 94108
                              (415) 500-6800
21                            jsaveri@saverilawfirm.com

22

23

24

25

2

```
 1    APPEARANCES:   (Continued)

 2    For Plaintiffs:          ROBERTS LAW FIRM, P.A.
                               BY:  MS. MORGAN HUNT
 3                             20 Rahling Circle
                               Little Rock, Arkansas 72223-1790
 4                             (501) 821-5575
                               morganhunt@robertslawfirm.us
 5
      For Defendants
 6    Surgical Care Affiliates,
      LLC; SCAI Holdings, LLC;
 7    and United Healthgroup,
      Inc.:                    KIRKLAND & ELLIS, LLP
 8                             BY:  MS. CATIE VENTURA
                               300 North LaSalle Street
 9                             Chicago, Illinois 60654
                               (312) 862-3431
10                             catie.ventura@kirkland.com

11    For Defendant
      Andrew Hayek:            WILSON SONSINI GOODRICH & ROSATI
12                             BY:  MS. JORDANNE M. MILLER
                               1700 K Street NW, Fifth Floor
13                             Washington, DC 20006
                               (212) 497-7761
14                             jordanne.miller@wsgr.com

15    For Defendants
      United Surgical
16    Partners, Inc. and
      Tenet:                   GIBSON, DUNN & CRUTCHER LLP
17                             BY:  MS. KRISTEN C. LIMARZI
                               2001 Ross Avenue, Suite 2100
18                             Dallas, Texas 75201
                               (214) 698-3320
19                             klimarzi@gibsondunn.com

20    For Defendant
      Kent Thiry:             MCDERMOTT WILL & EMERY, LLP
21                             BY:  MR. JUSTIN P. MURPHY
                               500 North Capitol Street, NW
22                             Washington, DC 20001
                               (202) 756-8018
23                             jmurphy@mwe.com

24

25
```

```
 1   APPEARANCES:   (Continued)

 2   For Defendant
     Davita, Inc.:            MORGAN, LEWIS & BOCKIUS, LLP
 3                            BY:  MR. ROMEO S. QUINTO
                              110 North Wacker Drive, Suite 2800
 4                            Chicago, Illinois 60606
                              (312) 324-1780
 5                            rquinto@morganlewis.com

 6
     For the Intervenor,
 7   United States of
     America:                 UNITED STATES DEPARTMENT OF JUSTICE
 8                            BY:  MR. ANTHONY W. MARIANO
                              450 5th Street NW, #4608
 9                            Washington, DC 20530
                              (202) 598-2737
10                            anthony.mariano@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22
     Court Reporter:          Brenda S. Tannehill, CSR, RMR, CRR
23                            Official Court Reporter
                              219 South Dearborn Street, Suite 1928
24                            Chicago, Illinois 60604
                              (312) 554-8931
25                            brenda_tannehill@ilnd.uscourts.gov
```

1          (Proceedings held remotely, via telephone:)

2          THE COURT:  Good morning.  This is Judge Wood joining

3     the line.  I believe we're ready to call the case, so my

4     courtroom deputy will do that, and then we will get

5     appearances starting with plaintiffs' counsel.

6          David, go ahead.

7          THE CLERK:  21 C 305, In Re Outpatient Medical Center

8     Antitrust Litigation, for status.

9          THE COURT:  Okay.  Let's start with plaintiffs'

10    counsel.

11         MR. SAVIERI:  Good morning, Your Honor.  It's

12    Joseph Savieri on behalf of the plaintiffs, and I'm prepared

13    to handle the hearing today on behalf of the plaintiffs.

14         THE COURT:  Thank you.

15         MS. NUSSBAUM:  Good morning, Your Honor.  This is

16    Linda Nussbaum on behalf of the plaintiffs.

17         MR. SEIDEL:  Good morning, Your Honor.  This is

18    David Seidel on behalf of the plaintiffs.

19         MR. HARVEY:  Good morning, Your Honor.  This is

20    Dean Harvey of Lieff Cabraser on behalf of the plaintiffs.

21         MS. ZANDI:  Good morning, Your Honor.  This is

22    Sarah Zandi also from Lieff Cabraser on behalf of the

23    plaintiffs.

24         MS. CHAN:  Good morning, Your Honor.  This is

25    Lin Chan from Lieff Cabraser as well for the plaintiffs.

1          MS. HUNT:  Good morning.  This is Morgan Hunt from

2     the Roberts Law Firm on behalf of the plaintiffs.

3          THE COURT:  Okay.  It sounds like we may have

4     exhausted the plaintiffs' side.  Let's get an appearance on

5     behalf of -- let's see.  Let's start with the SCAI defendants.

6          MS. VENTURA:  Good morning, Your Honor.

7     Catie Ventura from Kirkland & Ellis on behalf of SCAI

8     Holdings, LLC; Surgical Care Affiliates, LLC; and United

9     Health Group.

10         THE COURT:  Okay.  And do we have counsel for

11    Andrew Hayek?

12         MS. MILLER:  Good morning, Your Honor.

13    Jordanne Miller from Wilson Sonsini Goodrich & Rosati on

14    behalf of defendant Andrew Hayek.

15         THE COURT:  Thank you.  And then let's see.  United

16    Surgical Partners.

17         MS. LIMARZI:  Good morning, Your Honor.  This is

18    Kristen Limarzi from Gibson Dunn on behalf of United Surgical

19    Partners and the Tenet defendants.

20         THE COURT:  Davita?

21         MR. QUINTO:  Good morning, Your Honor.  Romeo Quinto

22    of Morgan Lewis on behalf of Davita.

23         THE COURT:  And defendant Thiry?

24         MR. MURPHY:  Good morning, Your Honor.  Justin Murphy

25    from McDermott, Will & Emery on behalf of Mr. Thiry.

1          THE COURT:  And then do we have counsel from the

2     United States as an intervenor in this matter?

3          MR. MARIANO:  Good morning, Your Honor.

4     Anthony Mariano on behalf of the United States.

5          THE COURT:  Is there anybody else that I have left

6     out who needs to make a formal appearance this morning?

7          It sounds like we've covered everyone.  Okay.

8          So I've reviewed the parties' status reports.  I'd

9     like to start by making sure that there haven't been any

10    additional developments with respect to the two criminal

11    trials, the one that's been completed and the one that is

12    scheduled for January of 2023, starting with confirming that

13    the trial is still set for January 2023 and that there hasn't

14    been any change in that in the last few days.

15         So Mr. Mariano, perhaps you can speak to that.

16         MR. MARIANO:  That's correct, Your Honor.  There's

17    been no further continuance.  The trial against SCA is

18    scheduled to begin January 9, 2023.

19         THE COURT:  And just to cover the bases here, I take

20    it there haven't been any new indictments returned or new

21    criminal proceedings otherwise instituted relating to the

22    government's investigation on this matter?

23         MR. MARIANO:  That's correct, Your Honor.

24         THE COURT:  Okay.  So the United States is taking the

25    position that it would not oppose narrowing the scope of the

1   discovery stay at this point, leaving a portion of the stay in

2   place through the trial that's scheduled for January of next

3   year but allowing some exceptions that would expand the

4   discovery that's being permitted.

5         My understanding is that the SCA defendants are

6   largely the ones that oppose any changes to the status quo and

7   that the plaintiffs, at least for the moment, would agree with

8   the government's proposal.

9         I think what I'd like to hear from the parties on is

10  whether the government's proposal is workable.

11        The government's submission suggests that there's a

12  bright line or at least a bright enough line that can be drawn

13  between permissible discovery and discovery that would still

14  be on hold such that more information could be produced

15  without creating unnecessary disputes.  I think there was a

16  suggestion from the defense side that maybe it's not going to

17  be so easy to do that.

18        Putting aside, for the moment, the issue of 30(b)(6)

19  depositions because notwithstanding the government's proposal,

20  I would not be inclined to start deposition discovery really

21  of anything other than perhaps document retention policies,

22  but I'm hesitant to start putting witnesses under oath for

23  other purposes, so putting that aside, just with respect to

24  the issue of expanding what would largely be document

25  discovery, what is the issue that the defendants who object to

1   the proposal see with just the workability of it?  Am I

2   correct that one of your concerns is that it just would be too

3   hard to try to police what's allowed and what's not allowed?

4            MS. VENTURA:  Your Honor, Catie Ventura for SCA.

5            I will start off by speaking on behalf of the

6   defendants today, but obviously, if any others have additional

7   thoughts, I would encourage them to weigh in as well.

8            Two points with respect to the workability question.

9   The first is that expanding the scope of document discovery in

10  the way that the plaintiffs have requested and the government

11  has suggested would impose significant burdens on SCA as it is

12  waiting for its upcoming criminal trial and burdens that were

13  not placed on Davita and Thiry while they were waiting for

14  their criminal trial.  And I haven't seen any justification in

15  the joint status report for why SCA should be treated any

16  differently than Davita and Thiry were while they awaited

17  their criminal trial.

18           But with respect to the more specific question about

19  workability and the government's proposal, it's our position

20  that the government's proposal will add significant complexity

21  to discovery that is not necessary at this point and, in

22  addition, would impose sort of those undue burdens that we

23  cite.  And let me give you one example.

24           With respect to the documents that the defendants

25  have produced to the government in the criminal case, SCA --

1    my client, SCA, has produced a significant volume of documents

2    to the government.  And it's SCA's position that the vast

3    majority, if not all, of the responsive documents in this case

4    are in that set of materials that were previously produced to

5    the government, but the government is objecting to us

6    providing those documents in that format to the plaintiff.

7         Instead, what they're saying is:  You can produce it

8    in another format and in another way that doesn't disclose the

9    fact that these documents were previously produced to the DOJ.

10        So what that means is my client is going to have to

11   do discovery twice.  We're going to have to go back, do new

12   search terms, new custodians, potentially review all these

13   documents again, issue new privilege logs because the

14   government has also said we can't produce the same privilege

15   logs that we produced to the DOJ, and essentially restart

16   discovery while our criminal case is pending.

17        And not only are we going to have to do discovery

18   once then, but after completion of our criminal trial, I

19   suspect the plaintiffs will ask us again for all the documents

20   that we've produced to the DOJ to ensure that they're not

21   missing any.  And we're going to have to produce those same

22   documents again.

23        So our position is that the government's proposal is

24   not workable.  It adds unnecessary complexity and burden to

25   discovery in this case, and we think discovery would actually

1    be more efficient and more streamlined by continuing the

2    discovery stay as is through the completion of SCA's criminal

3    trial.

4         There's a lot of work that can be done in the

5    meantime.  I think we flagged a few examples of that in our

6    joint status report.  And then the parties can hit the ground

7    running once those criminal trials -- or once our criminal

8    trial is done.

9         THE COURT:  Where are the parties and, in particular,

10   your client, Ms. Ventura, in complying with the discovery that

11   has already been allowed to proceed?

12        MS. VENTURA:  Our understanding is that SCA has

13   completed its document and data production in response to

14   those requests.  And then the parties -- the defendants have

15   agreed to provide objections and responses to the -- I believe

16   it's the second set of RFPs that the plaintiff issued.  And so

17   the defendants will be providing those responses, I believe,

18   on June 24th.

19        THE COURT:  Are those second requests for

20   production -- do they go beyond what the parties were required

21   to produce?  In other words, is this additional discovery

22   that's been served where you're just going to provide

23   objections and responses but not produce documents because of

24   the stay, or is this still within the original categories that

25   had been allowed to go forward?

1          MS. VENTURA:  No.  It is beyond the scope of the

2     original categories that were allowed to go forward.

3          So our goal with this is to provide objections and

4     responses without producing documents at this time so that the

5     parties can identify if there's any gating issues that need to

6     be resolved before discovery gets going.

7          So one of those is my client, the time period of the

8     alleged conspiracy.  That time period will obviously be very

9     important with respect to the scope of discovery that is

10    provided.  And so that's one thing that my client expects will

11    come to the fore when we provide these responses and

12    objections.

13         We'll try to work it out among the parties, but,

14    obviously, if we don't, we can raise that issue with

15    Your Honor so that that issue and any other gating issue that

16    comes up can be resolved so that we can hit the ground running

17    with discovery after the criminal trial is completed.

18         THE COURT:  Okay.  Plaintiff -- I'm sorry.  Who's

19    about to speak?

20         MR. QUINTO:  This is Romeo -- pardon me, Your Honor.

21    This is Romeo Quinto for Davita.  I didn't know if you wanted

22    to hear some additional perspectives on burden, but I am happy

23    to talk about the burden from Davita's perspective if it

24    pleases the Court.

25         THE COURT:  Go ahead.

1          MR. QUINTO:  So from Davita's perspective, as a

2     preliminary matter, we think the concerns are the same whether

3     discovery comes from Davita or it comes from SCA.

4          The documents about this alleged conspiracy which

5     allegedly involves all of the defendants would be the same

6     regardless if the source is one or the other.

7          And certainly as an ongoing business, Davita is very

8     interested in the outcome of the trial that involves SCA

9     because this is a conspiracy that allegedly involves Davita as

10    well as the former CEO, Mr. Thiry.  And, of course, in

11    general, Davita wants SCA not to be unfairly or unduly

12    burdened in defending itself, wants SCA to have the same fair

13    shake that Davita had when it was acquitted so along the lines

14    of what Ms. Ventura was saying.

15         But specifically on the burden, Your Honor, as you

16    can see from the joint status report, the government is

17    looking to review each discovery request, object if they see

18    an issue with a request which, in our view, would likely

19    generate discovery motion practice, and if there's some filter

20    that comes out of that discovery motion that the government --

21    that the Court orders the parties and Davita specifically to

22    apply to the documents before producing them, it's going to be

23    tremendously burdensome.

24         So, for example, in the second set of RFPs that

25    Ms. Ventura was just talking about, in Request Number 53, this

1   is a request that looks for documents sufficient to describe

2   the duties, responsibilities, pay scales, job title for each

3   job title in which you, defendant, employed or attempted to

4   employ any person since January 1, 2005, including but not

5   limited to job descriptions and job postings for such roles.

6        And Your Honor can see in the joint status report,

7   this is one of the exceptions that both plaintiffs and the

8   government are looking to carve out from the stay.  They say,

9   "allow discovery including depositions."  I know you said to

10  put that aside for a moment, but they're looking to allow

11  discovery into job responsibilities and reporting

12  relationships.  And that's in the joint status report on

13  Page 5.

14       Well, Your Honor, the DOJ might object to the

15  "attempted to employ" portion because that might go to

16  questions related to the underlying alleged no-poach

17  agreements which they say is off limits.  They say that on the

18  joint status report on Page 6.  And so now that leads to

19  motion practice because plaintiff thinks that's fair game;

20  defendants think not.  And the DOJ might have a third view.

21       And so if the Court were to issue a ruling, so, for

22  example, it says, "Okay, nothing going into attempted

23  employment," well, how do we apply that filter?  Do we look at

24  each job posting and determine if a candidate was successfully

25  hired?  You know, what about offers for a given job but the

1    candidate declined?  Is that a document to produce or not

2    produce?  Does the reason that the candidate declined need to

3    be considered?

4         So, for example, if it's arguably traceable from the

5    plaintiffs' perspective to an alleged agreement, then that's

6    out of bounds?  And even if that's the benchmark, how do we

7    even get into plaintiffs' head to determine if the responsive

8    information is traceable to an alleged agreement or not?  And

9    then what if the candidate declined because she wanted to work

10   from home?  You know, then do we produce the document?  And

11   what if it's a combined reason?

12        Your Honor, hopefully, you see the point.  It creates

13   a lot of burden associated with just a single document.

14        So further, Your Honor, what about an offer for a

15   given job but it was rescinded?  Do we have to look at the

16   basis it was rescinded?  Again, do we have to get into

17   plaintiffs' head and determine is it arguably traceable to an

18   alleged agreement, and therefore, it's out of bounds?  But if

19   the job was rescinded, then the document request is okay, we

20   can produce that document?  Or if it was arguably possibly

21   allegedly traceable to both, now we have even more headaches

22   to deal with.

23        The bottom line, Your Honor, is essentially, it might

24   sound feasible in the abstract, but in practice, it's going to

25   be unworkable, and it's going to lead to many more, I think,

1    discovery disputes than bringing these specific types of

2    issues to the Court's attention.

3          THE COURT:  I'd like to hear from plaintiffs' counsel

4    because ultimately, while the government can express

5    nonopposition to certain discovery going forward, it's the

6    plaintiffs who really have an interest in actually moving

7    forward.

8          And I take it, Mr. Savieri, that your position would

9    be that you want it to go forward, you're going to seize on

10   the fact that the government has agreed to loosen its

11   objection such that you can get perhaps more discovery without

12   their opposition, but why should I take that approach?  Why

13   are the concerns being raised by the defendants with respect

14   to the potential for burden and confusion and the unnecessary

15   multiplication of discovery disputes sufficient to warrant

16   extending the stay?

17         MR. SAVIERI:  Your Honor, thank you.  This is

18   Joseph Savieri on behalf of the plaintiffs.

19         Let me go through it, I guess, in a couple of ways.

20   First, I think that the -- you know, far from seizing on the

21   government's nonopposition, I think what we're presenting you

22   with, Your Honor, is an effort to balance the interests of the

23   plaintiffs in advancing this case.

24         This case has been on file since early last year.

25   We've been waiting patiently, I think it's fair to say.  And

1    in the last instance, we agreed that we would allow and

2    certainly agree that the government's interest in the criminal

3    case should be protected.  And we were willing and we are

4    willing to work with all the parties to protect those

5    legitimate interests.

6         I think what we're presenting you with represents the

7    fact that we have been able to balance those interests and to

8    present something collaboratively certainly with the

9    government that allows our interests to be protected.  And

10   certainly as the plaintiffs in the case and the parties that

11   have been injured by the conduct here, we have an interest in

12   advancing those claims.

13        I don't think enough -- no one has talked about the

14   prejudice that comes to the plaintiffs who have the burden

15   with the passage of time.  The longer we wait, the more

16   memories fade, the more it is likely that the discovery and

17   the evidence we need will go away.  And it always happens with

18   time, and as the party that bears the burden here, I think

19   that's important to note.

20        I think that the proposal that the government has

21   made which we negotiated is not as -- certainly doesn't go as

22   far as we would like but we think represents a fair

23   accommodation of interests.  Certainly the discovery of the

24   documents that we are asking for are core materials in the

25   case.  We would think that we can proceed with the discovery

1    along those lines in an efficient and expeditious way.

2           Candidly, I think the parade of horribles or

3    descriptions of potential complexities are -- how should I say

4    it -- overstated.

5           I think that the -- I don't think there is going to

6    be any version of a second production of materials.  You know,

7    I think that the collection of materials that has already been

8    made in connection with the government case has already been

9    made.  So there's certainly no additional burden with

10   producing that at the appropriate time.

11          Frankly, I think that the ability of this group of

12   lawyers who are experienced in these cases to efficiently

13   start on the collection of materials can proceed effectively

14   and efficiently.

15          I think that the other thing I would note is that the

16   kind of concerns about the government's involvement in the

17   civil case and having some kind of maintenance of an interest

18   in reviewing what is going on is far from a defect.  I think

19   it's actually an attribute.  I don't think it's going to

20   provide the opportunity for more mischief or more complexity.

21   I think, actually, to the contrary, it's going to give us an

22   opportunity to head off any issues of government concern.

23          I just don't think -- I think that in my experience,

24   having done this in a number of cases, the likelihood that we

25   will be in a situation where if the government had a concern

1    about a particular set of document requests that we wouldn't

2    be able to tailor that or address it seems quite low to me.

3    And candidly, I think that we should be considering that fact

4    or that possibility when it comes up in the context of a real

5    issue, not in a hypothetical situation where, with experienced

6    lawyers, I think, a lot of this can be headed off.

7             You know, the document request that was cited, I

8    think, is something that the government has expressed an

9    interest in not -- that doesn't impose any concerns, so, you

10   know, whatever the description of the discovery was, I think,

11   was pretty far afield.

12            So, you know, I think what I would say is that the

13   likelihood of unworkable complexities is low to me.  I think

14   that we should be addressing it in the context of real issues

15   as they arise.  I think that discovery in this case has been

16   held up for a long time, and I think there are things that we

17   can do right now to advance the case.

18            A couple of other points just to kind of run through

19   this.  To answer your question directly, I think we've kind of

20   come to the end of the road as far as the production of

21   documents under the current restrictions.

22            What I heard from the defendants is that what we will

23   have to do, in their view, is negotiate a number of gating

24   issues which I interpret to mean kind of preliminary issues

25   about scope of discovery which don't involve actually the

1   production of any discovery materials.  You know, that's a

2   discussion about the shape of the table, not what's going to

3   be on the table.

4        And so, just to be clear, I think in the defendants'

5   view, the discovery -- at least some of the defendants.  Of

6   course, it's not all of the defendants.  In the defendants'

7   view, what we would be doing until the criminal trial would be

8   very, very little.

9        So I think that just to kind of bring it back, I

10  think that given our interest in advancing the case, the delay

11  that we've dealt with and the fact that there is an entirely

12  workable solution, an interim solution, to advancing the case

13  on the table which we endorse and we're happy that the

14  government agrees with us is the way to proceed.  And we can

15  get going on that and do it in an efficient and expeditious

16  way, and we'll balance, I think, the legitimate interests of

17  all the parties.

18       You know, I guess I would also say that the issue

19  about dual preparation for criminal and civil cases, that was

20  a discussion we had early this year when there was a very

21  compressed time schedule.  And now that trial isn't scheduled

22  to begin until late -- I mean, early next year, so there's a

23  considerable window of time between now and then.

24       That trial was originally scheduled to happen early

25  this year and was continued because of the calendar and the

1   judge.  And so, you know, respectfully, I think that there's

2   plenty of time and opportunity to do both.  Clearly, that

3   interest isn't shared by the Davita defendants and is --

4   because that trial is over.

5          So I think that the concern about the burden is

6   somewhat overstated here, particularly given where we are in

7   the calendar and how much work can be done between now and the

8   end of the year.

9          So, you know, maybe that's a good place to stop.  I'm

10  certainly interested in what specific questions you have about

11  that.

12         THE COURT:  So Mr. Savieri, I think I heard you

13  suggest that the parties were essentially or are essentially

14  finished with the limited document production that has already

15  been ordered.  Is that correct?

16         MR. SAVIERI:  Yes, yes.  I mean, there's some data

17  that's been turned over, some organizational materials.  It's

18  been largely that kind of production.  We may have some

19  follow-up questions on what we have received, but largely,

20  yes, we're done.  I mean, we're left to talking about these

21  gating issues and document preservation issues.

22         THE COURT:  Are there any disputes out of the

23  discovery that's already been produced?

24         MR. SAVIERI:  Given the information we have, I'm not

25  aware of any disputes.  Like I said, we have some additional

1   requests that have to do with what we have received and some

2   questions that are yet unresolved, but I would have to say,

3   you know, to be fair, they're relatively minimal.  Right?  And

4   I wouldn't know if I would consign them to footnotes, but

5   certainly they're important, but they're not -- they're

6   certainly not the, you know, key discovery in this case.

7          So I think we've done the work, you know, and I think

8   we've benefitted from it, but we're ready to -- and I think

9   it's appropriate to go to the next stage in the case.

10         THE COURT:  Okay.  Any response to that from any of

11  the defendants?

12         MR. QUINTO:  Your Honor.  Romeo Quinto with Davita.

13         I just want to state that Davita has produced its

14  structured data as Mr. Savieri has said, and it's gone back

15  for all employees going back to 2007.

16         If plaintiffs are satisfied with that and don't have

17  any issues to raise with that, then that's certainly fine by

18  us, but if plaintiffs are intending to meet and confer over

19  that data, they certainly haven't even begun that process with

20  respect to the structured data.  So if there's some additional

21  issues to work out on the sufficiency of the data, of course,

22  we think it's comprehensive and fully responsive, but if

23  plaintiffs disagree, that meet-and-confer process hasn't even

24  begun.

25         We'll also say that as Ms. Ventura said, defendants

1   are working on written responses to objections to plaintiffs'

2   second set of RFPs.  And so that's also applicable to Davita.

3          In addition, I would add that plaintiffs produced an

4   additional set of documents just this past Thursday, May 26th,

5   which Davita at least has not had a chance to review yet

6   before this call.  But if that's deficient in any way, that

7   may generate some further meeting and conferring.

8          Otherwise, with respect to plaintiffs' first set of

9   document requests to Davita, there was one outstanding issue

10  that I believe is resolved as of just yesterday with respect

11  to retention policies and periods, but otherwise, we believe

12  the first set of requests to Davita is complete.

13         MR. SAVIERI:  Your Honor, this is Joe Savieri again.

14         I think that's largely confirmatory with what I just

15  said.

16         I do think we received a production of structured

17  data.  We're going through it.  I have no reason to believe

18  right now that it's not sufficient, but I know from having

19  worked with structured data a lot in the past, once we look at

20  it, we may have questions about what field names -- what the

21  fields are and how they relate to one another, but candidly, I

22  think it's that order of magnitude of where we are in the

23  process.  So, you know, I don't know if that means we're 90 or

24  95 percent done, but that's just kind of where we are right

25  now.

1          THE COURT:  Let me go back.

2          MS. VENTURA:  Your Honor.

3          THE COURT:  If you have something to add on this

4     point, Ms. Ventura, go ahead, before I switch topics slightly.

5          MS. VENTURA:  Yes.  I had two points to make in

6     response to Mr. Savieri's statements.

7          First, with respect to the issue of open disputes,

8     with respect to productions from the plaintiff that were

9     permitted during the current discovery stay, while we have

10    received documents from one plaintiff we're obviously still

11    reviewing, we have not received a single document from the

12    second plaintiff, Allen Spradling.  So that is something that

13    the parties will need to work through and may potentially need

14    to bring to the Court shortly.

15         And the other point I would like to make is

16    Mr. Savieri's explanation of the prejudice that plaintiffs are

17    facing with this discovery stay.  I believe he said primarily,

18    it's the passage of time and that memories may fade as the

19    passage of time goes on, but based on Your Honor's prior

20    statement, it's my understanding that depositions are not

21    going to go forward now regardless.

22         And with respect to documents, documents say what the

23    documents say.  The passage of time is not going to change any

24    memories around what those documents say.  And the parties are

25    complying with their obligations under the federal rules to

1    preserve those documents, so we don't believe that point of

2    prejudice is really applicable to the issue of whether

3    document discovery should go forward.

4         MR. SAVIERI:  Your Honor, on that last thing,

5    Joe Savieri again.  Let me be clear about this.  I think it is

6    certainly the case that with the passage of time, things

7    happen in cases.  While the documents may be preserved,

8    individuals leave companies.

9         And with respect to the witnesses, you know, what

10   we're interested in doing is making -- and we've done our

11   level best to do this -- is to make sure that this case

12   advanced while trying to navigate the pendency of the criminal

13   case.  And so, you know, what we would anticipate is that once

14   the document discovery is done that we would proceed with

15   depositions.  And to delay that whole process by -- I think

16   what the defendants are asking for is something like another

17   year -- would just move the whole process of actually taking

18   the depositions of those witnesses that much farther down the

19   road.

20        So, you know, I do think there's a cumulative effect

21   to this, and it includes -- even if we're delaying looking at

22   documents for a year, you know, it's going to have an impact

23   on when these witnesses' depositions are eventually going to

24   be taken.

25        So it's not hypothetical.  That's real.  It happens.

1    And we're trying to do the best we can here with that, but it

2    does happen.

3         THE COURT:  And just so that it's clear, my

4    hesitation in ordering limited deposition discovery to go

5    forward is directly tied to concerns that it will require

6    individual witnesses to be prepped multiple times.  If there

7    are topics that they can be deposed on now but then they're

8    going to have to be deposed later, if additional documents are

9    produced and additional deposition testimony goes forward, it

10   seems the same person, whether they're testifying as a

11   30(b)(6) witness or as an individual person with knowledge,

12   may have to sit for a deposition multiple times because

13   additional subject matter would be available for a deposition

14   at a later time or because subsequent document productions

15   raise issues the parties didn't know about previously.

16        So I think the time and effort that goes into having

17   people sit for a deposition, apart from the fact that it is

18   sworn testimony which is a little bit different when you're

19   talking about how that testimony may relate to what happens in

20   a criminal proceeding, that's really where my concern is.  And

21   frankly, most of the time, parties prefer to get most or all

22   of the document discovery and written discovery of other types

23   completed before you really get going with depositions.  So

24   that is largely why I'm more hesitant about your proposal that

25   some limited deposition discovery go forward.

1          MR. SAVIERI:  Your Honor, excuse me.  It's

2     Joe Savieri again.

3          THE COURT:  Briefly.  If you want to respond to that

4     briefly, you can.

5          MR. SAVIERI:  I do, and I'll just say this.  This

6     comes up in cases frequently, and there are lots of ways of

7     dealing with that.  One is to make a list of the witnesses who

8     kind of would not be deposed.

9          And second, every time this has come up with me in a

10    case with the Department of Justice and they have said, "We

11    don't want that witness taken," we've worked that out and

12    we've just put that witness back, you know, at the end of the

13    line.  So I've dealt with this issue.  I think there are

14    workable solutions to that.

15          I'll just stop there.  I'm sorry.

16          THE COURT:  I understand that position.  There's also

17    the issue of the motion to dismiss that's pending, and while I

18    frequently take the position that document and written

19    discovery should go forward while a motion to dismiss is

20    pending if that meets the interests of justice in the

21    particular case, I'm much more hesitant to have deposition

22    discovery go forward during the pendency of a motion to

23    dismiss as well since motions to dismiss, even if they end up

24    not disposing of the case, they may end up with cases being

25    narrowed or amended complaints being filed.  So, again, I'm

1   not going to be inclined to allow limited deposition discovery

2   to go forward.

3        Before I make any decision with respect to the

4   proposal on the narrowing of the stay of discovery, I also

5   want to get some clarity on another issue raised in the status

6   report which is the possibility of the Davita defendants being

7   obligated to destroy documents that were obtained from the

8   government in connection with their criminal proceeding.

9        I guess there's a motion pending in Colorado that

10  sort of addresses that issue.  What's going on there?  Is this

11  a question for Mr. Quinto in the first instance?

12       MR. QUINTO:  Romeo Quinto for Davita, Your Honor.

13       Yes, there was a motion that is pending before

14  Judge Jackson in the District of Colorado seeking to extend

15  the timeline by which to comply with the protective order

16  which required destruction of the documents upon 30 days of

17  conclusion of the case.  And the Court, Judge Jackson, granted

18  that motion.  We attached it to the supplement to the joint

19  status report.

20       The text order of Judge Jackson which extended the

21  timeline to June 20, 2022, in that same order, Judge Jackson

22  said that it was not -- the Court was not addressing any

23  discovery issue, the orders in the civil case, but that if the

24  parties to the civil case wished to obtain some or all of the

25  materials produced by the DOJ, then presumably, they would

1   have to use ordinary civil discovery procedures to obtain them

2   from the government in that case.

3          So currently, Davita and Thiry's intent at this point

4   is to go forward with the document destruction and certify

5   same to the government by June 20.

6          In the meantime, however, Your Honor, we received a

7   letter from plaintiffs indicating that we should continue to

8   preserve those documents.  Of course, that would be in direct

9   contravention to the protective order obligations.

10         THE COURT:  So as things currently stand, you believe

11  you're obligated by the order in Colorado to destroy the

12  documents June 20th, was it?

13         MR. QUINTO:  Yes, Your Honor.

14         THE COURT:  Okay.  And so I take it, Mr. Mariano,

15  that the government believes that that order should be

16  honored, and you would not support any joint request to modify

17  the protective order in Colorado.

18         Maybe you had the opportunity to weigh in there,

19  maybe you did weigh in on it in the briefing there, but your

20  position is no, there shouldn't be any modification that would

21  permit the retention of those documents and potentially

22  subject them to being discoverable here?

23         MR. MARIANO:  That's correct, Your Honor.  When we

24  negotiated the protective order in the District of Colorado,

25  it was after the civil case had already begun, the defendants

1   were aware of it.  So we specifically included in the

2   protective order that the disclosure pursuant to our

3   constitutional and other obligations was for use solely in the

4   criminal case.

5        These records are not the property of the defendants;

6   they're the property of the United States, so we've been clear

7   in our meet and confer with both defendants and plaintiffs

8   that if they seek to use documents from the government's file

9   in the civil litigation, they would need to make any discovery

10  requests through the United States, and we would need to

11  review them through the applicable process whenever we

12  received them.

13       THE COURT:  Okay.  And so what is the argument that

14  plaintiffs are making here for why the Davita defendants

15  shouldn't have to follow that order?  And are you making a

16  formal request to me to enter some sort of order that you

17  believe would either maintain the status quo beyond June 20th

18  or indefinitely?

19       MR. SAVIERI:  Your Honor, Joseph Savieri again.

20       So a couple of points.  We have not made a formal

21  request right now.  We were not part of the negotiations of

22  the protective order in Colorado.  We are not a party to that

23  case.

24       I didn't know until just a few seconds ago that the

25  protective order was negotiated in contemplation of this case

1   and to make arrangements that we would not be entitled to get

2   that material other than through some other formal process.

3         The materials themselves are part of the document

4   request that was served in this case.  They're clearly

5   materials that are subject to the document requests and

6   relevant to this case, and I believe that they are subject to

7   the government -- to the defendants' preservation obligations

8   because they are in their possession, custody, or control.

9   And it's certainly my experience that it is better to deal

10  with these issues in advance rather than trying to unring a

11  bell in a spoliation context down the road.

12        So our view was that we should advise the defendants

13  that we're aware of this and ask them not to destroy these

14  documents.  I don't think there is any exigency that is

15  required at this point to destroy them so quickly.

16        Certainly my view would be just like we discussed

17  with respect to third parties and other issues in the case.

18  The best medicine here is to preserve the positions of the

19  parties, to preserve the documents for subsequent, you know,

20  resolution.  I think the interests will change after the

21  criminal case.

22        Frankly, I don't think that once these materials are

23  turned over as part of a constitutional requirement that the

24  rules that would apply under, I guess, a *Touhy* process which

25  has to do with, you know, materials that are internal to the

1   government or government witnesses, they're just sought in

2   civil discovery, apply.  Those, as I understand it, ordinarily

3   apply to materials that have been exclusively within the

4   control of the government and not disclosed by it voluntarily

5   outside, certainly not disclosed voluntarily pursuant to

6   some -- to a constitutional or due process concern.

7           And so really, to just bring this back, I think what

8   we're asking for is just not to do anything rash and to give

9   the parties an opportunity to sort through this.

10          If it's ultimately the case that I have to go to

11  Colorado and seek modification of the protective order there,

12  I'm prepared to do that, but I just wanted to be clear as

13  quickly as possible that we think -- we're sure that there are

14  relevant materials here.  They are subject to the rules that

15  require maintenance of the evidence, and we want to do this in

16  an ordinary and reasonable way and not be prejudiced right

17  now.

18          THE COURT:  Mr. Savieri, you say that there's no

19  urgency.  I don't know if you consider 20 days to be an urgent

20  situation or not, but it does seem that there is a firm

21  deadline now by which the defendants have to carry out the

22  requirements of the protective order.  So the time for you to

23  seek some relief from that order would seem to be running

24  fairly quickly at this point.

25          MR. SAVIERI:  That's fair, Your Honor.  And when we

1   raised this, we were not aware, and I don't know if the motion

2   had been made to extend the time.  And so I hear you loud and

3   clear that the time is nigh for us to do something about it.

4   I completely hear you on that.  And that's relatively new

5   news.  And I don't want anybody to believe we were sleeping on

6   our rights here.  We're prepared to move quickly to address

7   this.

8            THE COURT:  Okay.  Mr. Quinto, you were about to jump

9   in.

10           MR. QUINTO:  Yes, Your Honor.  Thank you.

11           So just a couple of points in response.  First, I

12   think we made clear in the original joint status report that

13   we were moving for that extension, and we included that when

14   we filed that, I want to say, May 20th, I believe.

15           The joint status report we filed, Your Honor, did

16   have a reference to the extension, but aside from that,

17   Your Honor, Davita and Mr. Thiry, I imagine, we don't want to

18   be stuck between a rock and a hard place.

19           The Colorado court has ordered us to destroy these

20   documents.  We are under a protective order obligation to

21   destroy these documents.  We understand Your Honor also has

22   Pretrial Order Number 1 that says to preserve documents, but

23   as Mr. Mariano has said, these documents may be in our

24   possession, but they're really not in our control.  They are

25   documents that we are obligated to destroy, and so we really

1    don't want to be caught between two potentially or directly

2    conflicting orders.

3         The second thing, and I think it's a very important

4    one, is that the Department of Justice, Mr. Mariano, has

5    confirmed verbally during the meet-and-confer calls with

6    plaintiffs, has confirmed in writing, and I think confirmed

7    again in writing that they are maintaining these documents.

8    They will have these documents if plaintiffs would like to

9    obtain them from the DOJ.

10        That has nothing to do with Davita or Mr. Thiry.

11   Plaintiffs can independently obtain those documents because

12   DOJ has represented in writing that they are going to maintain

13   those documents.  So really, Davita and Mr. Thiry should just

14   not be caught in the middle of this.  We should be allowed to

15   comply with the protective order and destroy these documents

16   as we are obligated to do by June 20.

17        THE COURT:  And so to be clear, at this point,

18   Mr. Quinto, are you seeking any relief such as an order from

19   me that confirms that you will not be in violation of any

20   order of this Court if you proceed with destruction of those

21   documents?

22        MR. QUINTO:  Your Honor, at this point and as we

23   stated in the joint status report, our intention is to comply

24   with the protective order unless this Court orders otherwise.

25   And so, you know, given all of the sort of backup which is the

1   DOJ having the documents, Judge Jackson ruling on the

2   protective order and saying these documents can be obtained

3   through the civil discovery process, that we have notified

4   plaintiffs, that we have notified DOJ, you know, our position

5   is that we're just going to comply with what is currently an

6   order upon us, you know, and do that unless the Court or the

7   Colorado court orders otherwise.

8          THE COURT:  Okay.  Mr. Mariano, do you have anything

9   to add on this topic?

10          MR. MARIANO:  Yes, just briefly.

11          I'll just add that I think all the compliance by the

12   defendants with the protective order in the District of

13   Colorado does is return this all to the status quo ante before

14   the discovery process began in the criminal case.

15          So the defendants should not be destroying any of

16   their own files because these are not the files of the

17   defendants.  They were provided expressly for a limited

18   purpose, to defend it in the criminal trial, and for a limited

19   time, within 30 days of the entry of a verdict.  That limited

20   purpose has been exhausted, the limited time has passed.  And

21   as Mr. Quinto says, ultimately, files are not going to be

22   destroyed here because we have repeatedly committed to retain

23   these documents so that if there are requests that come to the

24   United States, we'll be able to review and assess them at that

25   time.

1          THE COURT:  Okay.  Let me say that you have

2     repeatedly committed to retaining those documents.  What

3     recourse would the plaintiff or, for that matter, the

4     defendants, to the extent that they may be interested in

5     accessing some of these documents in the future, have if, in

6     fact, the government decided not to retain them?

7          There's no order in place anywhere that requires you

8     to do it.  Is there an internal, you know, policy or

9     regulation that would require you to keep them?

10          MR. MARIANO:  There's no internal policy or

11     regulation that I'm aware of.  I know that as a matter of

12     course, we would, of course, be keeping the file through the

13     pendency of the outstanding criminal case.  And I've committed

14     and made sure that the team knows to retain everything during

15     the duration of the civil proceedings, but once the criminal

16     trial in Texas completes or even before then, we can certainly

17     take steps to have a litigation hold ordered so that we're

18     preserving the documents.

19          THE COURT:  Okay.  So for now, at least for the

20     moment, I'm not going to issue any further order regarding the

21     issue of whether or not the Davita defendants -- and I'm

22     including for present purposes Mr. Thiry -- have any

23     obligation to retain documents that they would otherwise be

24     required to destroy pursuant to the Colorado court's order.

25          I'll give some thought to whether that's necessary.

1    If any of the interested parties come to believe that it's

2    necessary and you want such relief from me, I would just ask

3    that you be sure to meet and confer with the other parties to

4    see what their position is and to make the request in a timely

5    manner.  I'd ask that you not wait until June 29th to make

6    such a motion.  For the moment, I'm not going to issue an

7    order, though I will consider what may be appropriate.

8            Also, for the moment, I'm going to leave the current

9    discovery stay in place.  I will likely issue a written ruling

10   shortly once I've pondered all of the arguments that I've

11   heard today from the various parties.

12           I also want to take into account what I expect to be

13   the timing on the motion to dismiss.  As I said, the scope of

14   discovery that goes forward I view as also impacted by the

15   pendency of the motion to dismiss which may impact various

16   issues.  So I'm going to take that into account as well as the

17   written submission and the arguments that I've heard today and

18   issue a ruling in short order on what I am construing as the

19   plaintiffs' motion to modify the stay of discovery that's in

20   place consistent with the proposal that's been laid out by the

21   government with respect to what they are comfortable with at

22   this point.

23           In the meantime, the parties should finish up the

24   discovery that's already been ordered, including resolving any

25   discovery disputes.

1        There was an earlier point in time when the parties

2   anticipated motion practice and had thought that we might

3   actually have a discovery conference today instead of

4   discussing other issues.  It seems like those matters have

5   been either resolved or sort of put on hold for the time being

6   while you continue to work out the issues.  And that's fine.

7        So what I'm going to do is go ahead and set a further

8   status date.  I'm going to set a further status report date, a

9   further status hearing date.  I'll proceed with a formal

10  ruling on whether the stay is going to be modified, but in the

11  meantime, the current status quo remains in place.

12       What I would like is a status report from the

13  parties, let's say a written status report from the parties,

14  by August -- actually, I'll adjust it slightly -- a written

15  status report from the parties by August 25th regarding

16  discovery, anything that's going on in the related criminal

17  proceedings, in particular, the anticipated trial in January

18  of 2023.

19       To the extent that something has happened that the

20  parties believe warrants a further reconsideration of whatever

21  my ruling is with respect to the stay of discovery, include

22  that as well or any other issues that may need to be resolved.

23       And then I'll go ahead and set a status hearing for

24  September 1st.  So that will be 60 days from now.

25       David, I'm looking at the calendar and thinking that

1    we'd be able to do it at 11:00 o'clock on September 1st if the

2    parties are available.  Does that seem right to you?

3              THE CLERK:  Judge --

4              MR. SAVIERI:  Your Honor, it's Joseph Savieri.

5              Sixty days from now is August 1st.

6              THE COURT:  You are absolutely correct.  I am ahead

7    of myself.

8              MR. SAVIERI:  I hesitated to point that out.

9              THE COURT:  Not at all.  You are absolutely correct.

10   I am ahead of myself in the calendar.  I guess I'm eager to

11   get through summer.

12             MR. SAVIERI:  I don't know what to say about that,

13   Your Honor.  I'm looking forward to summer.

14             When would you -- from our perspective, we'd like to

15   keep this moving, obviously.

16             THE COURT:  I would prefer to keep it in the 60-day

17   range.  I do have to modify my plans a little bit in light of

18   my trial schedule for August, so what I will do is adjust

19   things and see if we can set the status hearing for Friday,

20   July 29th at, let's say, at 11:30.

21             Are Counsel available?

22             MR. SAVIERI:  This is Joseph Savieri again.

23             Are we doing it by telephone or by some other means?

24             THE COURT:  I'm anticipating it will be a telephone

25   hearing.  I'm still setting telephone hearings for now.  At

1   some point over the summer, we will likely adjust to at least

2   having the option of in-person hearings, but this one would be

3   by telephone.

4           MR. SAVIERI:  So this is Joseph Savieri.

5           That date and time by telephone is great for me.

6           THE COURT:  Does that work for the other interested

7   counsel?

8           MS. VENTURA:  It works for SCA.  Thank you.

9           MS. NUSSBAUM:  Yes, Your Honor.

10          MR. QUINTO:  Romeo Quinto for Davita.

11          It works for me.  Thank you, Your Honor.

12          THE COURT:  Okay.  Not hearing any objections, we'll

13  set that for the 29th.

14          And then the written status report, I'm just going to

15  ask for it by July 25th, which will be Monday of that week.

16          MR. SAVIERI:  I'm sorry.  25, 25th, is that what you

17  said, Your Honor?

18          THE COURT:  Two, five, yes.  Monday, July 25th for

19  the written status report.

20          MR. SAVIERI:  This is Joseph Savieri again.  I have

21  another question when you're ready.

22          THE COURT:  Go ahead.

23          MR. SAVIERI:  So we did not file, the plaintiffs, a

24  formal motion to lift the stay.  I guess I'm not clear whether

25  that's something we should have done or were interpreting this

1    to have been the equivalent of that.

2            THE COURT:  I don't think it's necessary, no.  I

3    think when issues like this are raised by status reports,

4    that's sufficient.

5            So what I will reflect on the docket in the entry is

6    what -- I take it your request is you do want to -- I said,

7    "modify the stay."

8            MR. SAVIERI:  Yes.

9            THE COURT:  I suppose if your position is you want to

10   lift it entirely, that's a slightly different issue with a

11   slightly different argument.

12           MR. SAVIERI:  And, Your Honor, this is, I guess, part

13   of what I'm touching on is that, you know, the short answer is

14   we want to modify the stay.  That would be our motion.

15           I think what we submitted to the Court and what we've

16   spent time discussing this morning is consistent with that,

17   but I just wanted to be clear with that, I mean, because this

18   kind of came in as a discussion with the three parties.  But

19   it is our position as the plaintiffs that the stay should be

20   modified, and we would so move if provided the opportunity.

21           THE COURT:  Sure.  You may move orally, and I will

22   construe the request that was made on the record as an oral

23   motion consistent with the plaintiffs' position stated in the

24   status report for modification of the stay.

25           You've already had an opportunity to present written

1   positions in that.  One of the benefits of having the status

2   report is it eliminates the need for back-and-forth briefing.

3          I already have everybody's positions in front of me.

4   We've already had oral argument on the issue.  So as far as

5   I'm concerned, it's briefed and argued, and I can proceed with

6   a ruling based on, as I said, the oral motion consistent with

7   the plaintiffs' position in the status report.

8          MR. SAVIERI:  And again, on behalf of the plaintiffs,

9   we would so move, just to make sure we're clear on our

10  position.

11         THE COURT:  It's very clear, and I'll make sure

12  that's reflected in the minute entry.

13         MR. SAVIERI:  Thank you, Your Honor.

14         THE COURT:  Anything else that we need to address

15  today?

16         MR. MARIANO:  Yes, Your Honor.

17         THE COURT:  Who's speaking?

18         MR. MARIANO:  This is Anthony Mariano for the United

19  States.

20         THE COURT:  Yes, Mr. Mariano?

21         MR. MARIANO:  I just wanted to raise one very minor

22  issue.  I had previously understood from meet and confers with

23  the parties that the parties would provide any document

24  discovery requests or other discovery requests to the United

25  States, just a copy so that we could review them as

1    intervenor.

2         In more recent meet and confers, it's become clear

3    that we may not have actually had agreement on this, so I just

4    wanted to clarify what, if any, expectations the Court has

5    with respect to whether the United States should be receiving

6    these as a matter of course or if we need to take any other

7    action in order to get copies of those discovery requests.

8         THE COURT:  Well, let's see if the other parties have

9    any objection to providing copies.  I certainly haven't

10   ordered that to occur, so I suppose the first question is

11   whether the parties are amenable doing that voluntarily or if

12   you have concerns about it.

13        Mr. Savieri?

14        MR. SAVIERI:  Thank you, Your Honor.

15        I think the short answer is yes, we're willing to do

16   it.

17        Again, I expressed earlier, I think, that we think

18   the involvement of the government in this going forward is an

19   attribute, not a defect to this proposal and will allow some,

20   like, transparency and clarity about the relative interests.

21   So that's a long way of saying yes, we're fine with providing

22   copies of discovery requests as they arise.

23        You know, in other cases, we have given things, made

24   sure that the department, for example, received deposition

25   notices or copies of written discovery along the way.  That's

1    been an effective way for us to do this.

2         The only -- and I don't think this is going to come

3    up in this case.  The only wrinkle -- and we haven't candidly

4    discussed it -- is the production of materials that we might

5    receive in the course of discovery.  I don't hear Mr. Mariano

6    to be asking for that.

7         Certainly -- and I don't think this is the case --

8    that raises some issues with respect to the

9    extraterritoriality of the government's ability to obtain

10   documents, but we're fine with giving the requests, including

11   deposition notices, if that's what they'd like to do.

12        THE COURT:  Okay.  Ms. Ventura?

13        MS. VENTURA:  Speaking for SCA, we have no objection

14   to providing these discovery requests to the government while

15   the Court is evaluating how to address the discovery stay.  We

16   obviously object to the complexities that may result from

17   that, but in the interim, we are happy to give the government

18   copies of these discovery requests.

19        THE COURT:  Okay.  Mr. Quinto?

20        MR. QUINTO:  Davita's position is the same as SCA

21   just stated.

22        THE COURT:  Okay.  Any other counsel want to weigh in

23   on this particular issue?

24        MS. LIMARZI:  This is Kristen Limarzi for SCAI and

25   Tenet, and we have no objection.

1         THE COURT:  Okay.  So I think what I gleaned from

2    Ms. Ventura's response is at least in the short term, there's

3    no objection.  Once discovery is open and full, it sounds like

4    she and maybe the other counsel would have concerns about that

5    procedure just in terms of the additional complexity that it

6    would involve.  And I think that's fine.

7         I am not -- to be clear, I am not issuing a ruling

8    that says I am ordering this to occur because I've considered

9    all of the factors and decided that that's necessarily the

10   right approach.

11        What I am going to do is acknowledge that the parties

12   have agreed that there's been a request made by the

13   government, no objection has been raised from the defendants.

14   And so with the parties' consent and agreement, that's the

15   procedure that you're going to follow.

16        If a party does raise an objection, then I'll hear it

17   as argument and, you know, treat it as a more adversarial

18   matter, but I think it's reasonable.  I think thus far, it's

19   probably facilitated, you know, useful discussion and allowed

20   things to move forward without getting to one extreme or the

21   other of everything stopping or everything going forward full

22   steam.  So I think it's been helpful to me and the parties.

23        So I'm going to endorse the approach, but if somebody

24   raises an objection, I'll hear the objection, and it may

25   result in a ruling that goes in a different direction.

1          I also appreciate the point that it may be different

2    once full discovery is opened up which, you know, may be

3    happening at some point, depending on a lot of factors.  I'll

4    leave it at that.

5          We have a next date for a status report and a status

6    hearing.  I have a ruling to get to the parties, and I know

7    the parties have a lot of work to do on your end.  So we'll

8    check in again at the end of July.

9          Thank you for your time today.

10         (Proceedings adjourned at 12:17 p.m.)

11                            * * * * *

12

13                    C E R T I F I C A T E

14

15

16         I, Brenda S. Tannehill, certify that the foregoing is

17   a complete, true, and accurate transcript from the record of

18   proceedings on June 2, 2022, before the HON. ANDREA R. WOOD in

19   the above-entitled matter.

20

21

22   _/s/Brenda S. Tannehill, CSR, RMR, CRR_          6/7/2022

23         Official Court Reporter                    Date
           United States District Court
24         Northern District of Illinois
           Eastern Division

25